## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### ASSOCIATED COMPANIES

Companies, corporations, firms or individuals that are subsidiary to or affiliated with the Sponsor and listed below will be called associated companies. Employees of associated companies will be employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Liberty and the Sponsor will be binding on the associated companies.

If an associated company ceases to be an associated company for any reason, its employees will be deemed to have transferred to a class of employees not eligible for coverage under this policy.

Associated companies are:    As on file with the Sponsor

Form OP3-ELG-0002

SA3-800-000001-01 R (2)
Effective January 1, 2001

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF PERSONAL COVERAGE

**Applicable to Class 4:**

**Contributions Not Required**

If an employee does not have to pay for the cost of personal coverage, he becomes covered on the date he is eligible.

**Contributions Required**

If an employee must pay part of the cost of personal coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)    on or before the date he is eligible, his coverage takes effect on the date he becomes eligible; or

(b)    within 31 days after the date he becomes eligible, his coverage takes effect on the date he enrolls.

**Delayed Effective Date**

If an active employee is not at work on the last scheduled work day coincident with or preceding the date he is to become covered, he will become covered on the date he returns to active work. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends.

SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

## EFFECTIVE DATE OF PERSONAL COVERAGE

**Applicable to All Other Classes:**

**Contributions Not Required**

If an employee does not have to pay for the cost of personal coverage, he becomes covered on the date he is eligible.

**Contributions Required**

If an employee must pay part of the cost of personal coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)  on or before the date he is eligible, his coverage takes effect on the date he becomes eligible;

(b)  within 31 days after the date he becomes eligible, his coverage takes effect on the date he enrolls;

(c)  after 31 days following the date he becomes eligible, he must submit proof of insurability. Such person's coverage will take effect on the first of the month following the date Liberty accepts such proof as satisfactory. Proof of insurability must be furnished at his own expense.

**Delayed Effective Date**

If an active employee is not at work on the last scheduled work day coincident with or preceding the date he is to become covered, he will become covered on the date he returns to active work. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF DEPENDENT COVERAGE

**Applicable to Class 1:**

**Contributions Not Required**

If an employee does not have to pay for the cost of dependent coverage, he becomes covered with respect to his dependents on the date he becomes eligible for dependent coverage.

**Contributions Required**

If an employee must pay part of the cost of dependent coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)    on or before the date he is eligible for dependent coverage, he becomes covered with respect to them on such date;

(b)    within 31 days after the date he is eligible for dependent coverage, he becomes covered with respect to them on the date he enrolls them;

(c)    after 31 days following the date he is eligible for dependent coverage; he must submit proof of each dependent's insurability. He will become covered with respect to them on the first of the month following the date Liberty accepts such proof as satisfactory. Proof of insurability must be furnished at his own expense.

**Additional Dependents**

If, while covered for dependent coverage, an employee acquires another dependent, he will become covered for such dependent on the date he is eligible for coverage for the dependent.

**Delayed Effective Date**

If a dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends. This does not apply to a newborn child.

An employee's dependent coverage will not take effect before the date his personal coverage takes effect.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF DEPENDENT COVERAGE

**Applicable to Class 4:**

**Contributions Not Required**

If an employee does not have to pay for the cost of dependent coverage, he becomes covered with respect to his dependents on the date he becomes eligible for dependent coverage.

**Contributions Required**

If an employee must pay part of the cost of dependent coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)    on or before the date he is eligible for dependent coverage, he becomes covered with respect to them on such date; or

(b)    within 31 days after the date he is eligible for dependent coverage, he becomes covered with respect to them on the date he enrolls them.

**Additional Dependents**

If, while covered for dependent coverage, an employee acquires another dependent, he will become covered for such dependent on the date he is eligible for coverage for the dependent.

**Delayed Effective Date**

If a dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends. This does not apply to a newborn child.

An employee's dependent coverage will not take effect before the date his personal coverage takes effect.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### TERMINATIONS

The personal coverage of a covered employee will end on the date that any of the following events first occurs, subject to any applicable Conversion Privilege or Continuation of Coverage Provisions:

(a)  31 days following the date employment (status as an active employee) or eligibility ends for any reason except that Life Insurance will be continued for retired employees as defined;

(b)  the policy terminates; or

(c)  the end of the last period for which a covered employee makes a required contribution, if he has cancelled his payroll deduction authorization or otherwise failed to pay any required portion of the cost of personal coverage.

The employee's coverage of a covered dependent will end on the date that any of the following events first occurs:

(a)  status as a dependent ends;

(b)  dependent coverage is deleted from the policy;

(c)  the covered employee's personal coverage ends; or

(d)  the end of the last period for which a covered employee makes a required contribution, if he has cancelled his payroll deduction authorization or otherwise failed to pay any required portion of the cost of dependent coverage.

### CONTINUATION OF COVERAGE PROVISIONS

**Lay-off**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 12 weeks following the month in which the lay-off begins. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

**Leave of Absence – Applicable to Military Leave of Absence under the Uniformed Services Employment and Reemployment Rights Act (USERRA)**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 24 months following the month in which the leave of absence begins. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

**Lay-off or Leave of Absence – Applicable to All Other Leaves of Absences**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 12 weeks following the month in which the leave of absence begins, including FMLA. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

## SECTION 4 - GENERAL PROVISIONS

**Notice and Proof of Loss.** Written notice of a claim must be given to Liberty within 20 days after loss occurs. Notice must include information to identify the claimant.

When a notice of loss is received, forms will be sent to the claimant for filing proof of loss. If these forms are not furnished within 15 days, the claimant may satisfy the proof of loss requirement by giving Liberty a written statement of the nature and extent of the loss for which claim is made.

Due proof must be given within 90 days after the loss.

If it is not reasonably possible for the claimant to give proof in the time required, Liberty will not reduce or deny the claim for this reason if the proof is filed as soon as possible. But, unless delayed by the claimant's legal incapacity, the proof must be furnished within two years of the 90 day period specified above.

**Examination.** Liberty has the right to have the claimant examined (at Liberty's expense) as often as reasonably necessary while a claim is pending. It may also have an autopsy made unless prohibited by law.

**Actions at Law.** No legal action may be brought to recover under this policy until 60 days after due proof of loss has been given. No such action may be brought after 3 years from the time written proof of loss is required to be given. Legal actions are contingent upon having obtained reconsideration as described below.

**Reconsideration.** Liberty will notify any covered person whose claim is denied in whole or in part. That written notice will explain the reasons for denial. If the claimant does not agree with the reasons given, he or she may request a reconsideration of the claim. To do so, the claimant should write to Liberty within 60 days after the notice of denial was received. The claimant should state why he or she believes the claim was improperly denied. Any data, questions or comments that the claimant thinks are appropriate should be included. Unless Liberty requests additional material in a timely fashion, the claimant will be advised of Liberty's decision within 60 days after his or her letter is received.

**Time Limitation.** If the time limitations shown under: (a) notice and proof of loss; and (b) actions at law, are less than that allowed by law in the state where the covered person lives at the time claim is made, such limitations will be increased to comply with such state law.

**Payment of Benefits.** All benefits are payable when Liberty receives written proof of loss. Benefits for loss of life will be payable to the beneficiary. All other benefits will be payable to the covered person. However, unless the covered person directs otherwise in writing, Liberty has the option of paying all or part of such benefits directly to a person or institution on whose charges claim is based. A covered person may also authorize Liberty to pay benefits directly to a person or institution on whose charges claim is based. Any such payments will discharge Liberty to the extent of payment made. Unless allowed by law, payments may not be attached, nor be subject to a covered person's debts.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, conflicts with the laws of the state where this policy is delivered is changed to conform to such laws.

**Workers' Compensation.** This policy and the benefits provided are not in lieu of, nor will they affect any requirements for, coverage under any Workers' Compensation Law or other similar law.

Form OP3-GNP-0001/GNP-0002

### SECTION 4 - GENERAL PROVISIONS (continued)

**Facility of Payment.** If a beneficiary or covered person is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person. Such payments will be made until claim is made by a guardian.

If a beneficiary or covered person dies while benefits remain unpaid, benefits will be paid, at Liberty's option, to:

(a)   a person or institution on whose charges claim is based;

(b)   the executor or administrator of the covered person's estate; or

(c)   a surviving relative (spouse, parent or child).

Such payment will release Liberty of all further liability to the extent of payment.

**Entire Contract Changes.** This policy, with the Sponsor's application and any individual applications, is the entire contract of insurance. No agent may change this policy or waive any of its provisions. No change in this policy will be effective unless signed by the president or a vice president of Liberty and by the Sponsor. Any statements in any application will be deemed representations and not warranties. No statement will be used as a defense to a claim unless it is in a written application.

**Incontestability.** This policy will not be contested, except for nonpayment of premium, after it has been in force for two years from the effective date. The coverage of any covered person will not be contested, except for nonpayment of premium, after it has been in force for two years during the person's lifetime. No statement by a covered person concerning his insurability will be used by Liberty to deny liability unless: (a) it is stated on a written application signed by him; and (b) a copy of such application is given to him or his beneficiary.

**Misstatement of Age.** If the age of any covered person has been misstated, the insurance payable will be the amount such person is entitled to under the Schedule of Benefits, at his true age. Liberty will adjust the premium so that Liberty pays the correct amount.

**Assignment.** The coverage under this policy is not assignable by the Sponsor without Liberty's written consent.

A covered employee may assign all of his present and future right, title, interest and incidents of ownership of (a) any life insurance; (b) any disability provision of life insurance; and (c) any accidental death and dismemberment insurance under this policy. Such assignment will include, but is not limited to, the rights (a) to make any contribution required to keep the coverage in force; (b) to exercise any conversion privilege; and (c) to change the beneficiary.

**Records.** The Sponsor will keep records of the covered employees under this policy. Such records will include the following: (a) covered employees by name, age and amount of coverage; (b) effective date of coverage and date coverage ends; (c) change of status; (d) name of beneficiary; and (e) other related data. Such data will be given to Liberty as needed or requested on Liberty forms. Liberty has the right to inspect the Sponsor's records at any reasonable time. Clerical errors will not deprive a person of coverage. But such errors will not continue coverage after the termination date described under Terminations.

Form OP3-GNP-0002/GNP-0007

## SECTION 4 - GENERAL PROVISIONS (continued)

**Interpretation of this Policy.** Liberty possesses the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility will be conclusive and binding.

**Canadian Exposure.** With respect to a covered person who lives in Canada: (1) premium and benefit amounts will be deemed to be expressed in Canadian currency; (2) policy provisions concerning the rights of covered persons are subject to applicable provincial statutes; and (3) with respect to benefits, an action under this policy may be brought in any court in the province where the covered person lives.

**Certificate.** Liberty will issue to the Sponsor, for delivery to each covered employee, a certificate describing the coverage under this policy. The certificate will include information about any conversion privilege and the beneficiary. The certificate will not change any provision under this policy.

**Discontinuance of this Policy.** Liberty may discontinue this policy or any coverage afforded hereunder on a premium due date if on any date:

(a)    the number of covered employees is less than 10; or

(b)    the percentage of covered employees in any class of eligible employees is less than 75%.

Liberty will send written notice of such discontinuance to the Sponsor at least 31 days before it's effective.

Liberty may discontinue this policy or any coverage afforded hereunder and for any class of covered employees on a premium due date after it has been in force for a year. Liberty will send written notice of discontinuance to the Sponsor at least 31 days before it is effective.

The Sponsor may discontinue this policy on a premium due date by giving written notice to Liberty before that date. If the Sponsor fails to pay the premiums within the Grace Period, it will be deemed notice by the Sponsor to Liberty to discontinue this policy at the end of the Grace Period.

Discontinuance of the policy will not affect any claim made before the date discontinued.

Form OP3-GNP-0007/GNP-0008

## SECTION 5 - INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE

**Benefits**

Liberty, upon receipt of due proof of death of any covered employee, agrees to pay the proceeds of the life insurance in force on the life of such covered employee under this policy. The benefit payable is shown in the Schedule of Benefits.

**Beneficiary**

Each covered employee must name a beneficiary to whom the life insurance benefits are payable. If, at the death of a covered employee, there is no named or surviving beneficiary, the benefits will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits are usually payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

Form OP3-LIF-0001

SA3-800-000001-01 R (1)
Effective January 1, 2003

## SECTION 5 - INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE (continued)

**Conversion Privilege**

**Conversion Privilege at Individual Termination**

If all or part of a covered employee's coverage ends, the covered employee may convert the amount that ends to an individual life insurance policy. The coverage must end because the covered employee is no longer in an eligible class or leaves his job. Conversion is subject to the following conditions.

Within 31 days after coverage ends, the covered employee must:

(a)   make written application; and

(b)   pay the first premium payment.

The individual policy will be issued without proof of good health. It will contain life insurance benefits only. It will not include term insurance. The policy will be one then being offered by Liberty. The premium due will be the current rate of Liberty that applies to the covered employee's:

(a)   class of risk; and

(b)   age at the birthday nearest to the effective date of the individual policy.

## SECTION 5 - INSURANCE BENEFITS

## EMPLOYEE LIFE INSURANCE (continued)

**Conversion Privilege (continued)**

**Conversion Privilege at Class or Policy Termination**

If coverage ends for all employees or for a covered employee's class, the covered employee is entitled to a limited conversion privilege. The covered employee must have been covered for at least 5 years. The covered employee must apply for the individual policy in the same manner as described above. The amount the covered employee may convert is limited to the lesser of:

(a)   the amount the covered employee was covered for on the date the group coverage terminated less any group insurance he becomes eligible for within 31 days; or

(b)   $2,000.

The individual policy will be effective 31 days after the covered employee's group coverage ends.

**Death Within the 31 Days Allowed for Conversion**

If a covered employee dies within the 31 days allowed for conversion, Liberty will pay to his beneficiary the amount he was eligible to convert. Such insurance will be paid as a claim under this policy. Any premiums paid for a converted policy will be refunded.

Form OP3-LIF-0003

## SECTION 5- INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE (continued)

**Continuation of Coverage During Total Disability (Not Applicable to Retired Employees)**

If a Covered Employee becomes Totally Disabled while insured under this policy he may be eligible for continued Life Insurance coverage subject to premium payment. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

The Life Insurance benefit continued will be the amount in force on the Covered Employee's life under this policy on the date the Covered Employee is no longer in Active Employment due to Total Disability, subject to any reductions provided by any part of the policy.

Accidental Death and Dismemberment and Dependent coverage will be continued during the Covered Employee's period of Total Disability.

The amount of continued coverage for Accidental Death and Dismemberment and Covered Dependents will be the amount in force at the beginning of the Covered Employee's Total Disability.

The amount continued will not include any part of the Covered Employee's Life Insurance that he converted to an individual policy unless the employee was Totally Disabled when he applied to convert; and he returns the conversion policy to Liberty without claim other than for a refund of the premiums he paid for it.

A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:

1. the Sponsor determines the Covered Employee ceases to be Totally Disabled;
2. he returns to Active Employment; or
3. he reaches age 65; or
4. the date he begins receiving a benefit from a retirement or pension plan; or
5. the date the Sponsor classifies him as retired; or
6. the policy terminates; or
7. premium payments stop.

If continued Life Insurance coverage ends under this provision, the Covered Employee may convert his Life Insurance benefit as provided in the Conversion Privilege. Dependent coverage may be converted as allowed within this policy.

With respect to this provision, "Total Disability" or "Totally Disabled" means that the Covered Employee, as a result of Injury or Sickness, is receiving benefits under the Sponsor's Long Term Disability Plan.

### SECTION 5 - INSURANCE BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**Applicable to Class 1:**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a covered employee suffers a loss solely as the result of accidental injury that occurs while covered. The loss must occur within 90 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

The Full Amount is payable for the loss of:

(a)    Life;

(b)    Both hands or feet;

(c)    Sight of both eyes;

(d)    One hand and foot;

(e)    One hand and sight of one eye;

(f)    One foot and sight of one eye.

One-half the Full Amount is payable for the loss of:

(a)    One hand or foot;

(b)    Sight of one eye.

"Loss of hands or feet" means complete severance through or above the wrist or ankle joint. "Loss of sight" must be total and irrecoverable.

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

**Payment of Benefits**

Benefits for loss of life are paid to the covered employee's beneficiary. Benefits for other losses are paid to the covered employee.

**Beneficiary**

Each covered employee must name a beneficiary to whom the proceeds for loss of life under this policy are payable. If, at the death of a covered employee, there is no named or surviving beneficiary, the proceeds will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

Form OP3-ADD-0001                                              SA3-800-000001-01 R (1)
                                                               Effective July 1, 1998

## SECTION 5 - INSURANCE BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (continued)

**Applicable to Class 1 (continued):**

**Beneficiary (continued)**

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits for loss of life are payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**Exceptions**

No benefits are payable for any loss contributed to or caused by:

(a) suicide;

(b) intentionally self-inflicted injury;

(c) disease or bodily or mental illness (or medical or surgical treatment thereof);

(d) infections, except septic infections of and through a visible wound;

(e) war (declared or undeclared);

(f) drugs that are voluntarily taken, ingested or injected, unless as prescribed or administered by a physician.

## SECTION 5 - INSURANCE BENEFITS

## FAMILY ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**Applicable to Class 4:**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a covered person suffers a loss solely as the result of accidental injury that occurs while covered. The loss must occur within 90 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

The Full Amount is payable for the loss of:

(a)    Life;

(b)    Both hands or feet;

(c)    Sight of both eyes;

(d)    One hand and one foot;

(e)    One hand and sight of one eye;

(f)    One foot and sight of one eye.

One-half the Full Amount is payable for the loss of:

(a)    One hand or foot;

(b)    Sight of one eye.

"Loss of hands or feet" means complete severance through or above the wrist or ankle joint; "Loss of sight" must be total and irrecoverable.

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

**Payment of Benefits**

Benefits for a covered employee's loss of life are paid to the covered employee's beneficiary. Benefits for other losses are paid to the covered employee.

**Beneficiary**

Each covered employee must name a beneficiary to whom the proceeds for his loss of life under this policy are payable. If at the death of a covered employee there is no named or surviving beneficiary, the proceeds will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

## SECTION 5 - INSURANCE BENEFITS

### FAMILY ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (continued)

**Applicable to Class 4 (continued):**

**Beneficiary (continued)**

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits for loss of life are payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**Exceptions**

No benefits are payable for any loss caused by:

(a)    suicide;

(b)    intentionally self-inflicted injury;

(c)    disease or bodily or mental illness (or medical or surgical treatment thereof);

(d)    infections, except septic infections of and through a wound, and infections occurring because of accidental ingestion of poisonous food substances; and

(e)    war (declared or undeclared) or participation in a riot.

(f)    drugs that are voluntarily taken, ingested or injected, unless as prescribed or administered by a physician.

Form OP3-ADD-0015

SA3-800-000001-01
Effective July 1, 1998

## SECTION 5 - INSURANCE BENEFITS

## DEPENDENT LIFE INSURANCE

### Benefits

If Liberty is given proof of death of a covered dependent, Liberty will pay to the covered employee the amount of Dependent Life Insurance in force for such dependent. This amount is payable when a covered dependent dies from any cause, at any time or place while covered. The life insurance benefit will be paid in one sum.

### Conversion Privilege

If a covered employee's personal coverage ends because:

(a)    of his death; or

(b)    his employment in an eligible class ends,

his covered dependent spouse may convert Dependent Life Insurance to an individual policy.

Within 31 days after coverage ends, the covered dependent spouse must:

(a)    make written application; and

(b)    pay the first premium payment.

The individual policy will contain life insurance benefits only. It will not include term insurance. The policy will be one then being offered by Liberty. Proof of good health is not required.

If a covered employee's personal coverage ends because:

(a)    coverage ends for all employees; or

(b)    coverage ends for all employees in his eligible class,

his covered dependent spouse is entitled to a limited conversion privilege. The covered employee must be entitled to convert to an individual policy for his dependent spouse to have this limited privilege. Conversion must be applied for in the same way as stated above.

The amount the covered dependent spouse may convert is limited to the lesser of:

(a)    the amount the dependent spouse was covered for on the date coverage ended less any group insurance he becomes eligible for within 31 days; or

(b)    $2,000.

The individual policy will become effective 31 days after the covered employee's personal coverage ends. Dependent Life Insurance is payable if a covered dependent spouse dies during this period. The amount payable is the amount he or she was entitled to convert. Such insurance will be paid under this policy. Any premium paid for an individual policy will be refunded.

Form OP3-DEP-0001/DEP-0002

## SECTION 6 - PREMIUMS

Liberty has set the premiums that apply to the coverage provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

Liberty may, upon notice to the Sponsor, set new premium rates to become effective on or at any time after the first anniversary date of this policy.

Liberty may set new premium rates to become effective on the date the terms of this policy are changed. Any such change in policy terms will be made in accord with the General Provisions regarding "Entire Contract; Changes".

**Payment of Premiums.** The premium is payable by the Sponsor. The premium should be sent to:

(a)    Liberty at its Home Office in Boston, Massachusetts; or

(b)    Liberty's agent.

If any premium is not paid before its grace period ends, the policy will terminate.

**Grace Period.** A grace period of 31 days will be allowed for the payment of premium after a premium due date other than the first. No interest will be charged. During this period this policy will continue in force. But, if the Sponsor gives Liberty written notice to terminate the policy on an earlier date, then this policy will end on such earlier date. The Sponsor must pay the pro rata premium for the time the policy was in force during the grace period.

**Experience Rating Refunds**

After each policy period throughout which this policy remains in force, the Sponsor may receive an experience rating refund in accordance with Liberty's retrospective experience rating formula. "Experience rating refund" means the return of some part of the premium that the Sponsor has paid for this policy.

Any experience rating refund will be payable to the Sponsor. By written request, the Sponsor may direct that all or a part of an experience rating refund be applied to future premiums on this policy. In any event, the Sponsor must apply for the sole benefit of covered persons any amount by which:

(a)    the aggregate employee contributions toward the cost of this policy

        exceeds

(b)    the Sponsor's total payment for this policy period, less the experience rating refund for the same period.

Form OP3-PRE-0003

**Retrospective Premium Adjustment**

After each policy period, Liberty may be entitled to an extra premium, called a retrospective premium. The retrospective premium is determined according to a formula specified in the Retrospective Premium Agreement between the Sponsor and Liberty.

After each policy period, Liberty will be entitled to a retrospective premium in the event that:

    (a)   the sum of:
        (1)  the basic expense premium;
        (2)  the incurred claims charges;
        (3)  the incurred statutory assessments;
        (4)  the incurred premium taxes; and
        (5)  the deficit, if any, from the immediately preceding policy period

        exceeds

    (b)   100% of the standard premium payable for all coverages subject to this provision in that policy year.

"Standard premium" means the premium that is subject to the Retrospective Premium Agreement.

The first "policy period" begins on the effective date of this policy and ends on the first anniversary of the effective date of this policy. While this policy continues in force, each subsequent policy period will begin at 12:01 AM of the day immediately following the last day of the preceding policy period and will last for 12 months, except that the last policy period will end on the date this policy terminates.

Form OP3-PRE-0004

RIDER __16__

to be attached to and made a part of
Group Policy No. SA3-800-000001-01
issued by
**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**
(Liberty)

to

**LIBERTY MUTUAL**
(Sponsor)

Effective date of this Rider:        January 1, 2006.

The policy is hereby amended by deleting Form OP3-TER-0001/CON-0001.31 and replacing it with the attached Form OP3-TER-0001/CON-0001.31. The new page is marked SA3-800-000001-01 R (2).

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

Accepted by the Sponsor on:        _____, 2006
                                              LIBERTY MUTUAL

                              By:  _____
                                                  (Signature)

                                    _____
                                                    (Title)

OP3-RID-0001

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                        Case Number:  1:07-CV-01422

MICHAEL HAND,
                                Plaintiff,
             v.
LIBERTY MUTUAL,
                          Defendant.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:


Michael Hand

| NAME (Type or print) |
|---|
| Lawrence A. Stein |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
|---|
| s/ Lawrence A. Stein |

| FIRM |
|---|
| Huck Bouma PC |

| STREET ADDRESS |
|---|
| 1755 South Naperville Road |

| CITY/STATE/ZIP |
|---|
| Wheaton, Illinois 60187 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| 6216903 | (630) 221-1755 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
|---|---|---|
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ | NO ☐ |

| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☑ | NO ☐ |
|---|---|---|

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

### U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                              Case Number:

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| |
|---|
| NAME (Type or print) |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>        s/ |
| FIRM |
| STREET ADDRESS |
| CITY/STATE/ZIP |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| | |

| | |
|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐    NO ☐ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐    NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐    NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐    NO ☐ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐        APPOINTED COUNSEL ☐

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

---

In the Matter of                                        Case Number: 07-1422

MICHAEL HAND

v.

LIBERTY MUTUAL

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

MICHAEL HAND

| | |
|---|---|
| **NAME (Type or print)**<br> Kathleen R. Ryding | |
| **SIGNATURE (Use electronic signature if the appearance form is filed electronically)**<br> s/  Kathleen R. Ryding | |
| **FIRM**<br> Huck Bouma PC | |
| **STREET ADDRESS**<br> 1755 South Naperville Road | |
| **CITY/STATE/ZIP**<br> Wheaton, Illinois  60187 | |
| **ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)**<br> 6181310 | **TELEPHONE NUMBER**<br> (630) 221-1755 |
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE?    YES ☐    NO ☑ | |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE?    YES ☐    NO ☑ | |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR?    YES ☐    NO ☑ | |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY?    YES ☐    NO ☑ | |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.<br><br>RETAINED COUNSEL ☐        APPOINTED COUNSEL ☐ | |

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Michael Hand

               Plaintiff,

v.

Liberty Mutual

                   Defendant.

Case No.: 1:07−cv−01422
Honorable Milton I. Shadur

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, April 12, 2007:

     MINUTE entry before Judge Milton I. Shadur :Status hearing held on 4/12/2007.Status hearing set for 6/14/2007 at 09:00 AM.In court notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL HAND,               )
               PLAINTIFF,    )
                   )
                   )   C.A. No. 1:07-cv-01422
     v.                 )   Judge Milton I. Shadur
                   )   Magistrate Judge Nan R. Nolan
LIBERTY MUTUAL,       )
            DEFENDANT.   )
                   )

**DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S
MOTION FOR JOINDER AND INTERPLEADER OF NECESSARY PARTIES, AND TO
DEPOSIT FUNDS WITH THE COURT**

Defendant Liberty Life Assurance Company of Boston, incorrectly identified in the caption as "Liberty Mutual" (hereafter, "Liberty Life"), through its undersigned counsel, herewith submits its motion for joinder and interpleader of certain necessary parties. Liberty Life's motion arises under Rules 19(a), 22(1), and 67, Fed.R.Civ.P., and 28 U.S.C. § 1335, pursuant to which Liberty Life seeks the joinder and interpleader of persons asserting adverse claims to the same life insurance proceeds sought by Plaintiff in the Complaint, and to deposit the disputed proceeds into the Court. Specifically, Liberty Life asks the Court to order the following relief:

(1) That Plaintiff be compelled, or Liberty Life permitted, to name and join Floyd Olson, Barbara E. Coffman, and James Potter, Esq. (hereafter, "unnamed claimants") as defendants, in that each of these persons has asserted adverse claims to some or all of the life insurance proceeds sought by Plaintiff in the Complaint;

(2) Realignment of the Parties such that Liberty Life is postured as plaintiff in interpleader and all other parties, including Plaintiff, are postured as defendants in interpleader;

and

(3) Permission for Liberty Life to deposit the disputed life insurance proceeds with the Court.

Joinder of the unnamed claimants is necessary for complete resolution of all adverse claims to the life insurance proceeds in one action. Otherwise, Liberty Life will be subjected to a substantial risk of duplicative litigation, which could result in double or inconsistent obligations pursuant to the life insurance policy underlying Plaintiff's claims in the Complaint. In making this motion, Liberty Life relies upon the pleadings, applicable law, and the argument and authorities asserted in the contemporaneously filed memorandum of law in support of this motion.

Date: April 13, 2007                    Respectfully submitted,

                                        s/ Sara A. Weinberg
                                        Sara A. Weinberg
                                        Attorney for Defendant
                                        **JACKSON LEWIS LLP**
                                        320 W. Ohio Street, Suite 500
                                        Chicago, Illinois 60610
                                        Tel.: (312) 787-4949
                                        Fax: (312) 787-4995
                                        E-mail: Weinbers@jacksonlewis.com

                                        AND

                                        Ashley B. Abel
                                        Robert Wood (Pro Hac Vice Petition Pending)
                                        **JACKSON LEWIS LLP**
                                        Attorneys for Defendant
                                        One Liberty Plaza
                                        55 Beattie Place, Suite 800
                                        Greenville, SC 29601
                                        Tel.: (864)232 7000
                                        Fax: (864)235 1381
                                        E-mail: Abela@jacksonlewis.com
                                                Woodr@jacksonlewis.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 13, 2007, she caused true and correct copies of the Defendant Liberty Life Assurance Company of Boston's Motion for Joinder and Interpleader of Necessary Parties, and to Deposit Funds with the Court to be filed with the Court by the Court's ECF/CM electronic filing protocols, that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system:

> Lawrence A. Stein
> Kathleen R Ryding
> Huck Bouma PC
> 1755 South Naperville Road
> Wheaton, Illinois 60187

> /s/ Sara A. Weinberg

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HAND, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-01422 |
| | ) | Judge Milton I. Shadur |
| LIBERTY MUTUAL, | ) | Magistrate Judge Nan R. Nolan |
| DEFENDANT. | ) | |
| | ) | |
| | ) | |

**NOTICE OF MOTION**

TO:     Lawrence A. Stein
Kathryn R. Ryder
Huck Bouma PC
1755 South Naperville Road
Wheaton, Illinois 60187

PLEASE TAKE NOTICE THAT on **Friday, April 20, 2007.**, we shall appear before the Honorable Milton I. Shadur or any judge sitting in his place and stead in Courtroom 2303 and shall then and there present the Defendant's *Motion for Joinder and Interpleader of Necessary Parties, and to Deposit the Funds with the Court,* true and correct copies of which are attached hereto and hereby served upon you.

Dated: April 13, 2007            Respectfully submitted,

JACKSON LEWIS LLP

By:___/s/ Sara A. Weinberg_____
Sara A. Weinberg
Attorney for Defendant
**JACKSON LEWIS LLP**
320 W. Ohio Street, Suite 500
Chicago, Illinois 60610
Tel.: (312) 787-4949
Fax: (312) 787-4995
E-mail:  Weinbers@jacksonlewis.com

AND

Ashley B. Abel
Robert Wood (Pro Hac Vice Petition Pending)
**JACKSON LEWIS LLP**
Attorneys for Defendant
One Liberty Plaza
55 Beattie Place, Suite 800
Greenville, SC 29601
Tel.: (864)232 7000
Fax: (864)235 1381
E-mail: Abela@jacksonlewis.com
        Woodr@jacksonlewis.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 13, 2007, she caused true and correct copies of the foregoing to be filed with the Court by the Court's ECF/CM electronic filing protocols and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system:

Lawrence A. Stein
Kathleen R Ryding
Huck Bouma PC
1755 South Naperville Road
Wheaton, Illinois 60187

/s/ Sara A. Weinberg

- 2 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISTION**

MICHAEL HAND,               )

          PLAINTIFF,    )

                   )

      v.                 )    C.A. No. 1:07-cv-01422

                   )    Judge Milton I. Shadur

LIBERTY MUTUAL,      )    Magistrate Judge Nan R. Nolan

          DEFENDANT.   )

                   )

---

**DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JOINDER AND
INTERPLEADER OF NECESSARY PARTIES,
AND TO DEPOSIT FUNDS WITH THE COURT**

Defendant Liberty Life Assurance Company of Boston, incorrectly identified in the

caption as "Liberty Mutual" (hereafter, "Liberty Life"), through its undersigned counsel,

herewith submits its memorandum of law in support of its motion for joinder and interpleader of

certain necessary parties. Liberty Life also seeks permission to deposit certain funds into the

Court.  Liberty Life's motion arises under Rules 19(a), 22(1), and 67, Fed.R.Civ.P., and 28

U.S.C. § 1335, pursuant to which Liberty Life seeks the joinder and interpleader of persons

asserting adverse claims to the same life insurance proceeds sought by Plaintiff in the Complaint.

The additional persons are necessary for complete resolution of all adverse claims to the

proceeds in one action.  Otherwise, Liberty Life will be subjected to a substantial risk of

duplicative litigation, which could result in double or inconsistent obligations pursuant to the life

insurance policy underlying Plaintiff's claims in the Complaint.

## I.    **FACTS**[1]

Plaintiff Michael Hand ("Plaintiff) instituted this action on or about February 20, 2007 in the Circuit Court of the Eighteenth Judicial Circuit of the State of Illinois, DuPage County, Docket No. 2007 MR000209, against Defendant Liberty Life.  Liberty Life removed the action to this Court on March 13, 2007 pursuant to the court's federal question jurisdiction arising under 28 U.S.C. § 1331.  Federal jurisdiction is proper because Plaintiff asserts claims for benefits allegedly due under a group life disability income policy ("Policy") issued by Liberty Life to Liberty Mutual. Liberty Life issued the Policy pursuant to the Liberty Mutual group life insurance plan ("Plan"), which provides benefits to employees of Liberty Mutual and associated companies.  (Aubin Affdvt., ¶¶ 5 - 6; Complaint, ¶ 3).  A copy of the Policy that controls Plaintiff's claim is attached as Exhibit A to the Affidavit of Francine Aubin filed in support of this motion and memorandum.  As demonstrated below, the Plan is an employee welfare benefits plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq.

The Complaint seeks a declaration that Plaintiff is entitled to $71,000.00 in life insurance proceeds ("Proceeds") payable by reason of the death of Cassie E. Barrett ("Decedent"), a Liberty Mutual employee who was a participant in the Plan and who was thus insured under the Policy.  (Aubin Affdvt., ¶¶ 6 - 7). According to information provided by Decedent's employer to Liberty Life, Plaintiff, who was Decedent's husband, was the sole designated beneficiary for the Proceeds as of the date of Decedent's death (October 21, 2006). (Complaint, ¶ 5; Aubin Affdvt., ¶ 8).

---

[1] The facts herein are verified by the Affidavit of Francine Aubin, which is attached hereto as Exhibit A and incorporated herein by reference, and from the allegations of the Complaint which are assumed to be true solely for purposes of this motion.

Plaintiff submitted a claim for the Proceeds to Liberty Life on or about January 17, 2007, which Liberty Life approved.   On or about January 22, 2007, Liberty Life mailed a check to Plaintiff for the full amount of the Proceeds, plus accrued interest. (Complaint, ¶¶ 5 - 6; Aubin Affdvt., ¶¶ 9 - 10).

On or about January 25, 2007, Liberty Life received correspondence from Floyd T. Olson ("Olson") asserting that Barbara E. Coffman ("Coffman") was solely entitled to the Proceeds. Olson stated that he was Decedent's grandfather and that Coffman was Decedent's mother.  He contended Decedent had given him power of attorney over her affairs and instructed him to change the beneficiary designation from Plaintiff to Coffman.  (Aubin Affdvt., ¶ 11). Upon receipt of Olson's correspondence, Liberty Life issued a stop-payment order to its bank on the check mailed to Plaintiff. (Id., ¶ 12; Complaint, ¶ 7).

On or about January 29, 2007, Liberty Life issued correspondence to Plaintiff and to Olson, advising that it had received adverse claims for the Proceeds, and that it would file an interpleader action unless the claimants advised Liberty Life within 30 days that they had settled their dispute between themselves.  On January 30, 2007, Plaintiff contacted Liberty Life by telephone and advised he did not intend to settle with Olson and Coffman. (Aubin Affdvt., ¶¶ 13 - 14). On or about February 7, 2007, Liberty Life received correspondence from James Potter, Esq. ("Potter"), advising that he represented Plaintiff regarding his claim to the Proceeds.  Potter enclosed a purported notice of a lien upon the Proceeds by assignment from Plaintiff. (Id., ¶ 15).

On or about March 2, 2007, Liberty Life assigned the adverse claims to the undersigned counsel for initiation of an interpleader action against all of the adverse claimants. (Id., ¶ 16).  On March 5, 2007, Liberty Life was served with a copy of the Summons and Complaint for Plaintiff's declaratory judgment action, which Plaintiff had filed on or about

February 20, 2007 in the Circuit Court of the Eighteenth Judicial Circuit of the State of Illinois,

DuPage County. Liberty Life had no prior notice of the state action. (Id., ¶ 17).

## II.    ARGUMENT

### A.    The Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. § 1131 because the benefit plan underlying the Complaint, which was established to provide life insurance benefits to employees, is governed by ERISA.

The ERISA statutes, codified at 29 U.S.C. §§ 1001, et seq., provide exclusive

federal regulation of employee benefit plans. See Aetna Health Inc. v. Davila, 542 U.S. 200,

___, 124 S.Ct. 2488, 2495 (2004) ("ERISA includes expansive pre-emption provisions ... which

are intended to ensure that employee benefit plan regulation would be exclusively a federal

concern") (internal citations omitted). ERISA applies to any "employee benefit plan" if the plan

is established or maintained by an employer or employee organization engaged in commerce or

in any industry or activity affecting commerce. 29 U.S.C. § 1003. An "employee benefit plan"

is defined as an employee welfare benefit plan or an employee pension benefit plan. 29 U.S.C. §

1002(3). A plan is a welfare benefit plan if it "was established or is maintained for the purpose

of providing for its participants or their beneficiaries, through the purchase of insurance or

otherwise, ... benefits in the event of sickness, accident, disability, death or unemployment."

29 U.S.C. § 1002(1) (references to other types of employer-provided benefits qualifying as

ERISA plans omitted) (emphasis added).

As noted above, the gravamen of Plaintiff's entire Complaint is that Liberty Life

wrongfully failed to pay his claim for life insurance benefits under the Policy. The Complaint

expressly states that Decedent was insured under the Policy as "part of her benefits package as an

employee." (Complaint, ¶ 3) (emphasis added). Further, it is plain from the face of the Policy, a

copy of which was attached to the Complaint, that it is intended to provide disability benefits to

employees of Liberty Mutual. (See Policy, Section 1 – Schedule of Benefits) (copy attached as Exhibit A to the Affidavit of Francine Aubine). Thus, it is clear the Plan was established and maintained by Liberty Mutual to provide benefits to employees in the case of death. As such, the Policy which provides those benefits is part of an employee welfare benefit plan as defined by ERISA. 29 U.S.C. § 1002(1); Heller v. Fortis Benefits Ins. Co., 142 F.3d 487, 492 (D.C. Cir.), cert. denied, 525 U.S. 930 (1998) ("[b]ecause [Plaintiff] made her … claim through an insurance plan offered by her employer, this coverage case is governed by ERISA"); Tingler v. Unum Life Insurance Co. of America, 2003 U.S. Dist. LEXIS 5455, *9 fn. 1 (S.D. W.Va. 2003) (unpublished)[2] ("[where] plaintiff claims entitlement to ….. benefits payable under a group …. plan maintained by his employer [the claims arise under] … a classic 'welfare benefit plan' within the meaning of ERISA"). Accordingly, Liberty Life properly removed this matter because the Complaint asserts claims for which federal remedies are available to participants and beneficiaries under ERISA plans pursuant to 29 U.S.C. § 1132(a). Aetna Health Inc. v. Davila, supra; Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).

**B.    Olson, Coffman, and Potter are necessary Parties pursuant to Rule 19, Fed.R.Civ.P.**

A party is "necessary" within the meaning of Rule 19 "if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Rule 19(a), Fed.R.Civ.P. (emphasis added). If Olson, Coffman, and Potter are not

---

[2] Copy attached at Exhibit B.

made parties to this action, each of them could file separate lawsuits seeking benefits allegedly

due pursuant to 28 U.S.C. § 1132(a)(1)(B) of ERISA, or for other relief under ERISA's civil

enforcement provisions.    In addition to having to incur the expense of defending multiple

lawsuits regarding a single source of liability, i.e., the Policy, Liberty Life would also face the

possibility of duplicative or inconsistent liability.  In Stenhouse v. Jacobson, 193 F. Supp. 694

(N.D. Cal. 1961), the Court ruled such circumstances are precisely those provided for by sub-

paragraph (a)(2)(ii) of Rule 19.  In that case, Stenhouse sued the insurer under a casualty policy

for alleged property loss.  The court ruled a non-party co-insured on the policy was a necessary

party, where the plaintiff asserted he was solely entitled to recovery under the policy:

> On the basis of the record now before it, the Court is of
> the view that the proposed defendant Cheney is an
> indispensable party to the action. It appears that he is a
> named assured in the policy upon which this action is
> based. It seems unreasonable to require the other
> defendants to defend an action in which plaintiff seeks to
> prove that he alone is entitled to recover upon the policy,
> when such an action will not be binding upon Cheney.
> Such a procedure would leave open the way for Cheney to
> bring a second action against the same defendants, in
> which he might establish that he alone was entitled to
> recover. If such should come to pass, the defendants
> might be required to pay twice on a single claim under the
> policy. This would create an unjust result which the Court
> cannot tolerate.

Id., 193 F. Supp. at 696 (emphasis added).  Similarly, in Collins v. Teachers Ins. & Annuity

Association, 587 F. Supp. 403, 405 (D.R.I. 1984), the named beneficiary for certain death

annuity benefits sued the defendant annuity association, which had denied the plaintiff's claim

because of a competing adverse claim from the decedent's widow, who was also the

representative of the decedent's estate.  The Court held the non-party widow was a necessary

party as "otherwise, the defendants would run the risk of incurring double liability"). As these

cases, and the plan language of Rule 19(a)(2)(ii), demonstrate, joinder of Olson, Coffman, and

Potter is both appropriate and necessary pursuant to Rule 19(a).

**C.    As Liberty Life is a disinterested stakeholder subject to multiple claims for the same funds, conversion of this matter to an interpleader action is necessary and appropriate in order to completely resolve all adverse claims to the Proceeds in one action.**

As related above, Liberty Life was preparing to file an interpleader action

regarding the adverse claims to the Proceeds when it was served with a copy of the summons and

complaint in the instant matter. It is well settled that an interpleader action is an appropriate

medium for resolution of adverse claims to insurance proceeds, where the insurer claims no

interest in the funds. The federal interpleader statute provides as follows in relevant part:

a.    The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, <u>firm, or corporation</u>, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, <u>policy of insurance</u>, or other instrument of value or amount of $500 or more, ..., if

(1) <u>Two or more adverse claimants</u>, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

(2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court ... .

b.    Such an action may be entertained although the titles or claims of the conflicting claimants do

> not have a common origin, or are not identical,
> but are adverse to and independent of one
> another.

28 U.S.C. § 1335 (emphasis added).  Similarly, the Interpleader Rule provides, in relevant part:

> Persons having claims against the plaintiff may be
> joined as defendants and required to interplead
> when their claims are such that the plaintiff is or
> may be exposed to double or multiple liability.

Rule 22, Fed.R.Civ.P.

To maintain either a rule or statutory interpleader action, a party must establish

that it is subject to multiple adverse claims against a single fund or liability.  Gaines v. Sunray

Oil Co., 539 F.2d 1136 (8th Cir. 1976); Fulton v. Kaiser Steel Corp., 397 F.2d 580 (5th Cir.

1968).  Exposure to unnecessary vexation by multiplicity of suits is sufficient ground for

maintaining an interpleader action.  MFA Mutual Ins. Co. v. Lusby, 295 F. Supp. 660 (W.D. Va.

1969).  Interpleader is appropriate even where there is only a possibility of adverse claims to a

fund.  Knoll v. Socony Mobil Oil Co., 369 F.2d 425, 428 (10th Cir. 1966), cert. denied, 386 U.S.

977 (1967), overruled on other grounds, Liberty National Bank & Trust Co. v. Acme Tool

Division of Rucker Co., 540 F.2d 1375, 1381 (10th Cir. 1976).  Moreover, interpleader should be

liberally granted to protect stakeholders from double liability and duality of lawsuits.  Dakota

Livestock Co. v. Keim, 552 F.2d 1302 (8th Cir. 1977).  As such, interpleader is to be granted

whenever a stakeholder faces a legitimate fear of multiple litigation, irrespective of the merits of

the competing claims.  Knoll v. Socony Mobil Oil Co., supra.

In the instant matter, Olson, Coffman, and Potter (hereafter, "non-party

claimants") have each asserted claims to some or all of the $71,000.00 in insurance proceeds,

which claims are clearly adverse to Plaintiff's claim to the same funds.  Thus, Liberty Life faces

the possibility of duplicative litigation by each of the unnamed parties.  Liberty Life does not

-8-

claim any interest in the Proceeds payable pursuant to the Policy, but is unsure as to which claimant is entitled to the Proceeds. Liberty Life has incurred no independent liability to any of the adverse claimants and did not create the situation which caused the conflicting claims. In other words, Liberty Life is an innocent stakeholder that claims no beneficial interest in the Proceeds, but which faces the potential for multiple and vexatious litigation if it were to prefer one claimant over the other. Accordingly, an interpleader action is the only procedure that will protect Liberty Life from the substantial risk of multiple litigation, and the resulting potential for double or inconsistent obligations, pursuant to the single Policy of insurance underlying each of the claims in this matter.

Further, it is clear this Court has subject matter jurisdiction over the requested joinder and interpleader of Plaintiff and the unnamed parties for the purpose of determining the rightful recipient of the funds under ERISA. See Metropolitan Life Ins. Co. v. Bigelow, 283 F.3d 436, 439-40 (2d Cir. 2002) (ERISA provides an independent basis for subject matter jurisdiction in an interpleader action arising under ERISA); Metropolitan Life Ins. Co. v. Marsh, 119 F.3d 415, 418 (6th Cir. 1997) (affirming interpleader action asserted pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii) where insurer pled that it cannot safely determine the proper beneficiary of the benefits due); Winstead v. J.C. Penney Co., Inc., 933 F.2d 576, 578-79 (7th Cir. 1991) (holding §1132(a)(3) allows a fiduciary to obtain a declaration regarding its obligations under the terms of a plan); Aetna Life Ins. Co. v. Bayona, 223 F.3d 1030, 1034 (9th Cir. Cal. 2000) ("we hold that interpleader is a form of "appropriate equitable relief" for purposes of section 1132(a)(3)(B)"); Household Bank v. JFS Group, 320 F.3d 1249, 1251 (11th Cir. 2003) (federal-question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising

under federal law").

**D.   Joinder of Olson, Coffman, and Potter will not affect the Court's jurisdiction and all the adverse claimants are subject to service of process from this Court.**

    1.   <u>Because the Court's jurisdiction is not predicated upon the diversity statute, joinder of the non-party claimants will not threaten the Court's jurisdiction.</u>

Olson, Coffman, and Potter (hereafter, "non-party claimants") each assert a claim to the same ERISA-governed life insurance benefits sought by Plaintiff in this matter. Accordingly, the Court's subject matter jurisdiction is established by the existence of a "federal question" (<u>i.e.</u>, ERISA), pursuant to 28 U.S.C. § 1331. Thus, there is no potential for destruction of the Court's jurisdiction based upon a question of adequate diversity of the parties.

In any event, the Court also has jurisdiction under the federal interpleader statute. Although this statute does have a diversity element, that requirement is satisfied by mere <u>minimal</u> diversity among the adverse claimants. <u>State Farm Fire & Casualty Co. v. Tashire</u>, 386 U.S. 523, 530 (U.S. 1967) (interpleader statute "has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be cocitizens"); <u>Hart v. FedEx Ground Package Systems, Inc.</u>, 457 F.3d 675, 676-77 (7th Cir. 2006) ("[f]or many years, [Congress] has permitted minimal diversity suits under the federal interpleader statute"). In the instant matter, both Olson and Coffman are residents of California, while Potter and Plaintiff are residents of Illinois. (Aubin Affdvt., ¶¶ 11 and 15; Complaint, ¶ 1). Accordingly, minimal diversity exists for the parties to the proposed interpleader action, which is all that is required under the interpleader statute. The Court therefore has jurisdiction under the interpleader statute in addition to jurisdiction because of a federal question pursuant to 28 U.S.C. § 1331.

2.     <u>All adverse claimants, including those resident in California, are subject to service of process from this Court pursuant to 28 U.S.C. § 1332(e)(2) of ERISA.</u>

Under the Federal Rules of Civil Procedure, the service of a summons upon a defendant is ordinarily effective to establish personal jurisdiction over the defendant if a court of the state in which the district court sits would have personal jurisdiction over the defendant. Rule 4(k)(1)(A), Fed.R.Civ.P. However, if a federal statute creating a cause of action establishes its own rules for service of process, service made according to that statute is effective to establish personal jurisdiction over the defendant. Rule 4(k)(1)(D), Fed.R.Civ.P.; <u>Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d 934, 941-42 (7th Cir. 2000)("Rule 4(k)(1)(D) provides for jurisdiction whenever a statute explicitly authorizes service of process").

As demonstrated above, the Proceeds in question are payable pursuant to a policy of insurance that is part of an ERISA-governed employee welfare government plan. ERISA provides as follows regarding service of process for a federal court action arising under ERISA:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). A district court's exercise of personal jurisdiction over a defendant pursuant to such a "national service of process" provision is constitutional, notwithstanding even a complete lack of contact between the defendant and the forum district, if the defendant has sufficient contacts with the United States as a whole. <u>Board of Trustees v. Elite Erectors, Inc.</u>, 212 F.3d 1031, 1037 (7th Cir. 2000). Accordingly, any district court in which an action arises under ERISA will have personal jurisdiction over the defendant, if the defendant is properly

-11-

served under the statutory provisions of ERISA, and has sufficient contacts with the United

States. Id.

In the instant matter, Olson and Coffman are residents of California who have

asserted claims adverse to a named beneficiary for life insurance proceeds who resides in the

State of Illinois. (Aubin Affvdt., ¶ 11; Complaint, ¶ 1). Pursuant to the foregoing authorities,

service of process upon them in the district where they reside will be sufficient to establish this

Court's personal jurisdiction. Accordingly, as Plaintiff and Potter both reside, or otherwise can

"be found," in the State of Illinois (Complaint, ¶ 1; Aubin Affdvt., ¶ 15), there is no question but

that this Court may assert personal jurisdiction over all the adverse claimants to the Proceeds. As

such, joinder and interpleader of all the adverse claimants is appropriate pursuant to Rule 19(a),

Fed.R.Civ.P.

     **E.**     **Liberty Life should be permitted to deposit the disputed Proceeds with the Court.**

Rule 67 permits a disinterested stake-holder, such as Liberty Life, to deposit

disputed funds into the Court registry:

> In an action in which any part of the relief sought is a
> judgment for a sum of money or the disposition of a sum
> of money or the disposition of any other thing capable of
> delivery, a party, upon notice to every other party, and by
> leave of court, may deposit with the court all or any part
> of such sum of thing, whether or not that party claims all
> or any part of the sum of thing.

Rule 67, Fed.R.Civ.P. Rule 67 is properly invoked where there is a dispute concerning

entitlement to a sum of money. See Manufacturers Hanover Overseas Capital Corp. v.

Southwire Co., 509 F. Supp. 214 (D.N.Y. 1984). The Rule facilitates judicial economy by

permitting parties who have no interest in the funds or proceedings to withdraw after the Court

obtains custody of the funds. See Garrick v. Weaver, 888 F.2d 687 (10th Cir. 1989). Indeed, at

-12-

least one court has held that depositing disputed funds into the court registry is a pre-requisite to allowing a party to interplead such funds. Grace v. Carroll, 219 F. Supp. 270 (D.N.Y. 1963). Other courts have held that it is within a court's discretion to require a stakeholder to deposit disputed funds with the court. Bauer v. Uniroyal Tire Co., 630 F.2d 1287 (8th Cir. 1980); Percival Construction Co. v. Miller & Miller Auctioneers, Inc., 532 F.2d 116 (10th Cir. 1976).

In the instant matter, Liberty Life is subject to conflicting claims and potential multiple liability concerning entitlement to the Proceeds payable under the Policy. Liberty Life claims no interest in the Proceeds. Depositing the Proceeds will facilitate judicial economy by permitting Liberty Life, which is merely an innocent stakeholder, to withdraw from the dispute while entitlement to the Proceeds is resolved between the adverse claimants. Rule 67 clearly provides for deposit of the Proceeds into the Court under these circumstances. Liberty Life, therefore, should be permitted to deposit the $71,000.00 in insurance proceeds at issue in this matter, plus accrued interest, if any, with the Court.

## III.    CONCLUSION

For the foregoing reasons and authorities, Liberty Life respectfully requests that the Court order the joinder and interpleader of all adverse claimants to the Proceeds at issue in this matter, realign Liberty Life as plaintiff in interpleader and the remaining parties as defendants in interpleader, and permit Liberty Life to deposit the Proceeds with the Court.

Date: April 13, 2007                    Respectfully submitted,

                                        s/ Sara A. Weinberg
                                        Sara A. Weinberg
                                        Attorney for Defendant
                                        **JACKSON LEWIS LLP**
                                        320 W. Ohio Street, Suite 500
                                        Chicago, Illinois 60610

Tel.: (312) 787-4949
Fax: (312) 787-4995
E-mail:  Weinbers@jacksonlewis.com


AND


Ashley B. Abel
Robert Wood (Pro Hac Vice Petition Pending)
**JACKSON LEWIS LLP**
Attorneys for Defendant
One Liberty Plaza
55 Beattie Place, Suite 800
Greenville, SC  29601
Tel.: (864)232 7000
Fax:  (864)235 1381
E-mail:  Abela@jacksonlewis.com
         Woodr@jacksonlewis.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 13, 2007, she caused true and correct copies of the Defendant Liberty Life Assurance Company of Boston's Memorandum of Law In Support of Its Motion for Joinder and Interpleader of Necessary Parties, and to Deposit Funds with the Court to be filed with the Court by the Court's ECF/CM electronic filing protocols, that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system:

> Lawrence A. Stein
> Kathleen R Ryding
> Huck Bouma PC
> 1755 South Naperville Road
> Wheaton, Illinois 60187


/s/ Sara A. Weinberg


This 13th day of April, 2007.

-15-

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### (CHICAGO)

|  |  |
|---|---|
| MICHAEL HAND,<br><br>        PLAINTIFF,<br><br>v.<br><br>LIBERTY MUTUAL,<br><br>        DEFENDANT. | ) C.A. No. 1:07-cv-01422<br>)<br>)       **AFFIDAVIT OF**<br>)     **FRANCINE AUBIN**<br>) **IN SUPPORT OF DEFENDANT'S**<br>) **MOTION FOR JOINDER AND**<br>) **INTERPLEADER OF NECESSARY**<br>) **PARTIES, AND TO DEPOSIT**<br>) **FUNDS WITH THE COURT**<br>) |

STATE OF NEW HAMPSIRE   )
                         )
COUNTY OF STRAFFORD    )

      BEFORE ME, the undersigned authority, personally appeared Francine Aubin, who was duly sworn and says:

      1.    I am over the age of eighteen and am a resident of Madbury, New Hampshire. I am fully competent to testify as to the matters set forth in this affidavit, which are true and correct based upon my own personal knowledge.

      2.    I am currently employed as the Group Life Claims Manager for Liberty Life Assurance Company of Boston ("Liberty Life").

      3.    As part of my duties as Group Life Claims Manager, I am responsible for maintaining records of claims pursuant to Liberty Life's life insurance policies.

      4.    In addition, as part of my duties as Group Life Claims Manager, I am familiar with the life insurance policies issued by Liberty Life and maintain copies of the policy documents in my possession and control.

5. On or about January 1, 1997, Liberty Life issued Group Policy No. SA3-800-000001-01 ("Policy") to Liberty Mutual. The Policy provides certain group life insurance benefits to employees of Liberty Mutual and associated companies. As such, the Policy is part of the Liberty Mutual group life insurance plan ("Plan") for its employees.

6. The document attached as Exhibit A is a true and accurate copy of the policy which controls the claims for benefits payable because of the death of Cassie E. Barrett ("Decedent"), including the claim of Michael Hand, currently Plaintiff in the instant matter. Decedent was a participant in the Plan by virtue of her employment by Liberty Mutual and, thus, was covered by the Policy.

7. Under the terms of the Policy, Decedent had $71,000.00 in basic life benefits. Thus, the death benefit payable by reason of Decedent's death is $71,000.00, plus accrued interest ("Proceeds").

8. According to information provided by Decedent's employer to Liberty Life, Michael Hand ("Hand"), who was Decedent's husband, was the sole designated beneficiary for the Proceeds as of the date of Decedent's death (October 21, 2006).

9. Hand submitted a claim for the Proceeds to Liberty Life on or about January 17, 2007, which Liberty Life approved. At that time, Liberty Life had no notice of potential adverse claims by other parties.

10. On or about January 22, 2007, Liberty Life mailed a check to Hand for the full amount of the Proceeds, plus accrued interest.

11. On or about January 25, 2007, Liberty Life received correspondence from Floyd T. Olson ("Olson") asserting that Barbara E. Coffman ("Coffman") was solely entitled to

- 2 -

the Proceeds. Olson stated that he was Decedent's grandfather and that Coffman was Decedent's mother. He contended Decedent had given him power of attorney over her affairs and instructed him to change the beneficiary designation from Hand to Coffman. Olson's correspondence indicates he and Coffman reside in the State of California.

      12.    Upon receipt of Olson's correspondence, Liberty Life issued a stop-payment order to its bank on the check mailed to Hand.

      13.    On or about January 29, 2007, Liberty Life issued correspondence to Hand and to Olson, advising that it had received adverse claims for the Proceeds, and that it would file an interpleader action unless the claimants resolved their adverse claims between themselves within 30 days.

      14.    On January 30, 2007, Hand contacted Liberty Life by telephone and advised he did not intend to settle with Olson and Coffman.

      15.    On or about February 7, 2007, Liberty Life received correspondence from James Potter, Esq. ("Potter"), advising that he represented Hand regarding Hand's claim to the Proceeds. Potter enclosed a purported notice of a lien upon the Proceeds by assignment from Hand. Potter's state of residence is unknown, but his correspondence indicates his offices are in the State of Illinois.

      16.    On or about March 2, 2007, Liberty Life assigned the adverse claims to outside counsel for initiation of an interpleader action against all of the adverse claimants in order to obtain a determination of the proper party to receive the Proceeds payable because of Decedent's death. Liberty Life claims no beneficial interest in the Proceeds.

      17.    On March 5, 2007, Liberty Life was served with a copy of the Summons

- 3 -

and Complaint for Hand's declaratory judgment action, which Hand had filed on or about February 20, 2007 in the Circuit Court of the Eighteenth Judicial Circuit of the State of Illinois, DuPage County. Liberty Life had no prior notice of the state action.


FURTHER AFFIANT SAYETH NOT.

_Francine C Aubin_
                                                    Francine Aubin


Sworn to and subscribed before me
this _12_ day of April, 2007

_Jodi F Collins_
Notary Public
My Commission Expires: _12/15/09_

- 4 -

RIDER

to be attached to and made a part of
Group Policy No. SA3-800-000001-01
issued by
**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**
(Liberty)

to

**LIBERTY MUTUAL**
(Sponsor)

Effective date of this Rider: January 1, 1998

## ACCELERATED BENEFIT RIDER

NOTE: The receipt of an Accelerated Benefit may be taxable. A covered employee should consult his or her tax consultant or legal advisor before applying for an Accelerated Benefit.

### Accelerated Death Benefit

If, while insured under this policy, a covered employee gives Liberty satisfactory proof of having a terminal condition, such person may receive, a portion of his or her life insurance as an Accelerated Benefit. Such insurance will be paid to the covered employee in one lump sum.

The term, "terminal condition" means a condition:

    (a)    expected to result in the covered person's death within 12 months; and
    (b)    from which there is no reasonable prospect of recovery.

The amount of Accelerated Benefit payable under this Rider is limited to the lesser of the following:

    (a)    the Accelerated Benefit amount requested; and
    (b)    50% of the covered employee's life insurance that is in force on the date such person applies for an Accelerated Benefit; or
    (c)    $250,000.

If the amount of a covered employee's life insurance under this policy is scheduled to reduce within 12 months following the date such person applies for the Accelerated Benefit, the benefit payable under this Rider will be based on the reduced amount.

### Application for an Accelerated Benefit

A covered employee must apply for an Accelerated Benefit. To apply, such person must give Liberty:

    (a)    certification, from a licensed physician who is working within the scope of his license, and is not a member of the covered employee's family, that he or she has a terminal condition, as defined by this rider;
    (b)    supporting evidence satisfactory to Liberty, documenting the terminal condition;
    (c)    a completed claims form.

During the pendency of a claim, Liberty may, at its own expense, have a physician examine the covered person.

If the covered employee has assigned all or a portion of the life insurance under this policy or named an irrevocable beneficiary, the covered employee must also give Liberty a signed written consent form from the assignee or irrevocable beneficiary.

The Accelerated Benefit will be payable upon receipt of:

    (a)    satisfactory evidence of a terminal condition, as described above; and

    (b)    signed written consent from an assignee or irrevocable beneficiary, if required.

**Effect on Insurance**

The amount of a covered employee's life insurance will be reduced by the amount paid as an Accelerated Benefit. Premiums, if any, for the remaining portion of a covered employee's life insurance will be based on the amount of the remaining life insurance in effect after payment of the Accelerated Benefit. Receipt of an Accelerated Benefit does not affect any Accidental Death or Dismemberment insurance benefit in force on a covered employee's life.

**Exceptions**

No Accelerated Benefit will be paid if:

    (a)    the covered employee is required by a court of law to exercise this option to satisfy a claim of creditors, whether in bankruptcy or otherwise;

    (b)    the covered employee is required by a governmental agency to exercise this option in order to apply for, receive, or continue a government benefit or entitlement;

    (c)    all or a part of a covered employee's insurance must be paid to such person's children or spouse or former spouse as part of a divorce decree, separate maintenance agreement or property settlement agreement;

    (d)    the covered employee is married and lives in a community property state, unless such person's spouse has given Liberty signed written consent; or

    (e)    the covered employee has previously received an Accelerated Benefit under this policy or any other group policy held by the Sponsor.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

Form OP3-RID-0006

SA3-800-000001-01
Effective January 1, 1998

## POLICY REISSUE AGREEMENT

**SPONSOR:**                    **LIBERTY MUTUAL**

**POLICY NUMBER:** SA3-800-000001-01

**EFFECTIVE DATE:** January 1, 1997

As of the above effective date, Liberty Life Assurance Company of Boston has issued a new Group Policy to the Sponsor. The new policy replaces a policy bearing the number 0-000001.

The new policy is a continuation of some of the coverages under the replaced policy. Nothing in the new policy will negate or change any action taken or rights incurred before the effective date of the new policy.

The provision of the new policy titled "Delayed Effective Date" will not apply to an employee and/or dependent who was covered under the replaced policy on the effective date of the new policy. However, if a covered active employee is not at work on the effective date of the new policy, any increase in or addition to benefits in such policy will not take effect until he returns to active work. If a covered retired employee or covered dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the effective date of the new policy, any increase or addition to benefits in such policy will not take effect until the confinement ends.

Benefits payable for claims arising prior to the effective date of the new policy will be paid in accordance with the terms of the replaced policy. Benefits payable for any claim arising on or after the effective date of the new policy will be paid in accordance with the terms of the new policy.

The Sponsor hereby accepts the new policy.

Liberty Life Assurance Company of Boston

Accepted by the Sponsor on:                    _____ , 1997
                                                              Liberty Mutual

                    By:                          _____
                                                              (Signature)

                                                 _____
                                                              (Title)

GROUP INSURANCE POLICY

POLICY NUMBER:         SA3-800-000001-01

SPONSOR:              LIBERTY MUTUAL

ADDRESS:              175 Berkley Street
                      Boston, MA 02117

EFFECTIVE DATE:       January 1, 1997

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON (Liberty)** will pay any benefits due in accordance with the terms of this policy. Liberty has issued this policy in consideration of the application and the payment of premium.

This policy is effective at 12:01 A.M. Standard Time at the Sponsor's address on the effective date. It will stay in force until terminated.

This policy is subject to the laws of the jurisdiction of the Sponsor's address.

Signed At Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts 02117.

Form OP3

TABLE OF CONTENTS

SECTION 1                    SCHEDULE OF BENEFITS

SECTION 2                    DEFINITIONS

SECTION 3                    ELIGIBILITY, EFFECTIVE DATE
                             AND TERMINATION PROVISIONS

SECTION 4                    GENERAL PROVISIONS

SECTION 5                    INSURANCE BENEFITS

SECTION 6                    PREMIUMS AND COPY OF
                             APPLICATION

Form OP3-TOC-0001

## SECTION 1 - SCHEDULE OF BENEFITS

The following schedule will be used to determine the amounts of coverage for each covered person.

### Classification of Covered Employees

| | |
|---|---|
| Class 1 | All Active, Full-Time, Part-Time and Temporary Employees. |
| Class 2 | All Retirees who retired prior to 1/1/93. |
| Class 3 | All Other Retirees with 10 or more years of service. |
| Class 4 | All Employees of CUMIS General Insurance Company. |
| Class 5 | All Liberty Northwest Retirees who retired prior to 1/1/06. |

### Employee Life Insurance

An Employee may elect one of the seven Life Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

Note:    The Life Insurance Benefit will be based on the highest attained salary during employment.

| Class | Amount of Insurance |
|---|---|
| Class 1 | OPTION 1 |
| | $  5,000 |
| | OPTION 2 |
| | An amount equal to 1 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. * |
| | OPTION 3 |
| | An amount equal to 2 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. * |
| | OPTION 4 |
| | An amount equal to 3 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. * |
| | OPTION 5 |
| | An amount equal to 4 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. * |

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Employee Life Insurance** (continued)

| Class | Amount of Insurance |
|-------|---------------------|
| Class 1 (continued) | |

### OPTION 6

An amount equal to 5 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

### OPTION 7

An amount equal to 6 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

\*    Any amount of Life Insurance above the current benefit level is subject to proof of insurability to be furnished at the covered employee's expense. Subject to the provisions of this policy titled "Effective Date of Personal Coverage", such excess amount will take effect on the first of the month following the date Liberty accepts such proof as satisfactory.

**Accidental Death and Dismemberment Insurance**

An Employee may elect one of the five Accidental Death and Dismemberment Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

| Class | Full Amount |
|-------|-------------|
| Class 1 | |

### OPTION 1

$ 5,000

### OPTION 2

An amount equal to 1 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

### OPTION 3

An amount equal to 2 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

### OPTION 4

An amount equal to 3 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

SECTION 1 - SCHEDULE OF BENEFITS (continued)

### Accidental Death and Dismemberment Insurance (continued)

Class                                                    Full Amount

Class 1 (continued)                                      OPTION 5

An amount equal to 4 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

*    If a covered employee becomes covered for an amount of Life Insurance in excess of one level above the current benefit level in accordance with the above proof of insurability provision, he will become covered for an equal amount of Accidental Death and Dismemberment Insurance. He will become covered for this equal amount on the date his additional Life Insurance amount becomes effective.

Class                                                    Voluntary Amount

Class 4

An amount elected by the covered employee in increments of $10,000. If amount is over $250,000, it may not exceed 10 times salary. This amount may not exceed a maximum of $500,000 and a minimum of $10,000.

### Retiree Life Insurance

Class                                                    Amount of Insurance

Class 2                                                  Amount on file with the Sponsor.

Class 3 and 5                                            OPTION 1

$ 5,000

OPTION 2

An amount equal to 1, 2, 3, 4, or 5 times the covered employee's annual earnings just prior to retirement. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. The maximum amount may not exceed $250,000.

### Annual Enrollment Period - Applicable to Employee Coverage (Applicable to Class 1)

This policy has an Annual Enrollment Period each year during the month of October. An eligible employee who has previously not enrolled for coverage may elect to be covered during this period and will have to submit proof of insurability. An eligible employee who has previously enrolled for coverage may elect to increase coverage and will have to submit proof of insurability. Proof of insurability will continue to be required for employees who enroll outside of the Annual Enrollment Period or more than thirty one days following their eligibility date, as provided in Section 3 - "Eligibility, Effective Date and Terminations Section - Effective Date of Personal Coverage".

Form OP3-SCH-0003

SA3-800-000001-01 R (9)
Effective January 1, 2006

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

<u>Annual Enrollment Period - Applicable to Employee Coverage</u> (Applicable to Class 4)

This policy has an Annual Enrollment Period each year during the month of October. An eligible employee who has previously not enrolled for coverage may elect to be covered during this period and will have to submit proof of insurability. An eligible employee who has previously enrolled for coverage may elect to increase coverage and will have to submit proof of insurability. Proof of insurability will continue to be required for employees who enroll outside of the Annual Enrollment Period or more than thirty one days following their eligibility date, as provided in Section 3 - "Eligibility, Effective Date and Terminations Section - Effective Date of Personal Coverage".

**Reduction Formula (Applicable to Retirees Only)**

The amount of Life Insurance applicable to the covered employee's class of benefits will reduce at age 71 or older as follows:

ages 71 - 74:   to 50%
ages 75 & up:   to 60%

**Applicable to Class 5**

Note:   Retirees who retire prior to age 65, the Sponsor paid portion of retirement coverage reduces by 15% per year for five consecutive years beginning on January 1st following the first anniversary of the retirement date.

**Applicable to All Other Classes**

Note:   Retirees who retire prior to age 65, the Sponsor paid portion of retirement coverage reduces by 15% per year for five consecutive years beginning on the first anniversary of the retirement date.

**Reduction Formula (Applicable to employees hired in 1992)**

The amount of Life Insurance will reduce for covered, active, full-time employees age 65 or older as follows:

| OPTION 3 | | OPTION 4 | |
|---|---|---|---|
| AGES 65 TO 69 - | 100% OF 1 X PAY<br>+ 65% OF 1 X PAY | AGES 65 TO 69 - | 100% OF 1 X PAY<br>+ 65% OF 2 X PAY |
| AGES 70 TO 74 - | 100 % OF 1 X PAY<br>+ 43% OF 1 X PAY | AGES 70 TO 74 - | 100 % OF 1 X PAY<br>+ 43% OF 2 X PAY |
| AGES 75 TO 79 - | 100 % OF 1 X PAY<br>+ 32% OF 1 X PAY | AGES 75 TO 79 - | 100 % OF 1 X PAY<br>+ 32% OF 2 X PAY |
| AGES 80 & UP - | 100 % OF 1 X PAY<br>+ 19% OF 1 X PAY | AGES 80 & UP - | 100 % OF 1 X PAY<br>+ 19% OF 2 X PAY |

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Reduction Formula (Applicable to employees hired in 1992) (continued)**

| OPTION 5 | | OPTION 6 | |
|---|---|---|---|
| AGES 65 TO 69 - | 100% OF 1 X PAY<br>+ 65% OF 3 X PAY | AGES 65 TO 69 - | 100% OF 1 X PAY<br>+ 65% OF 4 X PAY |
| AGES 70 TO 74 - | 100 % OF 1 X PAY<br>+ 43% OF 3 X PAY | AGES 70 TO 74 - | 100 % OF 1 X PAY<br>+ 43% OF 4 X PAY |
| AGES 75 TO 79 - | 100 % OF 1 X PAY<br>+ 32% OF 3 X PAY | AGES 75 TO 79 - | 100 % OF 1 X PAY<br>+ 32% OF 4 X PAY |
| AGES 80 & UP - | 100 % OF 1 X PAY<br>+ 19% OF 3 X PAY | AGES 80 & UP - | 100 % OF 1 X PAY<br>+ 19% OF 4 X PAY |

The reduced amount of Life Insurance will be rounded to the nearest $1,000.

**Dependent Life Insurance (Applicable to Class 1)**

An Employee may elect one of the four Spouse Life Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

| Classification of Covered Dependents | | | Amount of Insurance | |
|---|---|---|---|---|
| | OPTION 1 | OPTION 2 | OPTION 3 | OPTION 4 |
| Spouse | $ 5,000 | $ 25,000 | $ 75,000 | $ 100,000 |

**Dependent Life Insurance (Applicable to Class 1)**

An Employee may elect one of the three Dependent Child Life Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

| Classification of Covered Dependents | | Amount of Insurance | |
|---|---|---|---|
| | OPTION 1 | OPTION 2 | OPTION 3 |
| Children - Age at Death | | | |
|    Under 8 days | $ 0 | $ 0 | $ 0 |
|    At least 8 days but under 19 years | $ 2,000 | $ 5,000 | $ 10,000 |
|      (25 if a full-time student) | | | |

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

#### Dependent Accidental Death and Dismemberment Insurance (Applicable to Class 4)

| Classification of Covered Dependents | Amount of Insurance |
|---|---|
| Spouse only | 60% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |
| Child(ren) only | The lessor of (a) $50,000 or (b) 20% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |
| Spouse and Child(ren) | |
| Spouse | 50% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |
| Child(ren) | The lessor of (a) $50,000 or (b) 10% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |

#### Annual Enrollment Period - Applicable to Dependent Coverage

This policy has an Annual Enrollment Period each year during the month of October. An eligible employee who has previously not enrolled for dependent coverage may elect to cover his dependents during this period and will have to submit proof of his dependent spouse's insurability if electing dependent spouse Life Insurance of $75,000 or greater . An eligible employee who has previously enrolled for dependent coverage may elect to increase dependent coverage and will have to submit proof of his dependent's insurability if electing dependent spouse Life Insurance of $75,000 or greater. Proof of insurability will continue to be required for employees who enroll their dependents outside of the Annual Enrollment Period or more than thirty one days following their dependents' eligibility date, as provided in Section 3 - "Eligibility, Effective Date and Terminations Provisions - Effective Date of Dependent Coverage".

#### Employee Contributions Required:

Applicable to All Active, Full-Time and Temporary Employees, except CUMIS General Insurance Company Employees:

| | | |
|---|---|---|
| Life Insurance: | Option 1: | No |
| | Option 2: | No |
| | All Other Options: | Yes |
| Accidental Death and Dismemberment Insurance: | | Yes |
| Dependent Life Insurance: | | Yes |

Applicable to All Active, Part-Time Employees, except CUMIS General Insurance Company Employees:

| | | |
|---|---|---|
| Life Insurance: | Option 1: | No |
| | All Other Options: | Yes |
| Accidental Death and Dismemberment Insurance: | | Yes |
| Dependent Life Insurance: | | Yes |

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Employee Contributions Required: (continued)**

Applicable to All CUMIS General Insurance Company Employees:

| | |
|---|---|
| Voluntary Accidental Death and Dismemberment Insurance: | Yes |
| Voluntary Dependent Accidental Death and Dismemberment Insurance: | Yes |

**Increases and Decreases in Amounts of Coverage**

Any increase in or addition to the benefits will take effect on the date of the change.

Any such change applies only to loss of life or accidental injury that occurs on or after the effective date of the change.

If an active employee is not at work on the date the increase or addition is to take effect, it will take effect when he returns to active work. If a covered dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date the increase or addition is to take effect, it will take effect when the confinement ends. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date the increase or addition is to take effect, it will take effect when the confinement ends.

Any decrease in or deletion of benefits will take effect on the date of the change.

Any such change applies to loss of life or accidental injury that occurs on or after the effective date of the change.

## SECTION 2 - DEFINITIONS

A masculine personal pronoun includes the feminine where the context requires.

**"Employee"** means an employee of the Sponsor who is eligible for coverage.

**"Active employee"** means an employee of the Sponsor who works: (a) regularly throughout the Sponsor's entire work week; and (b) at least 37.5 hours per week or for part-time employees at least 20 hours per week. The employee may work at any of the Sponsor's business locations. He may also work at any other location where the Sponsor's business requires him to travel. His main source of earned income must be his earnings received from the Sponsor.

**"Retired employee"** means one who is so classified by the Sponsor.

**"Covered employee"** means an active employee or a retired employee whose coverage is in effect. It does not include an employee whose coverage has ended.

**"Personal coverage"** means coverage of a covered employee with respect to himself.

**"Dependent"** means: (a) an employee's spouse; and (b) an employee's unmarried child (including any stepchild or legally adopted child from the date of the filing of a petition to adopt the child) under age 19. If an unmarried child age 19 or over is a full-time student as defined by the school being attended, he is a dependent until he reaches age 25. "Dependent" does not include a person who is a member of the armed forces.

**"Eligible dependent"** means a dependent of an employee who is eligible for coverage.

**"Covered dependent"** means a dependent whose coverage is in effect. It does not include a dependent whose coverage has ended.

**"Dependent coverage"** means coverage of a covered employee with respect to his dependents.

**"Covered person"** means a covered employee or a covered dependent.

**"Accidental injury"**, or **"injury"** means bodily injury not caused by sickness. This includes related conditions and recurrent symptoms of such injury.

**"Sickness"** means disease or illness including related conditions and recurrent symptoms of the sickness. Sickness also includes pregnancy.

**Applicable to Part-Time Employees "Earnings"** means annual rate of salary which shall equal the hourly rate of pay times 20 hours times 52 weeks. It does not include overtime or any other form of additional compensation. *

**Applicable to All Other Employees "Earnings"** means annual rate of salary and bonuses within the last 12 months. It does not include overtime or any other form of additional compensation. *

* Earnings shall be the rate that is in effect on the date of hire or the prior August 31st, whichever is most recent.

### SECTION 2 – DEFINITIONS (continued)

**"Total disability"** or **"totally disabled"**, with respect to an active employee, means the complete inability to work at any job because of accidental injury or sickness.

**"Total disability"** or **"totally disabled"**, with respect to a covered dependent and retired employee, means the complete inability to do the normal activities of a person of the same age and sex in good health.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

## ELIGIBILITY

**Personal Coverage**

The following classes will be eligible for coverage:

> All Active Employees - **Waiting Period** = None.

If a person is an active employee of the Sponsor in an eligible class on the effective date of the policy, and he has completed the waiting period, he is eligible for coverage on that date.

If an active employee of the Sponsor in an eligible class has not completed the waiting period on the effective date of the policy, he will be eligible for coverage on the date he completes such waiting period.

If a person becomes an active employee of the Sponsor in an eligible class after the effective date of the policy, he will be eligible for coverage on the date he completes the waiting period.

If a person is a retired employee of the Sponsor on the effective date of the policy, he is eligible for Life Insurance on that date.

If an active employee of the Sponsor (as shown above) becomes a retired employee after the effective date of the policy, he will continue to be eligible for Life Insurance.

If a person's employment ends and he is rehired, he must complete any required waiting period unless he is rehired within 12 months.

**Dependent Coverage**

Each employee eligible for personal coverage is eligible for dependent coverage on the later of:

(a)    the date eligible for personal coverage if on that date he has dependents; or

(b)    the date he acquires a dependent if on that date he is eligible for personal coverage.

If both parents are eligible for personal coverage, only one is eligible for dependent coverage for their dependent children.

Form OP3-ELG-0001

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### ASSOCIATED COMPANIES

Companies, corporations, firms or individuals that are subsidiary to or affiliated with the Sponsor and listed below will be called associated companies. Employees of associated companies will be employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Liberty and the Sponsor will be binding on the associated companies.

If an associated company ceases to be an associated company for any reason, its employees will be deemed to have transferred to a class of employees not eligible for coverage under this policy.

Associated companies are:    As on file with the Sponsor

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF PERSONAL COVERAGE

**Applicable to Class 4:**

**Contributions Not Required**

If an employee does not have to pay for the cost of personal coverage, he becomes covered on the date he is eligible.

**Contributions Required**

If an employee must pay part of the cost of personal coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)    on or before the date he is eligible, his coverage takes effect on the date he becomes eligible; or

(b)    within 31 days after the date he becomes eligible, his coverage takes effect on the date he enrolls.

**Delayed Effective Date**

If an active employee is not at work on the last scheduled work day coincident with or preceding the date he is to become covered, he will become covered on the date he returns to active work. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends.

SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

## EFFECTIVE DATE OF PERSONAL COVERAGE

**Applicable to All Other Classes:**

**Contributions Not Required**

If an employee does not have to pay for the cost of personal coverage, he becomes covered on the date he is eligible.

**Contributions Required**

If an employee must pay part of the cost of personal coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)   on or before the date he is eligible, his coverage takes effect on the date he becomes eligible;

(b)   within 31 days after the date he becomes eligible, his coverage takes effect on the date he enrolls;

(c)   after 31 days following the date he becomes eligible, he must submit proof of insurability. Such person's coverage will take effect on the first of the month following the date Liberty accepts such proof as satisfactory. Proof of insurability must be furnished at his own expense.

**Delayed Effective Date**

If an active employee is not at work on the last scheduled work day coincident with or preceding the date he is to become covered, he will become covered on the date he returns to active work. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends.

Form OP3-ELG-0003

SA3-800-000001-01 R (1)
Effective July 1, 1998

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF DEPENDENT COVERAGE

**Applicable to Class 1:**

**Contributions Not Required**

If an employee does not have to pay for the cost of dependent coverage, he becomes covered with respect to his dependents on the date he becomes eligible for dependent coverage.

**Contributions Required**

If an employee must pay part of the cost of dependent coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)    on or before the date he is eligible for dependent coverage, he becomes covered with respect to them on such date;

(b)    within 31 days after the date he is eligible for dependent coverage, he becomes covered with respect to them on the date he enrolls them;

(c)    after 31 days following the date he is eligible for dependent coverage, he must submit proof of each dependent's insurability. He will become covered with respect to them on the first of the month following the date Liberty accepts such proof as satisfactory. Proof of insurability must be furnished at his own expense.

**Additional Dependents**

If, while covered for dependent coverage, an employee acquires another dependent, he will become covered for such dependent on the date he is eligible for coverage for the dependent.

**Delayed Effective Date**

If a dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends. This does not apply to a newborn child.

An employee's dependent coverage will not take effect before the date his personal coverage takes effect.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF DEPENDENT COVERAGE

**Applicable to Class 4:**

**Contributions Not Required**

If an employee does not have to pay for the cost of dependent coverage, he becomes covered with respect to his dependents on the date he becomes eligible for dependent coverage.

**Contributions Required**

If an employee must pay part of the cost of dependent coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)   on or before the date he is eligible for dependent coverage, he becomes covered with respect to them on such date; or

(b)   within 31 days after the date he is eligible for dependent coverage, he becomes covered with respect to them on the date he enrolls them.

**Additional Dependents**

If, while covered for dependent coverage, an employee acquires another dependent, he will become covered for such dependent on the date he is eligible for coverage for the dependent.

**Delayed Effective Date**

If a dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends. This does not apply to a newborn child.

An employee's dependent coverage will not take effect before the date his personal coverage takes effect.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### TERMINATIONS

The personal coverage of a covered employee will end on the date that any of the following events first occurs, subject to any applicable Conversion Privilege or Continuation of Coverage Provisions:

(a)  31 days following the date employment (status as an active employee) or eligibility ends for any reason except that Life Insurance will be continued for retired employees as defined;

(b)  the policy terminates; or

(c)  the end of the last period for which a covered employee makes a required contribution, if he has cancelled his payroll deduction authorization or otherwise failed to pay any required portion of the cost of personal coverage.

The employee's coverage of a covered dependent will end on the date that any of the following events first occurs:

(a)  status as a dependent ends;

(b)  dependent coverage is deleted from the policy;

(c)  the covered employee's personal coverage ends; or

(d)  the end of the last period for which a covered employee makes a required contribution, if he has cancelled his payroll deduction authorization or otherwise failed to pay any required portion of the cost of dependent coverage.

### CONTINUATION OF COVERAGE PROVISIONS

**Lay-off**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 12 weeks following the month in which the lay-off begins. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

**Leave of Absence – Applicable to Military Leave of Absence under the Uniformed Services Employment and Reemployment Rights Act (USERRA)**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 24 months following the month in which the leave of absence begins. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

**Lay-off or Leave of Absence – Applicable to All Other Leaves of Absences**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 12 weeks following the month in which the leave of absence begins, including FMLA. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

Form OP3-TER-0001/CON-0001.31

SA3-810-000001-01 R (2)
Effective January 1, 2006

## SECTION 4 - GENERAL PROVISIONS

**Notice and Proof of Loss.** Written notice of a claim must be given to Liberty within 20 days after loss occurs. Notice must include information to identify the claimant.

When a notice of loss is received, forms will be sent to the claimant for filing proof of loss. If these forms are not furnished within 15 days, the claimant may satisfy the proof of loss requirement by giving Liberty a written statement of the nature and extent of the loss for which claim is made.

Due proof must be given within 90 days after the loss.

If it is not reasonably possible for the claimant to give proof in the time required, Liberty will not reduce or deny the claim for this reason if the proof is filed as soon as possible. But, unless delayed by the claimant's legal incapacity, the proof must be furnished within two years of the 90 day period specified above.

**Examination.** Liberty has the right to have the claimant examined (at Liberty's expense) as often as reasonably necessary while a claim is pending. It may also have an autopsy made unless prohibited by law.

**Actions at Law.** No legal action may be brought to recover under this policy until 60 days after due proof of loss has been given. No such action may be brought after 3 years from the time written proof of loss is required to be given. Legal actions are contingent upon having obtained reconsideration as described below.

**Reconsideration.** Liberty will notify any covered person whose claim is denied in whole or in part. That written notice will explain the reasons for denial. If the claimant does not agree with the reasons given, he or she may request a reconsideration of the claim. To do so, the claimant should write to Liberty within 60 days after the notice of denial was received. The claimant should state why he or she believes the claim was improperly denied. Any data, questions or comments that the claimant thinks are appropriate should be included. Unless Liberty requests additional material in a timely fashion, the claimant will be advised of Liberty's decision within 60 days after his or her letter is received.

**Time Limitation.** If the time limitations shown under: (a) notice and proof of loss; and (b) actions at law, are less than that allowed by law in the state where the covered person lives at the time claim is made, such limitations will be increased to comply with such state law.

**Payment of Benefits.** All benefits are payable when Liberty receives written proof of loss. Benefits for loss of life will be payable to the beneficiary. All other benefits will be payable to the covered person. However, unless the covered person directs otherwise in writing, Liberty has the option of paying all or part of such benefits directly to a person or institution on whose charges claim is based. A covered person may also authorize Liberty to pay benefits directly to a person or institution on whose charges claim is based. Any such payments will discharge Liberty to the extent of payment made. Unless allowed by law, payments may not be attached, nor be subject to a covered person's debts.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, conflicts with the laws of the state where this policy is delivered is changed to conform to such laws.

**Workers' Compensation.** This policy and the benefits provided are not in lieu of, nor will they affect any requirements for, coverage under any Workers' Compensation Law or other similar law.

Form OP3-GNP-0001/GNP-0002

## SECTION 4 - GENERAL PROVISIONS (continued)

**Facility of Payment.** If a beneficiary or covered person is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person. Such payments will be made until claim is made by a guardian.

If a beneficiary or covered person dies while benefits remain unpaid, benefits will be paid, at Liberty's option, to:

(a)   a person or institution on whose charges claim is based;

(b)   the executor or administrator of the covered person's estate; or

(c)   a surviving relative (spouse, parent or child).

Such payment will release Liberty of all further liability to the extent of payment.

**Entire Contract Changes.** This policy, with the Sponsor's application and any individual applications, is the entire contract of insurance. No agent may change this policy or waive any of its provisions. No change in this policy will be effective unless signed by the president or a vice president of Liberty and by the Sponsor. Any statements in any application will be deemed representations and not warranties. No statement will be used as a defense to a claim unless it is in a written application.

**Incontestability.** This policy will not be contested, except for nonpayment of premium, after it has been in force for two years from the effective date. The coverage of any covered person will not be contested, except for nonpayment of premium, after it has been in force for two years during the person's lifetime. No statement by a covered person concerning his insurability will be used by Liberty to deny liability unless: (a) it is stated on a written application signed by him; and (b) a copy of such application is given to him or his beneficiary.

**Misstatement of Age.** If the age of any covered person has been misstated, the insurance payable will be the amount such person is entitled to under the Schedule of Benefits, at his true age. Liberty will adjust the premium so that Liberty pays the correct amount.

**Assignment.** The coverage under this policy is not assignable by the Sponsor without Liberty's written consent.

A covered employee may assign all of his present and future right, title, interest and incidents of ownership of (a) any life insurance; (b) any disability provision of life insurance; and (c) any accidental death and dismemberment insurance under this policy. Such assignment will include, but is not limited to, the rights (a) to make any contribution required to keep the coverage in force; (b) to exercise any conversion privilege; and (c) to change the beneficiary.

**Records.** The Sponsor will keep records of the covered employees under this policy. Such records will include the following: (a) covered employees by name, age and amount of coverage; (b) effective date of coverage and date coverage ends; (c) change of status; (d) name of beneficiary; and (e) other related data. Such data will be given to Liberty as needed or requested on Liberty forms. Liberty has the right to inspect the Sponsor's records at any reasonable time. Clerical errors will not deprive a person of coverage. But such errors will not continue coverage after the termination date described under Terminations.

Form OP3-GNP-0002/GNP-0007

## SECTION 4 - GENERAL PROVISIONS (continued)

**Interpretation of this Policy.** Liberty possesses the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility will be conclusive and binding.

**Canadian Exposure.** With respect to a covered person who lives in Canada: (1) premium and benefit amounts will be deemed to be expressed in Canadian currency; (2) policy provisions concerning the rights of covered persons are subject to applicable provincial statutes; and (3) with respect to benefits, an action under this policy may be brought in any court in the province where the covered person lives.

**Certificate.** Liberty will issue to the Sponsor, for delivery to each covered employee, a certificate describing the coverage under this policy. The certificate will include information about any conversion privilege and the beneficiary. The certificate will not change any provision under this policy.

**Discontinuance of this Policy.** Liberty may discontinue this policy or any coverage afforded hereunder on a premium due date if on any date:

(a)   the number of covered employees is less than 10; or

(b)   the percentage of covered employees in any class of eligible employees is less than 75%.

Liberty will send written notice of such discontinuance to the Sponsor at least 31 days before it's effective.

Liberty may discontinue this policy or any coverage afforded hereunder and for any class of covered employees on a premium due date after it has been in force for a year. Liberty will send written notice of discontinuance to the Sponsor at least 31 days before it is effective.

The Sponsor may discontinue this policy on a premium due date by giving written notice to Liberty before that date. If the Sponsor fails to pay the premiums within the Grace Period, it will be deemed notice by the Sponsor to Liberty to discontinue this policy at the end of the Grace Period.

Discontinuance of the policy will not affect any claim made before the date discontinued.

Form OP3-GNP-0007/GNP-0008

## SECTION 5 - INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE

**Benefits**

Liberty, upon receipt of due proof of death of any covered employee, agrees to pay the proceeds of the life insurance in force on the life of such covered employee under this policy. The benefit payable is shown in the Schedule of Benefits.

**Beneficiary**

Each covered employee must name a beneficiary to whom the life insurance benefits are payable. If, at the death of a covered employee, there is no named or surviving beneficiary, the benefits will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits are usually payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

Form OP3-LIF-0001

SA3-800-000001-01 R (1)
Effective January 1, 2003

## SECTION 5 - INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE (continued)

**Conversion Privilege**

**Conversion Privilege at Individual Termination**

If all or part of a covered employee's coverage ends, the covered employee may convert the amount that ends to an individual life insurance policy. The coverage must end because the covered employee is no longer in an eligible class or leaves his job. Conversion is subject to the following conditions.

Within 31 days after coverage ends, the covered employee must:

(a)    make written application; and

(b)    pay the first premium payment.

The individual policy will be issued without proof of good health. It will contain life insurance benefits only. It will not include term insurance. The policy will be one then being offered by Liberty. The premium due will be the current rate of Liberty that applies to the covered employee's:

(a)    class of risk; and

(b)    age at the birthday nearest to the effective date of the individual policy.

## SECTION 5 - INSURANCE BENEFITS

## EMPLOYEE LIFE INSURANCE (continued)

**Conversion Privilege (continued)**

**Conversion Privilege at Class or Policy Termination**

If coverage ends for all employees or for a covered employee's class, the covered employee is entitled to a limited conversion privilege. The covered employee must have been covered for at least 5 years. The covered employee must apply for the individual policy in the same manner as described above. The amount the covered employee may convert is limited to the lesser of:

(a) the amount the covered employee was covered for on the date the group coverage terminated less any group insurance he becomes eligible for within 31 days; or

(b) $2,000.

The individual policy will be effective 31 days after the covered employee's group coverage ends.

**Death Within the 31 Days Allowed for Conversion**

If a covered employee dies within the 31 days allowed for conversion, Liberty will pay to his beneficiary the amount he was eligible to convert. Such insurance will be paid as a claim under this policy. Any premiums paid for a converted policy will be refunded.

Form OP3-LIF-0003

## SECTION 5- INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE (continued)

**Continuation of Coverage During Total Disability (Not Applicable to Retired Employees)**

If a Covered Employee becomes Totally Disabled while insured under this policy he may be eligible for continued Life Insurance coverage subject to premium payment. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

The Life Insurance benefit continued will be the amount in force on the Covered Employee's life under this policy on the date the Covered Employee is no longer in Active Employment due to Total Disability, subject to any reductions provided by any part of the policy.

Accidental Death and Dismemberment and Dependent coverage will be continued during the Covered Employee's period of Total Disability.

The amount of continued coverage for Accidental Death and Dismemberment and Covered Dependents will be the amount in force at the beginning of the Covered Employee's Total Disability.

The amount continued will not include any part of the Covered Employee's Life Insurance that he converted to an individual policy unless the employee was Totally Disabled when he applied to convert; and he returns the conversion policy to Liberty without claim other than for a refund of the premiums he paid for it.

A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:

1.  the Sponsor determines the Covered Employee ceases to be Totally Disabled;
2.  he returns to Active Employment; or
3.  he reaches age 65; or
4.  the date he begins receiving a benefit from a retirement or pension plan; or
5.  the date the Sponsor classifies him as retired; or
6.  the policy terminates; or
7.  premium payments stop.

If continued Life Insurance coverage ends under this provision, the Covered Employee may convert his Life Insurance benefit as provided in the Conversion Privilege. Dependent coverage may be converted as allowed within this policy.

With respect to this provision, **"Total Disability"** or **"Totally Disabled"** means that the Covered Employee, as a result of Injury or Sickness, is receiving benefits under the Sponsor's Long Term Disability Plan.

## SECTION 5 - INSURANCE BENEFITS

## ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**Applicable to Class 1:**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a covered employee suffers a loss solely as the result of accidental injury that occurs while covered. The loss must occur within 90 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

The Full Amount is payable for the loss of:

(a)    Life;

(b)    Both hands or feet;

(c)    Sight of both eyes;

(d)    One hand and foot;

(e)    One hand and sight of one eye;

(f)    One foot and sight of one eye.

One-half the Full Amount is payable for the loss of:

(a)    One hand or foot;

(b)    Sight of one eye.

"Loss of hands or feet" means complete severance through or above the wrist or ankle joint. "Loss of sight" must be total and irrecoverable.

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

**Payment of Benefits**

Benefits for loss of life are paid to the covered employee's beneficiary. Benefits for other losses are paid to the covered employee.

**Beneficiary**

Each covered employee must name a beneficiary to whom the proceeds for loss of life under this policy are payable. If, at the death of a covered employee, there is no named or surviving beneficiary, the proceeds will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

Form OP3-ADD-0001                                          SA3-800-000001-01 R (1)
                                                          Effective July 1, 1998

## SECTION 5 - INSURANCE BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (continued)

**Applicable to Class 1 (continued):**

**Beneficiary (continued)**

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits for loss of life are payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**Exceptions**

No benefits are payable for any loss contributed to or caused by:

(a)  suicide;

(b)  intentionally self-inflicted injury;

(c)  disease or bodily or mental illness (or medical or surgical treatment thereof);

(d)  infections, except septic infections of and through a visible wound;

(e)  war (declared or undeclared);

(f)  drugs that are voluntarily taken, ingested or injected, unless as prescribed or administered by a physician.

## SECTION 5 - INSURANCE BENEFITS

## FAMILY ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**Applicable to Class 4:**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a covered person suffers a loss solely as the result of accidental injury that occurs while covered. The loss must occur within 90 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

The Full Amount is payable for the loss of:

(a)    Life;

(b)    Both hands or feet;

(c)    Sight of both eyes;

(d)    One hand and one foot;

(e)    One hand and sight of one eye;

(f)    One foot and sight of one eye.

One-half the Full Amount is payable for the loss of:

(a)    One hand or foot;

(b)    Sight of one eye.

"Loss of hands or feet" means complete severance through or above the wrist or ankle joint; "Loss of sight" must be total and irrecoverable.

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

**Payment of Benefits**

Benefits for a covered employee's loss of life are paid to the covered employee's beneficiary. Benefits for other losses are paid to the covered employee.

**Beneficiary**

Each covered employee must name a beneficiary to whom the proceeds for his loss of life under this policy are payable. If at the death of a covered employee there is no named or surviving beneficiary, the proceeds will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

### SECTION 5 - INSURANCE BENEFITS

### FAMILY ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (continued)

**Applicable to Class 4 (continued):**

**Beneficiary (continued)**

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits for loss of life are payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**Exceptions**

No benefits are payable for any loss caused by:

(a)    suicide;

(b)    intentionally self-inflicted injury;

(c)    disease or bodily or mental illness (or medical or surgical treatment thereof);

(d)    infections, except septic infections of and through a wound, and infections occurring because of accidental ingestion of poisonous food substances; and

(e)    war (declared or undeclared) or participation in a riot.

(f)    drugs that are voluntarily taken, ingested or injected, unless as prescribed or administered by a physician.

## SECTION 5 - INSURANCE BENEFITS

### DEPENDENT LIFE INSURANCE

**Benefits**

If Liberty is given proof of death of a covered dependent, Liberty will pay to the covered employee the amount of Dependent Life Insurance in force for such dependent. This amount is payable when a covered dependent dies from any cause, at any time or place while covered. The life insurance benefit will be paid in one sum.

**Conversion Privilege**

If a covered employee's personal coverage ends because:

(a)    of his death; or

(b)    his employment in an eligible class ends,

his covered dependent spouse may convert Dependent Life Insurance to an individual policy.

Within 31 days after coverage ends, the covered dependent spouse must:

(a)    make written application; and

(b)    pay the first premium payment.

The individual policy will contain life insurance benefits only. It will not include term insurance. The policy will be one then being offered by Liberty. Proof of good health is not required.

If a covered employee's personal coverage ends because:

(a)    coverage ends for all employees; or

(b)    coverage ends for all employees in his eligible class,

his covered dependent spouse is entitled to a limited conversion privilege. The covered employee must be entitled to convert to an individual policy for his dependent spouse to have this limited privilege. Conversion must be applied for in the same way as stated above.

The amount the covered dependent spouse may convert is limited to the lesser of:

(a)    the amount the dependent spouse was covered for on the date coverage ended less any group insurance he becomes eligible for within 31 days; or

(b)    $2,000.

The individual policy will become effective 31 days after the covered employee's personal coverage ends. Dependent Life Insurance is payable if a covered dependent spouse dies during this period. The amount payable is the amount he or she was entitled to convert. Such insurance will be paid under this policy. Any premium paid for an individual policy will be refunded.

Form OP3-DEP-0001/DEP-0002

## SECTION 6 - PREMIUMS

Liberty has set the premiums that apply to the coverage provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

Liberty may, upon notice to the Sponsor, set new premium rates to become effective on or at any time after the first anniversary date of this policy.

Liberty may set new premium rates to become effective on the date the terms of this policy are changed. Any such change in policy terms will be made in accord with the General Provisions regarding "Entire Contract; Changes".

**Payment of Premiums.** The premium is payable by the Sponsor. The premium should be sent to:

(a)    Liberty at its Home Office in Boston, Massachusetts; or

(b)    Liberty's agent.

If any premium is not paid before its grace period ends, the policy will terminate.

**Grace Period.** A grace period of 31 days will be allowed for the payment of premium after a premium due date other than the first. No interest will be charged. During this period this policy will continue in force. But, if the Sponsor gives Liberty written notice to terminate the policy on an earlier date, then this policy will end on such earlier date. The Sponsor must pay the pro rata premium for the time the policy was in force during the grace period.

## Experience Rating Refunds

After each policy period throughout which this policy remains in force, the Sponsor may receive an experience rating refund in accordance with Liberty's retrospective experience rating formula. "Experience rating refund" means the return of some part of the premium that the Sponsor has paid for this policy.

Any experience rating refund will be payable to the Sponsor. By written request, the Sponsor may direct that all or a part of an experience rating refund be applied to future premiums on this policy. In any event, the Sponsor must apply for the sole benefit of covered persons any amount by which:

(a)    the aggregate employee contributions toward the cost of this policy

exceeds

(b)    the Sponsor's total payment for this policy period, less the experience rating refund for the same period.

Form OP3-PRE-0003

**Retrospective Premium Adjustment**

After each policy period, Liberty may be entitled to an extra premium, called a retrospective premium. The retrospective premium is determined according to a formula specified in the Retrospective Premium Agreement between the Sponsor and Liberty.

After each policy period, Liberty will be entitled to a retrospective premium in the event that:

    (a)   the sum of:
          (1)  the basic expense premium;
          (2)  the incurred claims charges;
          (3)  the incurred statutory assessments;
          (4)  the incurred premium taxes; and
          (5)  the deficit, if any, from the immediately preceding policy period

        exceeds

    (b)   100% of the standard premium payable for all coverages subject to this provision in that policy year.

"Standard premium" means the premium that is subject to the Retrospective Premium Agreement.

The first "policy period" begins on the effective date of this policy and ends on the first anniversary of the effective date of this policy. While this policy continues in force, each subsequent policy period will begin at 12:01 AM of the day immediately following the last day of the preceding policy period and will last for 12 months, except that the last policy period will end on the date this policy terminates.

Form OP3-PRE-0004

RIDER __16__

to be attached to and made a part of
Group Policy No. SA3-800-000001-01
issued by

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**
(Liberty)

to

**LIBERTY MUTUAL**
(Sponsor)

Effective date of this Rider:          January 1, 2006.


The policy is hereby amended by deleting Form OP3-TER-0001/CON-0001.31 and replacing it with the attached Form OP3-TER-0001/CON-0001.31. The new page is marked SA3-800-000001-01 R (2).


**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**



Accepted by the Sponsor on:          _____, 2006
                                                    LIBERTY MUTUAL


                              By:     _____
                                                    (Signature)


                                      _____
                                                    (Title)


OP3-RID-0001

Case 3:08-cv-00640-JAH-BLM    Document 1-2    Filed 04/04/2008    Page 87 of 102
Case 1:07-cv-01422    Document 14-4    Filed 04/13/2007    Page 1 of 5

Page 1

LEXSEE 2003 U.S. DIST. LEXIS 5455

**DANIEL TINGLER, Plaintiff, v. UNUM LIFE INSURANCE COMPANY OF AMERICA, dba UNUM Provident; and JOHN DOE PLAN ADMINISTRATOR, Defendants.**

**CIVIL ACTION NO. 6:02-1285**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA, PARKERSBURG DIVISION**

**2003 U.S. Dist. LEXIS 5455**

**April 2, 2003, Decided**

**NOTICE:** [*1] NOT INTENDED FOR PRINT PUBLICATION

**DISPOSITION:** Defendants' motion to recharacterize Count I was granted; Defendants' motion to dismiss Count II, III, and V was granted with prejudice; Defendants' motion to dismiss Count IV was granted; and Defendants' motion to strike the plaintiff's request for extracontractual compensatory and punitive damages and jury trial was granted.

**COUNSEL:** For DANIEL TINGLER, plaintiff: Todd S. Wiseman, Parkersburg, WV.

For UNUM LIFE INSURANCE COMPANY OF AMERICA, defendant: Christopher L. Slaughter, STEPTOE & JOHNSON, Charleston, WV.

For UNUM LIFE INSURANCE COMPANY OF AMERICA, defendant: Cynthia B. Jones, STEPTOE & JOHNSON, Morgantown, WV.

**JUDGES:** JOSEPH R. GOODWIN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH R. GOODWIN

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' motion to dismiss the plaintiff's first amended and supplemental complaint. [Docket 16]. The court **FINDS** that all of the plaintiff's various claims are either completely or substantively preempted by the Employee Retirement Income Security Act [*2] of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Accordingly, the court (1) **GRANTS** the defendants' motion to recharacterize Count I as a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) **GRANTS** the defendants' motion to dismiss Count II, III, and V with prejudice because such claims are not authorized under ERISA's civil enforcement provisions; (3) **GRANTS** the defendants' motion to dismiss Count IV because it relates to the processing of the plaintiff's benefits under an ERISA plan; and (4) **GRANTS** the defendants' motion to strike the plaintiff's request for extracontractual compensatory and punitive damages and a jury trial.

**I. Background**

On September 20, 2002, the plaintiff, David Tingler, filed his original complaint in the Circuit Court of Wood County seeking the payment of long-term disability benefits under an ERISA-covered employee benefit plan (Nova Plan) sponsored by the plaintiff's employer, Nova Chemicals, Inc. (Nova), and insured and administered by the defendant, Unum Life Insurance Company of America (Unum). The plaintiff's complaint asserted claims for breach [*3] of contract, breach of fiduciary duty, and negligence against Nova, Unum, and/or "John Doe," as plan administrator. All of the claims were based on Unum's denial of long-term disability benefits.

On October 25, 2002, the defendants removed the action to this court on the ground that the plaintiff's state law claims were completely preempted by ERISA. Although the plaintiff's complaint facially stated only state law claims, the plaintiff failed to file a motion to remand. On November 22, 2002, Unum filed its answer to the complaint. Thereafter, the plaintiff voluntarily dismissed Nova as a defendant and was granted leave to file an amended complaint. The first amended and supplemental complaint (amended complaint), filed on February 18, 2003, reasserts the state law claims alleged in the original complaint and adds two state law counts against

Unum, charging violations of the West Virginia Unfair Trade Practices Act (WVUTPA), W. Va. Code § 33-11-1 *et seq.,* and West Virginia common law.

## II. Standard of Review

Before reaching the defendants' motion to dismiss, this court must first consider whether it has jurisdiction. *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.,* 74 F.3d 46, 48 (4th Cir. 1996). [*4] Consideration of jurisdiction is a continuing obligation of the court because the removal statute explicitly commands that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Thus, even though the plaintiff has not filed a motion to remand, out of an abundance of caution, the court will first consider the defendant's assertion of this court's subject matter jurisdiction.

When a court considers a motion to dismiss pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* all well-pled allegations are taken as true, with all inferences resolved in the plaintiff's favor. *Randall v. United States,* 30 F.3d 518, 521 (4th Cir.1994). The standard on a motion to dismiss is rigorous. "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and entitle it to relief." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). For the limited purpose of ruling on the defendants' motion, the [*5] court has accepted as true the facts alleged by the plaintiff in his amended complaint and has viewed them in a light most favorable to the plaintiff. Viewed in such a light, the plaintiff contends that Unum and the plan administrator wrongfully withheld the plaintiff's request for long-term disability benefits pursuant to the Nova Plan.

## III. Discussion

The defendant argues that the state law claims asserted by the plaintiff in his amended complaint are completely preempted because the Nova Plan, which is the subject of this action, is a plan regulated by ERISA. The defendant thus asserts that the plaintiff's state law causes of action should be either dismissed or recharacterized as a claim for benefits under either ERISA § 514(a), 29 U.S.C. § 1144(a), or ERISA § 502(a), 29 U.S.C. § 1132(a)(1)(B), and that the plaintiff's ERISA claim for breach of fiduciary duty should be dismissed. Additionally, the defendant argues that the plaintiff's requests for extracontractual damages and a jury trial should be stricken, as neither are available under ERISA. The court will address each of the asserted causes of actions in turn. [*6]

### A. "State Law" Claims

Although the plaintiff has not filed a motion to remand, the court must nevertheless determine whether removal jurisdiction exists in this case. In their removal notice, the defendants assert that the plaintiff's state law claims are preempted by ERISA. Specifically, the defendants assert that the plaintiff's state law claims are substantively preempted by § 514(a) and/or completely preempted by ERISA's civil enforcement scheme.

An action may be removed to a federal district court if it is one over which the district court would have original jurisdiction. 28 U.S.C. § 1441(b). District courts have original jurisdiction over actions arising under the laws of the United States. *Id.* § 1331. An action arises under the laws of the United States for purposes of § 1331 if the federal claim appears on the face of a well pleaded complaint. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9-12, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). Here, defendants argue that removal is proper under the complete preemption exception to the well-pleaded complaint rule. Where federal law completely preempts state law claims, this exception allows [*7] removal to federal court even if no federal claims appear in the complaint. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987).

Complete preemption contrasts with substantive preemption, which preempts state law but does not, as a defense, confer federal jurisdiction. ERISA's preemption provision declares that, with limited exceptions, "the provisions of this title ... shall supercede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). "The phrase 'relates to' is given its common sense meaning as having '[1] connection with or [2] reference to such a plan.'" *Am. Med. Security, Inc. v. Bartlett,* 111 F.3d 358, 361 (4th Cir. 1997) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983)).

Alternatively, claims that fall under ERISA's civil enforcement provision, § 502(a)(1)(B), are completely preempted. *See McCutcheon v. Valley Rich Dairy,* 81 F. Supp.2d 657, 659 n.2 (S.D. W. Va. 2000) (Haden, C.J.). Under this provision, a plan participant or beneficiary may sue to recover benefits [*8] due under a plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987). Accordingly, the question before the court is whether the plaintiff's state law claims are substantively or completely preempted by ERISA.

## 1. Motion to Recharacterize Breach of Contract Claim

In Count I of his amended complaint, the plaintiff asserts a claim for breach of contract for the defendants' alleged wrongful denial of long-term disability benefits under the Nova Plan. Because the contract in question is an ERISA plan, this claim is clearly preempted. n1 ERISA § 502 provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Clearly, an action to enforce the terms of a contract that is an ERISA plan is necessarily an alternate mechanism for ERISA and therefore is completely preempted by ERISA. *See Darcangelo v. Verizon Communications Inc.,* 292 F.3d 181, 195 (4th Cir. 2002); [*9] *Aliff v. BP Am.,* 26 F.3d 486 (4th Cir. 1994).

> n1 Although the plaintiff now contends that the Unum policy at issue is not an ERISA plan, the plaintiff has stated in both his complaint and amended complaint that "upon information and belief, the long term disability benefits provided to Daniel Tingler were part of an ERISA plan." (Compl. at P 17, 1st Am. Compl. at P 13). The plaintiff claims entitlement to long term disability benefits payable under a group long term disability plan maintained by his employer. This is a classic "welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

Nevertheless, as the Fourth Circuit has stated, "when a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502." *Darcangelo,* 292 F.3d at 195. Thus, "what was a state [*10] claim for breach of contract becomes a federal claim for the enforcement of contractual rights under § 502(a)(1)(B)." *Id.* Accordingly, the court **GRANTS** the defendant's motion to recharacterize the plaintiff's breach of contract claim as a claim for benefits under ERISA § 502(a)(1)(B).

## 2. Motion to Dismiss Breach of Fiduciary Duty, Negligence, and West Virginia Common Law Claims

In Count II of his amended complaint, the plaintiff alleges that the plan administrator "breached the fiduciary duties owed to the plaintiff" under ERISA. (1st Am. Compl. at P 30). In Count III, the plaintiff asserts a negligence claim against the plan administrator for breaching his "affirmative duty to act in the best interests of the plan beneficiaries, including, but not limited to this plaintiff." (1st Am. Compl. at P 32). In Count V, the plaintiff asserts West Virginia common law claims against Unum for "knowingly, wrongfully, intentionally and maliciously refusing to act in conformity with the rulings of the West Virginia Supreme Court of Appeals in the manner in which it treated plaintiff and handled his insurance claim." (1st Am. Compl. at P 56). The court reads Counts II, III, [*11] and V of the amended complaint to all state the same claim for enforcement of the fiduciary requirements of ERISA and of the ERISA plan. Thus, the court will simply address whether the amended complaint states a claim for breach of fiduciary duty against the defendants pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). n2

> n2 In his reply brief to the defendants' motion to dismiss and strike, the plaintiff makes reference to a West Virginia state law bad faith insurance claim. No such claim appears in either the original or amended complaint.

ERISA claims for breach of fiduciary duty are cognizable, if at all, under either § 502(a)(2) or § 502(a)(3). *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.,* 102 F.3d 712 (4th Cir. 1996). Section 502(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1009 of this title." 29 U.S.C. § 1132(a)(2). [*12] Section 502(a)(2), however, does not provide any assistance to the plaintiff. It has long been settled that "any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries." *Coyne & Delany,* 102 F.3d at 714 (citing *Mass. Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 87 L. Ed. 2d 96, 105 S. Ct. 3085 (1985)). In this case, the plaintiff seeks disability benefits for himself alone. Accordingly, the court **FINDS** that the plaintiff has not stated a claim under ERISA § 502(a)(2).

As an alternative, § 502(a)(3) allows a participant or beneficiary to bring suit to obtain "appropriate equitable relief (i) to redress ... violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). In *Mertens v. Hewitt Associates,* 508 U.S. 248, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993), the Supreme Court observed that "appropriate equitable relief" under § 502(a)(3) does not encompass legal remedies, such as money damages. 508 U.S. at 256. The court has further explained that "appropriate equitable relief" under § 502(a)(3) only includes such forms of equitable relief "*typically* [*13] available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.* (emphasis in original).

Case 3:08-cv-00640-JAH-BLM    Document 1-2    Filed 04/04/2008    Page 90 of 102
Case 1:07-cv-01422    Document 14-4    Filed 04/13/2007    Page 4 of 5

Page 4

2003 U.S. Dist. LEXIS 5455, *

In this case, the plaintiff requests "the payment of the disability benefits, past, present and future compensatory damages for his economic loss." (1st Am. Compl. at 7). This relief is the same relief already sought by the plaintiff in his § 502(a)(1)(B) claim. Significantly, where a participant is provided adequate relief by the right to bring a claim for benefits under § 502(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy in a breach of fiduciary duty claim under § 502(a)(3). *See, e.g., Varity Corp. v. Howe,* 516 U.S. 489, 515, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996); *Griggs v. E.I. Dupont de Nemours & Co.,* 237 F.3d 371, 385 (4th Cir. 2001); *Wilkins v. Baptist Healthcare Sys.,* 150 F.3d 609, 615-16 (6th Cir. 1998); *Tolson v. Avondale* [Indus., 141 F.3d 604 (5th Cir. 1998)] *Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir. 1996); *Coffman v. Metropolitan Life Ins. Co.,* 138 F. Supp.2d 764, 766 (S.D. W. Va. 2001) (Haden, C.J.). The court **FINDS** that the plaintiff's claim [*14] is clearly one for benefits that can redressed, if at all, under § 502(a)(1)(B). Accordingly, the court **GRANTS** the defendant's motion to dismiss Counts II, III, and V.

### 3. Motion to Dismiss Unfair Trade Practices Claim

Count IV sets forth a claim for unfair settlement practices in violation of the West Virginia Unfair Trade Practices Act (WVUTPA), W. Va. Code § 33-11-4(9). Claims under the WVUTPA that are "related to" the processing of benefits pursuant to an ERISA plan are preempted by ERISA. *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 419-20 (4th Cir. 1993); *Tri-State Mach., Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309, 315 (4th Cir. 1994); *Coffman,* 138 F. Supp. 2d at 766. In this case, the plaintiff alleges that the defendants failed to conduct a reasonable investigation of his long-term disability claim. While this allegation may constitute a violation of the WVUTPA, it also represents an attempt to recover benefits allegedly due under the Nova Plan. Accordingly, the court **FINDS** that Count IV of the plaintiff's complaint is preempted by ERISA's broad preemption provision, 29 U.S.C. § 1144 (a). [*15]

Concluding that the plaintiff's claims relate to an ERISA plan and thus fall under ERISA's broad preemption provision does not, however, end the inquiry. The plaintiff also argues that ERISA's savings clause saves the claim because the WVUTPA regulates the business of insurance. ERISA § 1144(b)(2)(A) permits the states to enact any law "which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Fourth Circuit, however, has already applied § 1144(a) to a beneficiary's attempt to assert WVUTPA claims arising out of a plan's denial of benefits and has held that those claims "are not saved from preemption by the savings clause."

*Custer,* 12 F.3d at 420; *see also Nationwide,* 33 F.3d at 315 (4th Cir. 1994) (stating that "the holding in *Custer* applies here"); *Coffman,* 138 F. Supp.2d at 766 (noting that *Custer* and *Nationwide* control and that the district court cannot "alter the force and effect of settled circuit law"). Thus, the court **FINDS** that ERISA's savings clause does not save the plaintiff's WVUTPA claims from preemption. Accordingly, the court **GRANTS** the [*16] defendants' motion to dismiss Count IV of the amended complaint.

### B. Defendants' Motions to Strike

#### 1. Motion to Strike Demands for Extracontractual and Punitive Damages

The defendants move to strike the plaintiff's demands for extracontractual and punitive damages on the grounds that such damages have been precluded in ERISA cases. It is well-established case law that extracontractual damages are not available under ERISA. *Mass. Mutual Life Ins. Co. v. Russel,* 473 U.S. 134, 148 (1985) (holding that ERISA does not provide a cause of action for extracontractual damages caused by improper handling of claims); *Reinking v. Phila. Am. Life Ins. Co.,* 910 F.2d 1210, 1219-20 (4th Cir. 1990) (denying claim for extracontractual damages for emotional distress), *overruled in part on other grounds, Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1030 (4th Cir. 1993); *Grover v. Cent. Benefits Nat'l Life Ins. Co.,* 876 F. Supp. 826, 829 (S.D. W. Va. 1995) (Haden, C.J.); *Farrie v. Charles Town Races Inc.,* 901 F. Supp. 1101, 1105-06 (N.D. W. Va. 1995) (allowing motion to strike ERISA claims for [*17] extracontractual and punitive damages). Accordingly, the court **GRANTS** the defendant's motion to strike the plaintiff's claims for extracontractual and punitive damages.

#### 2. Motion to Strike Jury Demand

The defendants have moved to strike the plaintiff's jury demand. Plaintiffs are not entitled to a jury trial for ERISA claims. *See Grover,* 876 F. Supp. at 826; *Abels v. Kaiser Aluminum & Chem. Corp.,* 803 F. Supp. 1151, 1152-53 (S.D. W. Va. 1992) (Haden, C.J.) (neither punitive damages nor trial by jury are available under ERISA (citing *Berry v. Ciba-Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir. 1985)). Accordingly, the court **GRANTS** the defendant's motion to strike the plaintiff's jury demand.

### III. Conclusion

In sum, the court **FINDS** that all of the plaintiff's various claims are either completely or substantively preempted by ERISA. Accordingly, the court (1) **GRANTS** the defendants' motion to recharacterize Count I as a claim for benefits under § 502(a)(1)(B) of

2003 U.S. Dist. LEXIS 5455, *

ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) **GRANTS** the defendants' motion to dismiss Count II, III, and V with [*18] prejudice because such claims are not authorized under ERISA's civil enforcement provisions; (3) **GRANTS** the defendants' motion to dismiss Count IV because it relates to the processing of the plaintiff's benefits under an ERISA plan; and (4) **GRANTS** the defendants' motion to strike the plaintiff's request for extracontractual compensatory and punitive damages and a jury trial.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 2, 2003

JOSEPH R. GOODWIN

UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL HAND, | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) C.A. No. 1:07-cv-01422 |
| | ) Judge Milton I. Shadur |
| LIBERTY MUTUAL, | ) Magistrate Judge Nan R. Nolan |
| | ) |
| DEFENDANT. | ) |
| | ) |

**RE-NOTICE OF MOTION**

TO:    Lawrence A. Stein
       Kathryn R. Ryder
       Huck Bouma PC
       1755 South Naperville Road
       Wheaton, Illinois 60187

PLEASE TAKE NOTICE THAT on **Friday, May 4, 2007,** we shall appear before the Honorable Milton I. Shadur or any judge sitting in his place and stead in Courtroom 2303 and shall then and there present the Defendant's *Motion for Joinder and Interpleader of Necessary Parties, and to Deposit the Funds with the Court*, true and correct copies of which are attached hereto and hereby served upon you.

Dated: April 13, 2007             Respectfully submitted,

                                  JACKSON LEWIS LLP


                                  By:____/s/ Sara A. Weinberg_____
                                  Sara A. Weinberg
                                  Attorney for Defendant
                                  **JACKSON LEWIS LLP**
                                  320 W. Ohio Street, Suite 500
                                  Chicago, Illinois 60610
                                  Tel.: (312) 787-4949
                                  Fax: (312) 787-4995
                                  E-mail: Weinbers@jacksonlewis.com

                                  AND

Ashley B. Abel
Robert Wood (Pro Hac Vice Petition Pending)
**JACKSON LEWIS LLP**
Attorneys for Defendant
One Liberty Plaza
55 Beattie Place, Suite 800
Greenville, SC 29601
Tel.: (864)232 7000
Fax: (864)235 1381
E-mail: Abela@jacksonlewis.com
          Woodr@jacksonlewis.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 13, 2007, she caused true and correct copies of the foregoing to be filed with the Court by the Court's ECF/CM electronic filing protocols and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system:

Lawrence A. Stein
Kathleen R Ryding
Huck Bouma PC
1755 South Naperville Road
Wheaton, Illinois 60187


/s/ Sara A. Weinberg

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                      Case Number:

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| |
|---|
| NAME (Type or print) |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br> s/ |
| FIRM |
| STREET ADDRESS |
| CITY/STATE/ZIP |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| | |

| | |
|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE?     YES ☐     NO ☐ | |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE?     YES ☐     NO ☐ | |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR?     YES ☐     NO ☐ | |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY?     YES ☐     NO ☐ | |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                    Case Number:

**AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:**

| | |
|---|---|
| NAME (Type or print) | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) <br> s/ | |
| FIRM | |
| STREET ADDRESS | |
| CITY/STATE/ZIP | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☐ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ☐ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☐ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                         Case Number: 07-1422

Michael Hand

v.

Liberty Mutal

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Michael Hand

| | |
|---|---|
| **NAME (Type or print)**<br>Edward J. Sedlacek | |
| **SIGNATURE (Use electronic signature if the appearance form is filed electronically)**<br>s/ Edward J. Sedlacek | |
| **FIRM**<br>Huck Bouma PC | |
| **STREET ADDRESS**<br>1755 S. Naperville Road, Suite 200 | |
| **CITY/STATE/ZIP**<br>Wheaton, IL 60187 | |
| **ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)**<br>6279764 | **TELEPHONE NUMBER**<br>(630) 221-1755 |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ☑ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Michael Hand

            Plaintiff,

v.                            Case No.: 1:07−cv−01422
                                    Honorable Milton I. Shadur

Liberty Mutual

            Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, May 4, 2007:

      MINUTE entry before Judge Milton I. Shadur :Motion for joinder [12] is granted; Response to interpleader is to be filed on or before May 25, 2007. Motion hearing held on 5/4/2007 regarding motion for joinder[12] Mailed notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

### United States District Court for the Northern District of Illinois

Case Number: 07CV1422                    Assigned/Issued By: NF

Judge Name:                              Designated Magistrate Judge:

---

**FEE INFORMATION**

*Amount Due:*    ☐ $350.00    ☐ $39.00    ☐ $5.00

              ☐ IFP       ☐ No Fee    ☐ Other _____

              ☐ $455.00

Number of Service Copies _____        Date: _____

(For Use by Fiscal Department Only)

Amount Paid: _____            Receipt #: _____

Date Payment Rec'd: _____           Fiscal Clerk: _____

---

**ISSUANCES**

☑ Summons                          ☐ Alias Summons

☐ Third Party Summons              ☐ Lis Pendens

☐ Non Wage Garnishment Summons     ☐ Abstract of Judgment
                                      _____

☐ Wage-Deduction Garnishment Summons   _____

                                       (Victim, Against and $ Amount)

☐ Citation to Discover Assets

☐ Writ _____
              (Type of Writ)

3  Original and  3  copies on  5/23/7  as to CROSS DEF'S _____
                                 (Date)

BARBARA E. COFFMAN, FLOYD OLSON, JAMES POTTER _____

_____

C:\wpwin80\docket\feeinfo.frm    03/14/05

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MICHAEL HAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  1:07-cv-01422 |
| | ) | |
| LIBERTY MUTUAL, FLOYD OLSON, | ) | Judge Milton I. Shadur |
| BARBARA E. COFFMAN, and | ) | |
| JAMES POTTER, | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| Defendants. | ) | |

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S
STATEMENT OF CROSS-CLAIMS AGAINST DEFENDANTS' FLOYD OLSON,
BARBARA E. COFFMAN AND JAMES POTTER**

Defendant Liberty Life Assurance Company of Boston, incorrectly identified in the

caption as "Liberty Mutual" (hereafter, "Liberty Life"), through its undersigned counsel, states

as follows for its Cross-Claims against the above-named Defendants Floyd Olson ("Olson"),

Barbara E. Coffman, a/k/a Barbara E.C. Klimatis ("Coffman") and James Potter, Esq. ("Potter"),

who were all joined as Defendants in this matter pursuant to this Court's Order dated May 4,

2007:

1.     Liberty Life seeks interpleader, pursuant to 28 U.S.C. § 1335 and Rule 22,

Fed.R.Civ.P., to determine entitlement to $71,000.00, plus accrued interest, if any, in life

insurance proceeds ("Proceeds") payable by reason of the death of Cassie E. Barrett

("Decedent"), an employee insured under a group life insurance policy issued by Liberty Life to

Decedent's employer.

**THE PARTIES**

2.     Liberty Life is an insurance company incorporated under the laws of the

state of Massachusetts with its principal place of business in Boston, Massachusetts.

3.    Plaintiff Michael Hand ("Plaintiff" or "Hand") is a resident of DuPage County, Illinois. Upon information and belief, Plaintiff was Decedent's husband at the time of her death.

4.    Olson, who was joined as a Defendant pursuant to this Court's Order dated May 4, 2007, is a resident of the State of California. Upon information and belief, Olson is Decedent's maternal grandfather.

5.    Coffman, who was joined as a Defendant pursuant to this Court's Order dated May 4, 2007, is a resident of the State of California. Upon information and belief, Coffman is Decedent's mother.

6.    Potter, who was joined as a Defendant pursuant to this Court's Order dated May 4, 2007, is a resident of Barrington, Illinois. Upon information and belier, Potter is an attorney who claims to have an assignment and/or lien from Plaintiff of, or against, Plaintiff's asserted claim to the Proceeds.

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction of Plaintiff's Complaint as it involves claims that relate to the laws of the United States. Specifically, Plaintiff Hand and Defendants Olson, Coffman, and Potter (hereafter, "adverse claimants") each assert a claim for benefits allegedly due under the Policy, which was issued by Liberty Life to the Decedent's employer, Liberty Mutual. Liberty Life issued the Policy pursuant to the Liberty Mutual life insurance plan ("Liberty Mutual Plan") for its employees, which provides life insurance benefits to employees of Liberty Mutual and associated companies. Thus, the Policy is part of an employee welfare benefits plan as defined by ERISA. A copy of the Policy is attached as Exhibit A.

8.    This Court has original jurisdiction of Liberty Life's cross-claims, and its previously asserted counterclaims against Hand, pursuant to 28 U.S.C. § 1335 because Liberty

2

Life seeks interpleader to resolve competing claims for life insurance benefits in excess of $500.00 by minimally diverse claimants.

9.     This Court also has original federal-question jurisdiction of Liberty Life's cross-claims, and its previously asserted counterclaims against Hand, pursuant to the provisions of 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), because the Proceeds at issue in this matter are life insurances benefits provided through an employee welfare benefit plan subject to ERISA. The adverse claimants have asserted conflicting claims to the Proceeds at issue herein. In Hand's Complaint, he seeks a declaratory judgment that he is entitled to the Proceeds. As such, the Complaint seeks relief cognizable under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and ERISA's civil enforcement provisions, namely 29 U.S.C. § 1132(a)(1)(B) (claim for benefits due) and 29 U.S.C. § 1132(a)(3) (claim for equitable relief for violation of ERISA or an ERISA plan). Liberty Life's cross-claims and counterclaims are similarly cognizable pursuant to the same provisions, because each of the adverse claimants could bring an action for benefits due pursuant to 29 U.S.C. § 1132(a)(1)(B).

10.     This Court has personal jurisdiction over Hand, and is entitled to assert personal jurisdiction over Potter, in that each is a citizen and resident of the State of Illinois.

11.     This Court is entitled to assert personal jurisdiction over Olson and Coffman, in that each has, or claims to have, an interest in the life insurance proceeds payable by reason of the death of an employee insured under a policy issued and maintained pursuant to an ERISA welfare benefit plan for employees of Liberty Mutual, including, but not limited to, employees in the State of Illinois. Accordingly, both Olson and Coffman are subject to the Court's personal jurisdiction through the nationwide service of process provisions of 29 U.S.C. § 1132(e)(2) and Rule 4(k)(1)(D), Fed.R.Civ.P.

12.    Venue is appropriate pursuant to 28 U.S.C. §§ 1391 and 1397 in that Hand resides in this District.

### FACTS

13.    Liberty Life issued the Policy to Liberty Mutual on or about January 1, 1997.    The Policy attached hereto as Exhibit A formed part of the Liberty Mutual ERISA-governed life insurance plan for its employees.

14.    Decedent had $71,000.00 in basic group life insurance coverage under the Policy.    Thus, the total death benefit payable under the Policy by reason of Decedent's death is $71,000.00.

15.    According to information provided by Decedent's employer to Liberty Life, Hand was the sole designated beneficiary for the Proceeds as of the date of Decedent's death.

16.    Hand submitted a claim for the Proceeds to Liberty Life on or about January 17, 2007.

17.    Liberty Life approved Hand's claim and, on or about January 22, 2007, mailed a check to Hand for the full amount of the Proceeds, plus accrued interest.

18.    On or about January 25, 2007, Liberty Life received correspondence from Olson asserting that Coffman was solely entitled to the Proceeds.

19.    Liberty Life immediately issued a stop-payment order to its bank on the check mailed to Hand.

20.    On or about January 29, 2007, Liberty Life issued correspondence to Hand and to Olson, advising that it had received adverse claims for the Proceeds, and that it would file an interpleader action unless the claimants advised Liberty Life within 30 days that they had settled their dispute between themselves.

4