21.     On or about February 7, 2007, Liberty Life received correspondence from Potter advising that he represented Hand regarding his claim to the Proceeds, and enclosed a purported notice of a lien upon the Proceeds by assignment from Hand.

22.     On or about March 2, 2007, Liberty Life referred its file regarding the adverse claims to the undersigned counsel for initiation of an interpleader action against all of the adverse claimants.

23.     On March 5, 2007, Liberty Life was served with a copy of the Summons and Complaint for Plaintiff's declaratory judgment action, which Plaintiff had filed on or about February 20, 2007 in the Circuit Court of the Eighteenth Judicial Circuit of the State of Illinois, DuPage County.  Liberty Life had no prior notice of the state action.

24.     On March 13, 2007, Liberty Life removed the State Court action to this Court.

25.     On March 22, 2007, Liberty Life filed its answer to the Complaint, including its counterclaims against Hand and its proposed cross-claims against Olson, Coffman, and Potter pending submission of a motion by Liberty Life for joinder of the adverse claimants who at that time were not Parties to this action.

26.     On May 13, 2007, Liberty Life filed its Rule 19 Motion for Joinder and Interpleader of Necessary Parties, and to Deposit Funds with the Court.

27.     The Court granted Liberty Life's motion on May 4, 2007.

## COUNT I:  INTERPLEADER

28.     Hand contends he is solely entitled to the Proceeds payable under the Policy by reason of Decedent's death.

29.     Olson and Coffman contend Coffman is solely entitled to the Proceeds

payable under the Policy by reason of Decedent's death.

30.     Potter has purported to assert a claim or lien against some or all of the Proceeds in Liberty Life's hands through assignment by Hand.

31.     Liberty Life is an innocent stakeholder and is unable to determine which of the adverse claimants is entitled to the Proceeds without the risk of litigation by the other claimants.  In other words, Liberty Life faces the threat of multiple litigation with the potential for incurring duplicative liability, and therefore cannot reasonably pay the Proceeds to any of the adverse claimants.

32.     Liberty Life stands ready to pay the appropriate party the Proceeds due under the Policy.  The adverse claims prevent Liberty Life, which claims no beneficial interest in the Proceeds, from making payment on any claim for the Proceeds.

33.     Liberty Life has obtained the Court's permission to deposit the Proceeds with the Court, and shall presently deposit said funds.

## COUNT II: CLAIM FOR EQUITABLE RELIEF PURSUANT TO § 1132(a)(3)(B)(ii) OF ERISA

34.     Liberty Life incorporates by reference the allegations set forth in paragraphs 1 through 33 immediately above.

35.     Under the terms of the Policy, Liberty Life has sole authority for determination of claims and benefits. As such, Liberty life is an ERISA fiduciary.

36.     Liberty Life has a fiduciary duty under ERISA and the Policy to disburse the insurance benefits according to the terms of the Policy, the information provided to Liberty Life, and the applicable law.  In the instant matter, Liberty Life received conflicting claims to the Proceeds. In order to protect itself from the risk of duplicative litigation and the potential for incurring duplicative liability for benefits payable because of Decedent's death, Liberty Life

needs the assistance of the Court to inquire into the matter and to adjudicate the interests of the adverse claimants in a single proceeding.

37.     Accordingly, pursuant to § 1132(a)(3)(B)(ii) of ERISA, Liberty Life requests equitable relief through interpleader for purposes of determining the proper beneficiary to receive the Proceeds at issue in this matter in a single action.

### COUNT III:  PETITION FOR DECLARATORY JUDGMENT

38.     Liberty Life incorporates by reference the allegations set forth in paragraphs 1 through 37 immediately above.

39.     Liberty Life is unable to determine which of the adverse claimants is entitled to the Proceeds at issue in this matter without facing the threat of multiple litigation with the potential for imposing duplicative liability under the Policy.

40.     Pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(1)(B) of ERISA, this Court has jurisdiction and authority to declare the rights of the adverse claimants to the funds at issue in this matter, and to discharge Liberty Life, Liberty Mutual, and the Liberty Mutual Plan from all further liability under the Policy.

41.     The controversy regarding the Proceeds is ripe for determination by the Court, in light of the conflicting adverse claims to the Proceeds.

### RELIEF REQUESTED

WHEREFORE, Liberty Life prays that the Court order as follows:

1.     that each of the adverse claimants appear and seek adjudication or reach settlement among themselves regarding their respective rights and interests in the Proceeds under the Policy;

2.     that each of the adverse claimants are enjoined from instituting any other

proceeding against Liberty Life, Liberty Mutual, or the Liberty Mutual Plan regarding the Proceeds payable under the Policy by reason of Decedent's death;

        3.      that, in the event it is determined that any other person not yet joined as a party to this action may make a claim for, or be entitled to, the Proceeds under the Policy, such person be joined and subjected to paragraph 2 of this request for relief;

        4.      that Liberty Life, Liberty Mutual, and the Liberty Mutual Plan be fully and finally discharged from all liability under the Policy;

        5.      that Liberty Life be dismissed from this action; and

        6.      such other and further relief as the Court may deem just and proper.


Date:  May 24, 2007               Respectfully submitted,

                           s/ Sara A. Weinberg
                           Sara A. Weinberg
                           Attorney for Defendant
                           **JACKSON LEWIS LLP**
                           320 W. Ohio Street, Suite 500
                           Chicago, Illinois 60610
                           Tel.: (312) 787-4949
                           Fax: (312) 787-4995
                           E-mail:  Weinbers@jacksonlewis.com

                           AND

                           Ashley B. Abel
                           **JACKSON LEWIS LLP**
                           Attorneys for Defendant
                           One Liberty Plaza
                           55 Beattie Place, Suite 800
                           Greenville, SC  29601
                           Tel.: (864)232 7000
                           Fax:  (864)235 1381
                           E-mail:  Abela@jacksonlewis.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 22, 2007 she caused true and correct copies of the

foregoing LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S STATEMENT OF

CROSS-CLAIMS AGAINST DEFENDANTS FLOYD OLSON, BARBARA E. COFFMAN

AND JAMES POTTER, ESQ. to be filed with the Court by the Court's ECF/CM electronic

filing protocols and that same will therefore be electronically served upon all attorneys of record

registered with the Court's ECF/CM system.   Further, said document will be duly served, along

with a Summons from this Court, upon Defendants FLOYD OLSON, BARBARA E.

COFFMAN AND JAMES POTTER, ESQ. according to the applicable rules for service of

process upon parties defendant.


　　　　　　　　　　　　　　　　 /s/ Sara A. Weinberg
　　　　　　　　　　　　　　　　Sara A. Weinberg

# RIDER

to be attached to and made a part of
Group Policy No. SA3-800-000001-01
issued by

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**
(Liberty)

to

**LIBERTY MUTUAL**
(Sponsor)

Effective date of this Rider: January 1, 1998

## ACCELERATED BENEFIT RIDER

NOTE:  The receipt of an Accelerated Benefit may be taxable.  A covered employee should consult his or her tax consultant or legal advisor before applying for an Accelerated Benefit.

**Accelerated Death Benefit**

If, while insured under this policy, a covered employee gives Liberty satisfactory proof of having a terminal condition, such person may receive, a portion of his or her life insurance as an Accelerated Benefit. Such insurance will be paid to the covered employee in one lump sum.

The term, "terminal condition" means a condition:

(a)    expected to result in the covered person's death within 12 months; and
(b)    from which there is no reasonable prospect of recovery.

The amount of Accelerated Benefit payable under this Rider is limited to the lesser of the following:

(a)    the Accelerated Benefit amount requested; and
(b)    50% of the covered employee's life insurance that is in force on the date such person applies for an Accelerated Benefit; or
(c)    $250,000.

If the amount of a covered employee's life insurance under this policy is scheduled to reduce within 12 months following the date such person applies for the Accelerated Benefit, the benefit payable under this Rider will be based on the reduced amount.

**Application for an Accelerated Benefit**

A covered employee must apply for an Accelerated Benefit.  To apply, such person must give Liberty:

(a)    certification, from a licensed physician who is working within the scope of his license, and is not a member of the covered employee's family, that he or she has a terminal condition, as defined by this rider;
(b)    supporting evidence satisfactory to Liberty, documenting the terminal condition;
(c)    a completed claims form.

During the pendency of a claim, Liberty may, at its own expense, have a physician examine the covered person.

If the covered employee has assigned all or a portion of the life insurance under this policy or named an irrevocable beneficiary, the covered employee must also give Liberty a signed written consent form from the assignee or irrevocable beneficiary.

The Accelerated Benefit will be payable upon receipt of:

    (a)    satisfactory evidence of a terminal condition, as described above; and
    (b)    signed written consent from an assignee or irrevocable beneficiary, if required.

**Effect on Insurance**

The amount of a covered employee's life insurance will be reduced by the amount paid as an Accelerated Benefit. Premiums, if any, for the remaining portion of a covered employee's life insurance will be based on the amount of the remaining life insurance in effect after payment of the Accelerated Benefit. Receipt of an Accelerated Benefit does not affect any Accidental Death or Dismemberment insurance benefit in force on a covered employee's life.

**Exceptions**

No Accelerated Benefit will be paid if:

    (a)    the covered employee is required by a court of law to exercise this option to satisfy a claim of creditors, whether in bankruptcy or otherwise;
    (b)    the covered employee is required by a governmental agency to exercise this option in order to apply for, receive, or continue a government benefit or entitlement;
    (c)    all or a part of a covered employee's insurance must be paid to such person's children or spouse or former spouse as part of a divorce decree, separate maintenance agreement or property settlement agreement;
    (d)    the covered employee is married and lives in a community property state, unless such person's spouse has given Liberty signed written consent; or
    (e)    the covered employee has previously received an Accelerated Benefit under this policy or any other group policy held by the Sponsor.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

SA3-800-000001-01
Effective January 1, 1998

## POLICY REISSUE AGREEMENT

**SPONSOR:**                    **LIBERTY MUTUAL**

**POLICY NUMBER:** SA3-800-000001-01

**EFFECTIVE DATE:** January 1, 1997

As of the above effective date, Liberty Life Assurance Company of Boston has issued a new Group Policy to the Sponsor. The new policy replaces a policy bearing the number 0-000001.

The new policy is a continuation of some of the coverages under the replaced policy. Nothing in the new policy will negate or change any action taken or rights incurred before the effective date of the new policy.

The provision of the new policy titled "Delayed Effective Date" will not apply to an employee and/or dependent who was covered under the replaced policy on the effective date of the new policy. However, if a covered active employee is not at work on the effective date of the new policy, any increase in or addition to benefits in such policy will not take effect until he returns to active work. If a covered retired employee or covered dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the effective date of the new policy, any increase or addition to benefits in such policy will not take effect until the confinement ends.

Benefits payable for claims arising prior to the effective date of the new policy will be paid in accordance with the terms of the replaced policy. Benefits payable for any claim arising on or after the effective date of the new policy will be paid in accordance with the terms of the new policy.

The Sponsor hereby accepts the new policy.


Liberty Life Assurance Company of Boston


Accepted by the Sponsor on:                                    ,1997
_____
                                                    Liberty Mutual

                    By:        _____
                                                    (Signature)

                                    _____
                                                    (Title)

GROUP INSURANCE POLICY

POLICY NUMBER:        SA3-800-000001-01

SPONSOR:              LIBERTY MUTUAL

ADDRESS:              175 Berkley Street
                      Boston, MA  02117

EFFECTIVE DATE:       January 1, 1997

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON (Liberty) will pay any benefits due in accordance with the terms of this policy.  Liberty has issued this policy in consideration of the application and the payment of premium.

This policy is effective at 12:01 A.M. Standard Time at the Sponsor's address on the effective date.  It will stay in force until terminated.

This policy is subject to the laws of the jurisdiction of the Sponsor's address.

Signed At Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts  02117.

Form OP3

TABLE OF CONTENTS

SECTION 1                          SCHEDULE OF BENEFITS

SECTION 2                          DEFINITIONS

SECTION 3                          ELIGIBILITY, EFFECTIVE DATE
                                   AND TERMINATION PROVISIONS

SECTION 4                          GENERAL PROVISIONS

SECTION 5                          INSURANCE BENEFITS

SECTION 6                          PREMIUMS AND COPY OF
                                   APPLICATION

Form OP3-TOC-0001

## SECTION 1 - SCHEDULE OF BENEFITS

The following schedule will be used to determine the amounts of coverage for each covered person.

### Classification of Covered Employees

| | |
|---|---|
| Class 1 | All Active, Full-Time, Part-Time and Temporary Employees. |
| Class 2 | All Retirees who retired prior to 1/1/93. |
| Class 3 | All Other Retirees with 10 or more years of service. |
| Class 4 | All Employees of CUMIS General Insurance Company. |
| Class 5 | All Liberty Northwest Retirees who retired prior to 1/1/06. |

### Employee Life Insurance

An Employee may elect one of the seven Life Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

Note:    The Life Insurance Benefit will be based on the highest attained salary during employment.

Class                                                          Amount of Insurance

Class 1                                                          OPTION 1

$  5,000

OPTION 2

An amount equal to 1 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

OPTION 3

An amount equal to 2 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

OPTION 4

An amount equal to 3 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

OPTION 5

An amount equal to 4 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Employee Life Insurance** (continued)

Class                                                          Amount of Insurance

Class 1 (continued)                                                OPTION 6

An amount equal to 5 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

OPTION 7

An amount equal to 6 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

* Any amount of Life Insurance above the current benefit level is subject to proof of insurability to be furnished at the covered employee's expense. Subject to the provisions of this policy titled "Effective Date of Personal Coverage", such excess amount will take effect on the first of the month following the date Liberty accepts such proof as satisfactory.

**Accidental Death and Dismemberment Insurance**

An Employee may elect one of the five Accidental Death and Dismemberment Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

Class                                                          Full Amount

Class 1                                                            OPTION 1

$  5,000

OPTION 2

An amount equal to 1 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

OPTION 3

An amount equal to 2 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

OPTION 4

An amount equal to 3 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

### Accidental Death and Dismemberment Insurance (continued)

| Class | Full Amount |
|-------|-------------|
| Class 1 (continued) | OPTION 5 |

An amount equal to 4 times the covered employee's annual earnings. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. *

\*   If a covered employee becomes covered for an amount of Life Insurance in excess of one level above the current benefit level in accordance with the above proof of insurability provision, he will become covered for an equal amount of Accidental Death and Dismemberment Insurance. He will become covered for this equal amount on the date his additional Life Insurance amount becomes effective.

| Class | Voluntary Amount |
|-------|------------------|
| Class 4 | |

An amount elected by the covered employee in increments of $10,000. If amount is over $250,000, it may not exceed 10 times salary. This amount may not exceed a maximum of $500,000 and a minimum of $10,000.

### Retiree Life Insurance

| Class | Amount of Insurance |
|-------|---------------------|
| Class 2 | Amount on file with the Sponsor. |
| Class 3 and 5 | OPTION 1 |

$ 5,000

OPTION 2

An amount equal to 1, 2, 3, 4, or 5 times the covered employee's annual earnings just prior to retirement. If not a multiple of $1,000, this amount will be rounded to the nearest multiple of $1,000. The maximum amount may not exceed $250,000.

### Annual Enrollment Period - Applicable to Employee Coverage (Applicable to Class 1)

This policy has an Annual Enrollment Period each year during the month of October. An eligible employee who has previously not enrolled for coverage may elect to be covered during this period and will have to submit proof of insurability. An eligible employee who has previously enrolled for coverage may elect to increase coverage and will have to submit proof of insurability. Proof of insurability will continue to be required for employees who enroll outside of the Annual Enrollment Period or more than thirty one days following their eligibility date, as provided in Section 3 - "Eligibility, Effective Date and Terminations Section - Effective Date of Personal Coverage".

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

<u>Annual Enrollment Period - Applicable to Employee Coverage</u> (Applicable to Class 4)

This policy has an Annual Enrollment Period each year during the month of October. An eligible employee who has previously not enrolled for coverage may elect to be covered during this period and will have to submit proof of insurability. An eligible employee who has previously enrolled for coverage may elect to increase coverage and will have to submit proof of insurability. Proof of insurability will continue to be required for employees who enroll outside of the Annual Enrollment Period or more than thirty one days following their eligibility date, as provided in Section 3 - "Eligibility, Effective Date and Terminations Section - Effective Date of Personal Coverage".

**Reduction Formula (Applicable to Retirees Only)**

The amount of Life Insurance applicable to the covered employee's class of benefits will reduce at age 71 or older as follows:

> ages 71 - 74:   to 50%
> ages 75 & up:   to 60%

**Applicable to Class 5**

Note:   Retirees who retire prior to age 65, the Sponsor paid portion of retirement coverage reduces by 15% per year for five consecutive years beginning on January 1st following the first anniversary of the retirement date.

**Applicable to All Other Classes**

Note:   Retirees who retire prior to age 65, the Sponsor paid portion of retirement coverage reduces by 15% per year for five consecutive years beginning on the first anniversary of the retirement date.

**Reduction Formula (Applicable to employees hired in 1992)**

The amount of Life Insurance will reduce for covered, active, full-time employees age 65 or older as follows:

| OPTION 3 | | OPTION 4 | |
|---|---|---|---|
| AGES 65 TO 69  - | 100% OF 1 X PAY<br>+ 65% OF 1 X PAY | AGES 65 TO 69 | 100% OF 1 X PAY<br>+ 65% OF 2 X PAY |
| AGES 70 TO 74  - | 100 % OF 1 X PAY<br>+ 43% OF 1 X PAY | AGES 70 TO 74  - | 100 % OF 1 X PAY<br>+ 43% OF 2 X PAY |
| AGES 75 TO 79  - | 100 % OF 1 X PAY<br>+ 32% OF 1 X PAY | AGES 75 TO 79  - | 100 % OF 1 X PAY<br>+ 32% OF 2 X PAY |
| AGES 80 & UP  - | 100 % OF 1 X PAY<br>+ 19% OF 1 X PAY | AGES 80 & UP  - | 100 % OF 1 X PAY<br>+ 19% OF 2 X PAY |

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Reduction Formula (Applicable to employees hired in 1992) (continued)**

| OPTION 5 | | | OPTION 6 | | |
|---|---|---|---|---|---|
| AGES 65 TO 69 | - | 100% OF 1 X PAY<br>+ 65% OF 3 X PAY | AGES 65 TO 69 | - | 100% OF 1 X PAY<br>+ 65% OF 4 X PAY |
| AGES 70 TO 74 | - | 100 % OF 1 X PAY<br>+ 43% OF 3 X PAY | AGES 70 TO 74 | - | 100 % OF 1 X PAY<br>+ 43% OF 4 X PAY |
| AGES 75 TO 79 | - | 100 % OF 1 X PAY<br>+ 32% OF 3 X PAY | AGES 75 TO 79 | - | 100 % OF 1 X PAY<br>+ 32% OF 4 X PAY |
| AGES 80 & UP | - | 100 % OF 1 X PAY<br>+ 19% OF 3 X PAY | AGES 80 & UP | - | 100 % OF 1 X PAY<br>+ 19% OF 4 X PAY |

The reduced amount of Life Insurance will be rounded to the nearest $1,000.

**Dependent Life Insurance (Applicable to Class 1)**

An Employee may elect one of the four Spouse Life Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

| Classification of Covered Dependents | | Amount of Insurance | | |
|---|---|---|---|---|
| | OPTION 1 | OPTION 2 | OPTION 3 | OPTION 4 |
| Spouse | $ 5,000 | $ 25,000 | $ 75,000 | $ 100,000 |

**Dependent Life Insurance (Applicable to Class 1)**

An Employee may elect one of the three Dependent Child Life Insurance Plans. The plan elected is on file with the sponsor and may only be changed once per year during the Annual Enrollment Period or when an employee experiences a Qualified Family Status Change.

| Classification of Covered Dependents | | Amount of Insurance | |
|---|---|---|---|
| | OPTION 1 | OPTION 2 | OPTION 3 |
| Children - Age at Death | | | |
| Under 8 days | $ 0 | $ 0 | $ 0 |
| At least 8 days but under 19 years<br>(25 if a full-time student) | $ 2,000 | $ 5,000 | $ 10,000 |

Form OP3-SCH-0005

SA3-800-000001-01 R (10)
Effective January 1, 2003

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Dependent Accidental Death and Dismemberment Insurance (Applicable to Class 4)**

| Classification of Covered Dependents | Amount of Insurance |
|---|---|
| Spouse only | 60% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |
| Child(ren) only | The lessor of (a) $50,000 or (b) 20% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |
| Spouse and Child(ren) | |
| Spouse | 50% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |
| Child(ren) | The lessor of (a) $50,000 or (b) 10% of the covered employee's amount of Voluntary Accidental Death and Dismemberment Insurance. |

**Annual Enrollment Period - Applicable to Dependent Coverage**

This policy has an Annual Enrollment Period each year during the month of October. An eligible employee who has previously not enrolled for dependent coverage may elect to cover his dependents during this period and will have to submit proof of his dependent spouse's insurability if electing dependent spouse Life Insurance of $75,000 or greater . An eligible employee who has previously enrolled for dependent coverage may elect to increase dependent coverage and will have to submit proof of his dependent's insurability if electing dependent spouse Life Insurance of $75,000 or greater. Proof of insurability will continue to be required for employees who enroll their dependents outside of the Annual Enrollment Period or more than thirty one days following their dependents' eligibility date, as provided in Section 3 - "Eligibility, Effective Date and Terminations Provisions - Effective Date of Dependent Coverage".

**Employee Contributions Required:**

Applicable to All Active, Full-Time and Temporary Employees, except CUMIS General Insurance Company Employees:

| | | |
|---|---|---|
| Life Insurance: | Option 1: | No |
| | Option 2: | No |
| | All Other Options: | Yes |
| Accidental Death and Dismemberment Insurance: | | Yes |
| Dependent Life Insurance: | | Yes |

Applicable to All Active, Part-Time Employees, except CUMIS General Insurance Company Employees:

| | | |
|---|---|---|
| Life Insurance: | Option 1: | No |
| | All Other Options: | Yes |
| Accidental Death and Dismemberment Insurance: | | Yes |
| Dependent Life Insurance: | | Yes |

Form OP3-SCH-0006

SA3-800-000001-01 R (8)
Effective January 1, 2003

## SECTION 1 - SCHEDULE OF BENEFITS (continued)

**Employee Contributions Required: (continued)**

Applicable to All CUMIS General Insurance Company Employees:

| | |
|---|---|
| Voluntary Accidental Death and Dismemberment Insurance: | Yes |
| Voluntary Dependent Accidental Death and Dismemberment Insurance: | Yes |

**Increases and Decreases in Amounts of Coverage**

Any increase in or addition to the benefits will take effect on the date of the change.

Any such change applies only to loss of life or accidental injury that occurs on or after the effective date of the change.

If an active employee is not at work on the date the increase or addition is to take effect, it will take effect when he returns to active work. If a covered dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date the increase or addition is to take effect, it will take effect when the confinement ends. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date the increase or addition is to take effect, it will take effect when the confinement ends.

Any decrease in or deletion of benefits will take effect on the date of the change.

Any such change applies to loss of life or accidental injury that occurs on or after the effective date of the change.

## SECTION 2 - DEFINITIONS

A masculine personal pronoun includes the feminine where the context requires.

**"Employee"** means an employee of the Sponsor who is eligible for coverage.

**"Active employee"** means an employee of the Sponsor who works: (a) regularly throughout the Sponsor's entire work week; and (b) at least 37.5 hours per week or for part-time employees at least 20 hours per week. The employee may work at any of the Sponsor's business locations. He may also work at any other location where the Sponsor's business requires him to travel. His main source of earned income must be his earnings received from the Sponsor.

**"Retired employee"** means one who is so classified by the Sponsor.

**"Covered employee"** means an active employee or a retired employee whose coverage is in effect. It does not include an employee whose coverage has ended.

**"Personal coverage"** means coverage of a covered employee with respect to himself.

**"Dependent"** means: (a) an employee's spouse; and (b) an employee's unmarried child (including any stepchild or legally adopted child from the date of the filing of a petition to adopt the child) under age 19. If an unmarried child age 19 or over is a full-time student as defined by the school being attended, he is a dependent until he reaches age 25. "Dependent" does not include a person who is a member of the armed forces.

**"Eligible dependent"** means a dependent of an employee who is eligible for coverage.

**"Covered dependent"** means a dependent whose coverage is in effect. It does not include a dependent whose coverage has ended.

**"Dependent coverage"** means coverage of a covered employee with respect to his dependents.

**"Covered person"** means a covered employee or a covered dependent.

**"Accidental injury"**, or **"injury"** means bodily injury not caused by sickness. This includes related conditions and recurrent symptoms of such injury.

**"Sickness"** means disease or illness including related conditions and recurrent symptoms of the sickness. Sickness also includes pregnancy.

Applicable to Part-Time Employees **"Earnings"** means annual rate of salary which shall equal the hourly rate of pay times 20 hours times 52 weeks. It does not include overtime or any other form of additional compensation. *

Applicable to All Other Employees **"Earnings"** means annual rate of salary and bonuses within the last 12 months. It does not include overtime or any other form of additional compensation. *

* Earnings shall be the rate that is in effect on the date of hire or the prior August 31st, whichever is most recent.

## SECTION 2 – DEFINITIONS (continued)

**"Total disability"** or **"totally disabled"**, with respect to an active employee, means the complete inability to work at any job because of accidental injury or sickness.

**"Total disability"** or **"totally disabled"**, with respect to a covered dependent and retired employee, means the complete inability to do the normal activities of a person of the same age and sex in good health.

SA3-800-000001-01
Effective January 1, 1997

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### ELIGIBILITY

**Personal Coverage**

The following classes will be eligible for coverage:

> All Active Employees  -  **Waiting Period  =  None.**

If a person is an active employee of the Sponsor in an eligible class on the effective date of the policy, and he has completed the waiting period, he is eligible for coverage on that date.

If an active employee of the Sponsor in an eligible class has not completed the waiting period on the effective date of the policy, he will be eligible for coverage on the date he completes such waiting period.

If a person becomes an active employee of the Sponsor in an eligible class after the effective date of the policy, he will be eligible for coverage on the date he completes the waiting period.

If a person is a retired employee of the Sponsor on the effective date of the policy, he is eligible for Life Insurance on that date.

If an active employee of the Sponsor (as shown above) becomes a retired employee after the effective date of the policy, he will continue to be eligible for Life Insurance.

If a person's employment ends and he is rehired, he must complete any required waiting period unless he is rehired within 12 months.

**Dependent Coverage**

Each employee eligible for personal coverage is eligible for dependent coverage on the later of:

(a)    the date eligible for personal coverage if on that date he has dependents; or

(b)    the date he acquires a dependent if on that date he is eligible for personal coverage.

If both parents are eligible for personal coverage, only one is eligible for dependent coverage for their dependent children.

Form OP3-ELG-0001

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### ASSOCIATED COMPANIES

Companies, corporations, firms or individuals that are subsidiary to or affiliated with the Sponsor and listed below will be called associated companies. Employees of associated companies will be employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Liberty and the Sponsor will be binding on the associated companies.

If an associated company ceases to be an associated company for any reason, its employees will be deemed to have transferred to a class of employees not eligible for coverage under this policy.

Associated companies are:    As on file with the Sponsor

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

## EFFECTIVE DATE OF PERSONAL COVERAGE

**Applicable to Class 4:**

**Contributions Not Required**

If an employee does not have to pay for the cost of personal coverage, he becomes covered on the date he is eligible.

**Contributions Required**

If an employee must pay part of the cost of personal coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)     on or before the date he is eligible, his coverage takes effect on the date he becomes eligible; or

(b)     within 31 days after the date he becomes eligible, his coverage takes effect on the date he enrolls.

**Delayed Effective Date**

If an active employee is not at work on the last scheduled work day coincident with or preceding the date he is to become covered, he will become covered on the date he returns to active work. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends.

Form OP3-ELG-0003

SA3-800-000001-01
Effective July 1, 1998

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF PERSONAL COVERAGE

**Applicable to All Other Classes:**

**Contributions Not Required**

If an employee does not have to pay for the cost of personal coverage, he becomes covered on the date he is eligible.

**Contributions Required**

If an employee must pay part of the cost of personal coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)    on or before the date he is eligible, his coverage takes effect on the date he becomes eligible;

(b)    within 31 days after the date he becomes eligible, his coverage takes effect on the date he enrolls;

(c)    after 31 days following the date he becomes eligible, he must submit proof of insurability. Such person's coverage will take effect on the first of the month following the date Liberty accepts such proof as satisfactory. Proof of insurability must be furnished at his own expense.

**Delayed Effective Date**

If an active employee is not at work on the last scheduled work day coincident with or preceding the date he is to become covered, he will become covered on the date he returns to active work. If a retired employee is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends.

Form OP3-ELG-0003

SA3-800-000001-01 R (1)
Effective July 1, 1998

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF DEPENDENT COVERAGE

**Applicable to Class 1:**

**Contributions Not Required**

If an employee does not have to pay for the cost of dependent coverage, he becomes covered with respect to his dependents on the date he becomes eligible for dependent coverage.

**Contributions Required**

If an employee must pay part of the cost of dependent coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)   on or before the date he is eligible for dependent coverage, he becomes covered with respect to them on such date;

(b)   within 31 days after the date he is eligible for dependent coverage, he becomes covered with respect to them on the date he enrolls them;

(c)   after 31 days following the date he is eligible for dependent coverage; he must submit proof of each dependent's insurability. He will become covered with respect to them on the first of the month following the date Liberty accepts such proof as satisfactory. Proof of insurability must be furnished at his own expense.

**Additional Dependents**

If, while covered for dependent coverage, an employee acquires another dependent, he will become covered for such dependent on the date he is eligible for coverage for the dependent.

**Delayed Effective Date**

If a dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends. This does not apply to a newborn child.

An employee's dependent coverage will not take effect before the date his personal coverage takes effect.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### EFFECTIVE DATE OF DEPENDENT COVERAGE

**Applicable to Class 4:**

**Contributions Not Required**

If an employee does not have to pay for the cost of dependent coverage, he becomes covered with respect to his dependents on the date he becomes eligible for dependent coverage.

**Contributions Required**

If an employee must pay part of the cost of dependent coverage, he must enroll for such coverage. To enroll, he must complete a payroll deduction authorization.

If he enrolls:

(a)   on or before the date he is eligible for dependent coverage, he becomes covered with respect to them on such date; or

(b)   within 31 days after the date he is eligible for dependent coverage, he becomes covered with respect to them on the date he enrolls them.

**Additional Dependents**

If, while covered for dependent coverage, an employee acquires another dependent, he will become covered for such dependent on the date he is eligible for coverage for the dependent.

**Delayed Effective Date**

If a dependent is confined in a hospital, skilled nursing facility or rehabilitation facility on the date he would otherwise become covered, he will become covered on the date the confinement ends. This does not apply to a newborn child.

An employee's dependent coverage will not take effect before the date his personal coverage takes effect.

## SECTION 3 - ELIGIBILITY, EFFECTIVE DATE AND TERMINATION PROVISIONS

### TERMINATIONS

The personal coverage of a covered employee will end on the date that any of the following events first occurs, subject to any applicable Conversion Privilege or Continuation of Coverage Provisions:

(a) 31 days following the date employment (status as an active employee) or eligibility ends for any reason except that Life Insurance will be continued for retired employees as defined;

(b) the policy terminates; or

(c) the end of the last period for which a covered employee makes a required contribution, if he has cancelled his payroll deduction authorization or otherwise failed to pay any required portion of the cost of personal coverage.

The employee's coverage of a covered dependent will end on the date that any of the following events first occurs:

(a) status as a dependent ends;

(b) dependent coverage is deleted from the policy;

(c) the covered employee's personal coverage ends; or

(d) the end of the last period for which a covered employee makes a required contribution, if he has cancelled his payroll deduction authorization or otherwise failed to pay any required portion of the cost of dependent coverage.

### CONTINUATION OF COVERAGE PROVISIONS

**Lay-off**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 12 weeks following the month in which the lay-off begins. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

**Leave of Absence – Applicable to Military Leave of Absence under the Uniformed Services Employment and Reemployment Rights Act (USERRA)**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 24 months following the month in which the leave of absence begins. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

**Lay-off or Leave of Absence – Applicable to All Other Leaves of Absences**

The Sponsor may continue a covered employee's Life Insurance coverage for a period of 12 weeks following the month in which the leave of absence begins, including FMLA. In continuing such coverage under this section, the Sponsor agrees to treat all covered persons equally. Coverage may be continued for a longer period by mutual agreement between the Sponsor and Liberty.

## SECTION 4 - GENERAL PROVISIONS

**Notice and Proof of Loss.** Written notice of a claim must be given to Liberty within 20 days after loss occurs. Notice must include information to identify the claimant.

When a notice of loss is received, forms will be sent to the claimant for filing proof of loss. If these forms are not furnished within 15 days, the claimant may satisfy the proof of loss requirement by giving Liberty a written statement of the nature and extent of the loss for which claim is made.

Due proof must be given within 90 days after the loss.

If it is not reasonably possible for the claimant to give proof in the time required, Liberty will not reduce or deny the claim for this reason if the proof is filed as soon as possible. But, unless delayed by the claimant's legal incapacity, the proof must be furnished within two years of the 90 day period specified above.

**Examination.** Liberty has the right to have the claimant examined (at Liberty's expense) as often as reasonably necessary while a claim is pending. It may also have an autopsy made unless prohibited by law.

**Actions at Law.** No legal action may be brought to recover under this policy until 60 days after due proof of loss has been given. No such action may be brought after 3 years from the time written proof of loss is required to be given. Legal actions are contingent upon having obtained reconsideration as described below.

**Reconsideration.** Liberty will notify any covered person whose claim is denied in whole or in part. That written notice will explain the reasons for denial. If the claimant does not agree with the reasons given, he or she may request a reconsideration of the claim. To do so, the claimant should write to Liberty within 60 days after the notice of denial was received. The claimant should state why he or she believes the claim was improperly denied. Any data, questions or comments that the claimant thinks are appropriate should be included. Unless Liberty requests additional material in a timely fashion, the claimant will be advised of Liberty's decision within 60 days after his or her letter is received.

**Time Limitation.** If the time limitations shown under: (a) notice and proof of loss; and (b) actions at law, are less than that allowed by law in the state where the covered person lives at the time claim is made, such limitations will be increased to comply with such state law.

**Payment of Benefits.** All benefits are payable when Liberty receives written proof of loss. Benefits for loss of life will be payable to the beneficiary. All other benefits will be payable to the covered person. However, unless the covered person directs otherwise in writing, Liberty has the option of paying all or part of such benefits directly to a person or institution on whose charges claim is based. A covered person may also authorize Liberty to pay benefits directly to a person or institution on whose charges claim is based. Any such payments will discharge Liberty to the extent of payment made. Unless allowed by law, payments may not be attached, nor be subject to a covered person's debts.

**Conformity with State Statutes.** Any provision of this policy which, on its effective date, conflicts with the laws of the state where this policy is delivered is changed to conform to such laws.

**Workers' Compensation.** This policy and the benefits provided are not in lieu of, nor will they affect any requirements for, coverage under any Workers' Compensation Law or other similar law.

Form OP3-GNP-0001/GNP-0002

## SECTION 4 - GENERAL PROVISIONS (continued)

**Facility of Payment.** If a beneficiary or covered person is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person. Such payments will be made until claim is made by a guardian.

If a beneficiary or covered person dies while benefits remain unpaid, benefits will be paid, at Liberty's option, to:

(a)   a person or institution on whose charges claim is based;

(b)   the executor or administrator of the covered person's estate; or

(c)   a surviving relative (spouse, parent or child).

Such payment will release Liberty of all further liability to the extent of payment.

**Entire Contract Changes.** This policy, with the Sponsor's application and any individual applications, is the entire contract of insurance. No agent may change this policy or waive any of its provisions. No change in this policy will be effective unless signed by the president or a vice president of Liberty and by the Sponsor. Any statements in any application will be deemed representations and not warranties. No statement will be used as a defense to a claim unless it is in a written application.

**Incontestability.** This policy will not be contested, except for nonpayment of premium, after it has been in force for two years from the effective date. The coverage of any covered person will not be contested, except for nonpayment of premium, after it has been in force for two years during the person's lifetime. No statement by a covered person concerning his insurability will be used by Liberty to deny liability unless: (a) it is stated on a written application signed by him; and (b) a copy of such application is given to him or his beneficiary.

**Misstatement of Age.** If the age of any covered person has been misstated, the insurance payable will be the amount such person is entitled to under the Schedule of Benefits, at his true age. Liberty will adjust the premium so that Liberty pays the correct amount.

**Assignment.** The coverage under this policy is not assignable by the Sponsor without Liberty's written consent.

A covered employee may assign all of his present and future right, title, interest and incidents of ownership of (a) any life insurance; (b) any disability provision of life insurance; and (c) any accidental death and dismemberment insurance under this policy. Such assignment will include, but is not limited to, the rights (a) to make any contribution required to keep the coverage in force; (b) to exercise any conversion privilege; and (c) to change the beneficiary.

**Records.** The Sponsor will keep records of the covered employees under this policy. Such records will include the following: (a) covered employees by name, age and amount of coverage; (b) effective date of coverage and date coverage ends; (c) change of status; (d) name of beneficiary; and (e) other related data. Such data will be given to Liberty as needed or requested on Liberty forms. Liberty has the right to inspect the Sponsor's records at any reasonable time. Clerical errors will not deprive a person of coverage. But such errors will not continue coverage after the termination date described under Terminations.

Form OP3-GNP-0002/GNP-0007

## SECTION 4 - GENERAL PROVISIONS (continued)

**Interpretation of this Policy.** Liberty possesses the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility will be conclusive and binding.

**Canadian Exposure.** With respect to a covered person who lives in Canada: (1) premium and benefit amounts will be deemed to be expressed in Canadian currency; (2) policy provisions concerning the rights of covered persons are subject to applicable provincial statutes; and (3) with respect to benefits, an action under this policy may be brought in any court in the province where the covered person lives.

**Certificate.** Liberty will issue to the Sponsor, for delivery to each covered employee, a certificate describing the coverage under this policy. The certificate will include information about any conversion privilege and the beneficiary. The certificate will not change any provision under this policy.

**Discontinuance of this Policy.** Liberty may discontinue this policy or any coverage afforded hereunder on a premium due date if on any date:

(a)    the number of covered employees is less than 10; or

(b)    the percentage of covered employees in any class of eligible employees is less than 75%.

Liberty will send written notice of such discontinuance to the Sponsor at least 31 days before it's effective.

Liberty may discontinue this policy or any coverage afforded hereunder and for any class of covered employees on a premium due date after it has been in force for a year. Liberty will send written notice of discontinuance to the Sponsor at least 31 days before it is effective.

The Sponsor may discontinue this policy on a premium due date by giving written notice to Liberty before that date. If the Sponsor fails to pay the premiums within the Grace Period, it will be deemed notice by the Sponsor to Liberty to discontinue this policy at the end of the Grace Period.

Discontinuance of the policy will not affect any claim made before the date discontinued.

Form OP3-GNP-0007/GNP-0008

## SECTION 5 - INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE

**Benefits**

Liberty, upon receipt of due proof of death of any covered employee, agrees to pay the proceeds of the life insurance in force on the life of such covered employee under this policy. The benefit payable is shown in the Schedule of Benefits.

**Beneficiary**

Each covered employee must name a beneficiary to whom the life insurance benefits are payable. If, at the death of a covered employee, there is no named or surviving beneficiary, the benefits will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits are usually payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

Form OP3-LIF-0001

SA3-800-000001-01 R.(1)
Effective January 1, 2003

## SECTION 5 - INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE (continued)

**Conversion Privilege**

**Conversion Privilege at Individual Termination**

If all or part of a covered employee's coverage ends, the covered employee may convert the amount that ends to an individual life insurance policy. The coverage must end because the covered employee is no longer in an eligible class or leaves his job. Conversion is subject to the following conditions.

Within 31 days after coverage ends, the covered employee must:

(a)   make written application; and

(b)   pay the first premium payment.

The individual policy will be issued without proof of good health. It will contain life insurance benefits only. It will not include term insurance. The policy will be one then being offered by Liberty. The premium due will be the current rate of Liberty that applies to the covered employee's:

(a)   class of risk; and

(b)   age at the birthday nearest to the effective date of the individual policy.

SA3-800-000001-01 R (1)
Effective January 1, 2003

## SECTION 5 - INSURANCE BENEFITS

## EMPLOYEE LIFE INSURANCE (continued)

**Conversion Privilege (continued)**

**Conversion Privilege at Class or Policy Termination**

If coverage ends for all employees or for a covered employee's class, the covered employee is entitled to a limited conversion privilege. The covered employee must have been covered for at least 5 years. The covered employee must apply for the individual policy in the same manner as described above. The amount the covered employee may convert is limited to the lesser of:

(a) the amount the covered employee was covered for on the date the group coverage terminated less any group insurance he becomes eligible for within 31 days; or

(b) $2,000.

The individual policy will be effective 31 days after the covered employee's group coverage ends.

**Death Within the 31 Days Allowed for Conversion**

If a covered employee dies within the 31 days allowed for conversion, Liberty will pay to his beneficiary the amount he was eligible to convert. Such insurance will be paid as a claim under this policy. Any premiums paid for a converted policy will be refunded.

Form OP3-LIF-0003

## SECTION 5- INSURANCE BENEFITS

### EMPLOYEE LIFE INSURANCE (continued)

**Continuation of Coverage During Total Disability (Not Applicable to Retired Employees)**

If a Covered Employee becomes Totally Disabled while insured under this policy he may be eligible for continued Life Insurance coverage subject to premium payment. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

The Life Insurance benefit continued will be the amount in force on the Covered Employee's life under this policy on the date the Covered Employee is no longer in Active Employment due to Total Disability, subject to any reductions provided by any part of the policy.

Accidental Death and Dismemberment and Dependent coverage will be continued during the Covered Employee's period of Total Disability.

The amount of continued coverage for Accidental Death and Dismemberment and Covered Dependents will be the amount in force at the beginning of the Covered Employee's Total Disability.

The amount continued will not include any part of the Covered Employee's Life Insurance that he converted to an individual policy unless the employee was Totally Disabled when he applied to convert; and he returns the conversion policy to Liberty without claim other than for a refund of the premiums he paid for it.

A Covered Employee's continued Life Insurance coverage under this provision will end on the earliest of the date when:

1. the Sponsor determines the Covered Employee ceases to be Totally Disabled;
2. he returns to Active Employment; or
3. he reaches age 65; or
4. the date he begins receiving a benefit from a retirement or pension plan; or
5. the date the Sponsor classifies him as retired; or
6. the policy terminates; or
7. premium payments stop.

If continued Life Insurance coverage ends under this provision, the Covered Employee may convert his Life Insurance benefit as provided in the Conversion Privilege. Dependent coverage may be converted as allowed within this policy.

With respect to this provision, **"Total Disability"** or **"Totally Disabled"** means that the Covered Employee, as a result of Injury or Sickness, is receiving benefits under the Sponsor's Long Term Disability Plan.

## SECTION 5 - INSURANCE BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**Applicable to Class 1:**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a covered employee suffers a loss solely as the result of accidental injury that occurs while covered. The loss must occur within 90 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

The Full Amount is payable for the loss of:

(a)    Life;

(b)    Both hands or feet;

(c)    Sight of both eyes;

(d)    One hand and foot;

(e)    One hand and sight of one eye;

(f)    One foot and sight of one eye.

One-half the Full Amount is payable for the loss of:

(a)    One hand or foot;

(b)    Sight of one eye.

"Loss of hands or feet" means complete severance through or above the wrist or ankle joint. "Loss of sight" must be total and irrecoverable.

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

**Payment of Benefits**

Benefits for loss of life are paid to the covered employee's beneficiary. Benefits for other losses are paid to the covered employee.

**Beneficiary**

Each covered employee must name a beneficiary to whom the proceeds for loss of life under this policy are payable. If, at the death of a covered employee, there is no named or surviving beneficiary, the proceeds will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

Form OP3-ADD-0001

SA3-800-000001-01 R (1)
Effective July 1, 1998

## SECTION 5 - INSURANCE BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (continued)

**Applicable to Class 1 (continued):**

**Beneficiary (continued)**

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits for loss of life are payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**Exceptions**

No benefits are payable for any loss contributed to or caused by:

(a)    suicide;

(b)    intentionally self-inflicted injury;

(c)    disease or bodily or mental illness (or medical or surgical treatment thereof);

(d)    infections, except septic infections of and through a visible wound;

(e)    war (declared or undeclared);

(f)    drugs that are voluntarily taken, ingested or injected, unless as prescribed or administered by a physician.

### SECTION 5 - INSURANCE BENEFITS

## FAMILY ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**Applicable to Class 4:**

**Benefits**

Accidental Death and Dismemberment benefits are payable when a covered person suffers a loss solely as the result of accidental injury that occurs while covered. The loss must occur within 90 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits.

The Full Amount is payable for the loss of:

(a)    Life;

(b)    Both hands or feet;

(c)    Sight of both eyes;

(d)    One hand and one foot;

(e)    One hand and sight of one eye;

(f)    One foot and sight of one eye.

One-half the Full Amount is payable for the loss of:

(a)    One hand or foot;

(b)    Sight of one eye.

"Loss of hands or feet" means complete severance through or above the wrist or ankle joint; "Loss of sight" must be total and irrecoverable.

Payment is made for loss due to each accident without regard to loss resulting from any prior accident. In no event may the total amount payable for all losses due to any one accident exceed the Full Amount.

**Payment of Benefits**

Benefits for a covered employee's loss of life are paid to the covered employee's beneficiary. Benefits for other losses are paid to the covered employee.

**Beneficiary**

Each covered employee must name a beneficiary to whom the proceeds for his loss of life under this policy are payable. If at the death of a covered employee there is no named or surviving beneficiary, the proceeds will be paid, at Liberty's option, to a surviving relative (spouse, parent or child) or to the covered employee's estate. If more than one beneficiary is named and if their interests are not specified, they will share equally.

Form OP3-ADD-0014

SA3-800-000001-01
Effective July 1, 1998

## SECTION 5 - INSURANCE BENEFITS

### FAMILY ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE (continued)

**Applicable to Class 4 (continued):**

**Beneficiary (continued)**

A covered employee may change his beneficiary at any time by written request. Liberty will provide a form for that purpose. Any change of beneficiary will take effect when Liberty receives the written request. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by Liberty.

If a beneficiary is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment to a party who has assumed responsibility for the care of such person.

**Optional Methods of Settlement**

Benefits for loss of life are payable in one sum. However, the covered employee may elect in writing to have the proceeds paid in installments. If the covered employee makes no such election, his beneficiary may do so at the covered employee's death.

The amount of each monthly installment will be that usually offered by Liberty.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**Exceptions**

No benefits are payable for any loss caused by:

(a)    suicide;

(b)    intentionally self-inflicted injury;

(c)    disease or bodily or mental illness (or medical or surgical treatment thereof);

(d)    infections, except septic infections of and through a wound, and infections occurring because of accidental ingestion of poisonous food substances; and

(e)    war (declared or undeclared) or participation in a riot.

(f)    drugs that are voluntarily taken, ingested or injected, unless as prescribed or administered by a physician.

Form OP3-ADD-0015

SA3-800-000001-01
Effective July 1, 1998

## SECTION 5 - INSURANCE BENEFITS

## DEPENDENT LIFE INSURANCE

**Benefits**

If Liberty is given proof of death of a covered dependent, Liberty will pay to the covered employee the amount of Dependent Life Insurance in force for such dependent. This amount is payable when a covered dependent dies from any cause, at any time or place while covered. The life insurance benefit will be paid in one sum.

**Conversion Privilege**

If a covered employee's personal coverage ends because:

(a)    of his death; or

(b)    his employment in an eligible class ends,

his covered dependent spouse may convert Dependent Life Insurance to an individual policy.

Within 31 days after coverage ends, the covered dependent spouse must:

(a)    make written application; and

(b)    pay the first premium payment.

The individual policy will contain life insurance benefits only. It will not include term insurance. The policy will be one then being offered by Liberty. Proof of good health is not required.

If a covered employee's personal coverage ends because:

(a)    coverage ends for all employees; or

(b)    coverage ends for all employees in his eligible class,

his covered dependent spouse is entitled to a limited conversion privilege. The covered employee must be entitled to convert to an individual policy for his dependent spouse to have this limited privilege. Conversion must be applied for in the same way as stated above.

The amount the covered dependent spouse may convert is limited to the lesser of:

(a)    the amount the dependent spouse was covered for on the date coverage ended less any group insurance he becomes eligible for within 31 days; or

(b)    $2,000.

The individual policy will become effective 31 days after the covered employee's personal coverage ends. Dependent Life Insurance is payable if a covered dependent spouse dies during this period. The amount payable is the amount he or she was entitled to convert. Such insurance will be paid under this policy. Any premium paid for an individual policy will be refunded.

Form OP3-DEP-0001/DEP-0002

## SECTION 6 - PREMIUMS

Liberty has set the premiums that apply to the coverage provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

Liberty may, upon notice to the Sponsor, set new premium rates to become effective on or at any time after the first anniversary date of this policy.

Liberty may set new premium rates to become effective on the date the terms of this policy are changed. Any such change in policy terms will be made in accord with the General Provisions regarding "Entire Contract; Changes".

**Payment of Premiums.** The premium is payable by the Sponsor. The premium should be sent to:

(a)    Liberty at its Home Office in Boston, Massachusetts; or

(b)    Liberty's agent.

If any premium is not paid before its grace period ends, the policy will terminate.

**Grace Period.** A grace period of 31 days will be allowed for the payment of premium after a premium due date other than the first. No interest will be charged. During this period this policy will continue in force. But, if the Sponsor gives Liberty written notice to terminate the policy on an earlier date, then this policy will end on such earlier date. The Sponsor must pay the pro rata premium for the time the policy was in force during the grace period.

### Experience Rating Refunds

After each policy period throughout which this policy remains in force, the Sponsor may receive an experience rating refund in accordance with Liberty's retrospective experience rating formula. "Experience rating refund" means the return of some part of the premium that the Sponsor has paid for this policy.

Any experience rating refund will be payable to the Sponsor. By written request, the Sponsor may direct that all or a part of an experience rating refund be applied to future premiums on this policy. In any event, the Sponsor must apply for the sole benefit of covered persons any amount by which:

(a)    the aggregate employee contributions toward the cost of this policy

exceeds

(b)    the Sponsor's total payment for this policy period, less the experience rating refund for the same period.

Form OP3-PRE-0003

**Retrospective Premium Adjustment**

After each policy period, Liberty may be entitled to an extra premium, called a retrospective premium. The retrospective premium is determined according to a formula specified in the Retrospective Premium Agreement between the Sponsor and Liberty.

After each policy period, Liberty will be entitled to a retrospective premium in the event that:

  (a)    the sum of:
         (1)  the basic expense premium;
         (2)  the incurred claims charges;
         (3)  the incurred statutory assessments;
         (4)  the incurred premium taxes; and
         (5)  the deficit, if any, from the immediately preceding policy period

         exceeds

  (b)    100% of the standard premium payable for all coverages subject to this provision in that policy year.

"Standard premium" means the premium that is subject to the Retrospective Premium Agreement.

The first "policy period" begins on the effective date of this policy and ends on the first anniversary of the effective date of this policy. While this policy continues in force, each subsequent policy period will begin at 12:01 AM of the day immediately following the last day of the preceding policy period and will last for 12 months, except that the last policy period will end on the date this policy terminates.

Form OP3-PRE-0004

RIDER   16

to be attached to and made a part of
Group Policy No. SA3-800-000001-01
issued by
**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**
(Liberty)

to

**LIBERTY MUTUAL**
(Sponsor)

Effective date of this Rider:      January 1, 2006.

The policy is hereby amended by deleting Form OP3-TER-0001/CON-0001.31 and replacing it with the attached Form OP3-TER-0001/CON-0001.31. The new page is marked SA3-800-000001-01 R (2).

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

Accepted by the Sponsor on:                    _____, 2006
                                                            LIBERTY MUTUAL

                          By:   _____
                                                (Signature)

                                 _____
                                                (Title)

OP3-RID-0001

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MICHAEL HAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  1:07-cv-01422 |
| | ) | |
| LIBERTY MUTUAL, FLOYD OLSON, | ) | Judge Milton I. Shadur |
| BARBARA E. COFFMAN, and | ) | |
| JAMES POTTER, | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

PLEASE TAKE NOTICE THAT on Thursday, May 24, 2007 undersigned caused true

and correct copies of the foregoing LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S

STATEMENT OF CROSS-CLAIMS AGAINST DEFENDANTS FLOYD OLSON, BARBARA

E. COFFMAN AND JAMES POTTER, ESQ. to be filed with the Court by the Court's ECF/CM

electronic filing protocols and that same will therefore be electronically served upon all attorneys

of record registered with the Court's ECF/CM system.  Further, said document will be duly

served, along with a Summons from this Court, upon Defendants FLOYD OLSON, BARBARA

E. COFFMAN AND JAMES POTTER, ESQ. according to the applicable rules for service of

process upon party defendants.

Dated: May 24, 2007                    Respectfully submitted,

                                       JACKSON LEWIS LLP


                                       By:___/s/ Sara A. Weinberg_____
                                       Sara A. Weinberg
                                       Attorney for Defendant
                                       **JACKSON LEWIS LLP**
                                       320 W. Ohio Street, Suite 500
                                       Chicago, Illinois 60610

Tel.: (312) 787-4949
Fax: (312) 787-4995
E-mail: Weinbers@jacksonlewis.com

AND

Ashley B. Abel
**JACKSON LEWIS LLP**
Attorneys for Defendant
One Liberty Plaza
55 Beattie Place, Suite 800
Greenville, SC  29601
Tel.: (864)232 7000
Fax:  (864)235 1381
E-mail: Abela@jacksonlewis.com


## CERTIFICATE OF SERVICE

The undersigned certifies that on May 24, 2007 she caused true and correct copies of the

foregoing LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S CROSS-CLAIMS

AGAINST DEFENDANTS FLOYD OLSON, BARBARA E. COFFMAN AND JAMES

POTTER, ESQ.  to be filed with the Court by the Court's ECF/CM electronic filing protocols

and that same will therefore be electronically served upon all attorneys of record registered with

the Court's ECF/CM system:

Lawrence A. Stein
Kathleen R Ryding
Huck Bouma PC
1755 South Naperville Road
Wheaton, Illinois 60187


_/s/ Sara A. Weinberg_____
Sara A. Weinberg

2

14304-1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HAND, | ) | |
|          Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 07 CV 1422 |
| | ) | |
| LIBERTY LIFE ASSURANCE COMPANY | ) | |
| OF BOSTON, FLOYD T. OLSON, and. | ) | Judge Milton I. Shadur |
| BARBARA E COFFMAN, | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
|          Defendants. | ) | |

### CLAIM TO INTERPLED FUNDS

Plaintiff, MICHAEL HAND, by his attorneys, Lawrence A. Stein of HUCK BOUMA PC, claims to own all of the funds interpled by the defendant, together with interest from the date of the death of the insured, and in support thereof states as follows:

1.     Plaintiff is the properly designated death beneficiary of the policy, entitled to all of the proceeds of the policy at the death of the insured.

2.     Neither the insured, nor anyone else, ever validly revoked or modified the designation of the plaintiff as the death beneficiary of the policy prior to the death of the insured.

3.     No other party or entity has any valid claims to the proceeds of the policy plus interest accrued since the death of the insured.

WHEREFORE, plaintiff, MICHAEL HAND, requests judgment in his favor declaring that he is entitled to all of the funds interpled, and all of the proceeds of the policy plus all interest earned on the proceeds while in possession of the clerk, and for an order of the court directing the clerk to

1

turn over the interpled funds with interest to him, declaring that no one else has any valid interest

in the interpled funds, and for all other relief deemed appropriate in the circumstances.

Respectfully submitted,

HUCK BOUMA, P.C.

/s/     Lawrence A. Stein

Lawrence A. Stein


Lawrence A. Stein
**HUCK BOUMA, P.C.**
1755 South Naperville Road
Wheaton, Illinois 60187
Telephone: (630) 221-1755
Facsimile: (630) 221-1756 (Fax)

## CERTIFICATE OF FILING AND SERVICE

I, LAWRENCE A. STEIN, state as follows under penalty of perjury this twenty-fifth day of May, 2007.

1.      I filed this *Claim to Interpled Funds* by filing it with the clerk of the court by electronic means.

2.      I served this *Claim to Interpled Funds* by filing it with the clerk of the court by electronic means, which electronic filing constitutes services by virtue of local rule 5.9.

3.      I made the electronic filing on May 25, 2007.


/s/     Lawrence A. Stein

_____

R:\14000s\14300-14399\14304-1\Pleadings\Claim to Interpled Funds.wpd

3

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

MICHAEL HAND,

**SUMMONS IN A CIVIL CASE**
**CROSS-CLAIM**

Plaintiff,

CASE NUMBER: 1:07-cv-01422

V.          ASSIGNED JUDGE: Milton I. Shadur

LIBERTY MUTUAL, FLOYD OLSON,
BARBARA E. COFFMAN, and
JAMES POTTER,

DESIGNATED
MAGISTRATE JUDGE: Nan R. Nolan

Defendants.

TO:

James Potter, Esq.
200 Applebee Street, Suite 201
Barrington, Illinois 60010

**YOU ARE HEREBY SUMMONED** and required to serve upon DEFENDANT Liberty Life Assurance
Company of Boston's, incorrectly identified in the caption as "Liberty Mutual", ATTORNEYS

Sara A. Weinberg
**JACKSON LEWIS LLP**
320 W. Ohio Street, Suite 500
Chicago, Illinois 60610
E-mail:  Weinbers@jacksonlewis.com

Ashley B. Abel
Robert Wood
**JACKSON LEWIS LLP**
One Liberty Plaza
55 Beattie Place, Suite 800
Greenville, South Carolina  29601
E-mail:  Abela@jacksonlewis.com

an answer to the cross-claim which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the cross-claim.  You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

_____
(By) DEPUTY CLERK

MAY 2 3 2007

_____
DATE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
### CASE NO. 1:07-cv-01422
AFFIDAVIT OF SPECIAL PROCESS SERVER

**Jason Holinka**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

- (   ) Summons & Complaint
- (   ) Citation to Discover Assets
- (   ) Rule to Show Cause
- (   ) Subpoena
- ( **X** ) Other: **Summons, Notice of Filing, Statement of Cross-Claims**

1.    (   ) By leaving a copy with the named party, ------- personally on -------.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
2.    (   ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
3.    ( **X** ) On the within party, **James Potter Esq** by leaving a copy with **Amanda Beheney, Authorized Person**, on **May 25, 2007**, and informed that person of the contents thereof.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
4.    ( **X** ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Female**          RACE: **Caucasian**          APPROXIMATE AGE: **40-50**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
5.    ( **X** ) That the place where and the time of day when the documents were served were as follows:

PLACE: **200 Applebee St., #201, Barrington, IL 60010**
TIME OF DAY: **3:00 PM**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
6.    (   ) That he was unable to serve the within named party ------- located at -------- for the reason: -------

Signed and Sworn to before me
This **30**th day of **May 2007**.

_____
Jason Holinka
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

OFFICIAL SEAL
KELLY L DENT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/02/09

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 31, 2007 she caused true and correct copies

of the foregoing SUMMONS RETURNED EXECUTED to be filed with the Court by the

Court's ECF/CM electronic filing protocols and that same will therefore be electronically

served upon all attorneys of record registered with the Court's ECF/CM system.


      /s/ Sara A. Weinberg
      Sara A. Weinberg

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MICHAEL HAND, | **SUMMONS IN A CIVIL CASE**<br>**CROSS-CLAIM** |
| Plaintiff, |  |

CASE NUMBER: 1:07-cv-01422

V.     ASSIGNED JUDGE: Milton I. Shadur

LIBERTY MUTUAL, FLOYD OLSON,
BARBARA E. COFFMAN, and
JAMES POTTER,

DESIGNATED
MAGISTRATE JUDGE: Nan R. Nolan

Defendants.

TO:

Floyd Olson
9171 Grossmont Boulevard
La Mesa, California 91941-4141

   **YOU ARE HEREBY SUMMONED** and required to serve upon DEFENDANT Liberty Life Assurance Company of Boston's, incorrectly identified in the caption as "Liberty Mutual", ATTORNEYS

|  |  |
|---|---|
| Sara A. Weinberg | Ashley B. Abel |
| **JACKSON LEWIS LLP** | **JACKSON LEWIS LLP** |
| 320 W. Ohio Street, Suite 500 | One Liberty Plaza |
| Chicago, Illinois 60610 | 55 Beattie Place, Suite 800 |
| E-mail: Weinbers@jacksonlewis.com | Greenville, South Carolina 29601 |
|  | E-mail: Abela@jacksonlewis.com |

an answer to the cross-claim which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the cross-claim. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

NADINE FINLEY                                    MAY 2 3 2007
_____        _____
(By) DEPUTY CLERK                                DATE

### *AFFIDAVIT OF SPECIAL PROCESS SERVER*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

Case No.:  1:07-cv-01422

Case Name:  Michael Hand vs. Liberty Mutual, Floyd Olson, Barbara E. Coffman and James Potter

Barbara J. Amundsen - Wiarda, being first duly sworn on oath deposes and states that on the 27th day of May, 2007 at 7:50 a.M., he/she attempted service of the following: Summons; Notice of Filing; Liberty Life Assurance Company of Boston's Statement of Cross-Claims Against Defendants' Floyd Olson, Barbara E. Coffman and James Potter to Floyd Olson at 9171 Grossmont Boulevard, La Mesa, CA 91941-4141 resulting in:

__X__  Personal service on the defendant.
_____  Substitute service by leaving the documents with a household member over the age of 13 or in accordance with state or federal laws.
　　　　Name: _____    Relationship: _____

_____  After substitute service I mailed a copy of the listed documents to the defendant on the _____ day of _____, 2007
_____  Corporate service to an officer or an authorized individual of the company.
　　　　Name: _____    Title: _____
_____  Non-Service for the following reasons with the date and time of each attempt listed:

_____

_____

_____

_____

_____

_____

_____

A description of the person with whom the documents were left is as follows:

Sex: Male                    Hair Color/Style: Grey/White
Race: Caucasian              Height: 5'2"
Age: 75                      Weight: 175lbs

STATE OF : CALIFORNIA
COUNTY OF : SAN DIEGO
Signed and sworn to before me
This 8th day of June, 2007.

Served By:

Barbara J. Amundsen - Wiarda

Barbara J. Amundsen - Wiarda
Title Registered Process Server

Notary Public  JAVIER ARREOLA
COMM. #1726215
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
MARCH 18, 2011

Service was completed by an independent contractor retained by It's Your Serve, Inc.

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**
**CROSS-CLAIM**

MICHAEL HAND,

        Plaintiff,

CASE NUMBER: 1:07-cv-01422

V.    ASSIGNED JUDGE: Milton I. Shadur

LIBERTY MUTUAL, FLOYD OLSON,
BARBARA E. COFFMAN, and
JAMES POTTER,

DESIGNATED
MAGISTRATE JUDGE: Nan R. Nolan

        Defendants.

TO:

Barbara E. Coffman, a/k/a Barbara E.C. Klimatis
5039 Via Serena
Alta Loma, California  91701

    **YOU ARE HEREBY SUMMONED** and required to serve upon DEFENDANT Liberty Life Assurance
Company of Boston's, incorrectly identified in the caption as "Liberty Mutual", ATTORNEYS

| | |
|---|---|
| Sara A. Weinberg | Ashley B. Abel |
| **JACKSON LEWIS LLP** | **JACKSON LEWIS LLP** |
| 320 W. Ohio Street, Suite 500 | One Liberty Plaza |
| Chicago, Illinois 60610 | 55 Beattie Place, Suite 800 |
| E-mail:  Weinbers@jacksonlewis.com | Greenville, South Carolina  29601 |
| | E-mail:  Abela@jacksonlewis.com |

an answer to the cross-claim which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

**NADINE FINLEY**
_____      MAY 2 3 2007
(By) DEPUTY CLERK                        DATE

06/08/2007 11:21 FAX 909 466 7270    AMERICAN EAGLE    ☎002

## AFFIDAVIT OF SPECIAL PROCESS SERVER

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

Case No :  1:07-cv-01422

Case Name:  Michael Hand vs. Liberty Mutual, Floyd Olson, Barbara E. Coffman and James Potter

Frank Perdomo_____, being first duly sworn on oath deposes and states that on the

___7___ day of ___June___, 2007 at __8:27__ P .M., he/she attempted service of the following:

Summons; Notice of Filing; Liberty Life Assurance Company of Boston's Statement of Cross-Claims

Against Defendants' Floyd Olson, Barbara E. Coffman and James Potter to Barbara E. Coffman aka

Barbara E.C. Klimatis at 5039 Via Serena, Alta Loma, CA 91701 resulting in:

___X___ Personal service on the defendant.
_____ Substitute service by leaving the documents with a household member over the age of
          13 or in accordance with state or federal laws.
          Name: _____    Relationship: _____

          _____ After substitute service I mailed a copy of the listed documents to the
          defendant on the _____ day of _____, 2007
_____ Corporate service to an officer or an authorized individual of the company.
          Name: _____    Title: _____
_____ Non-Service for the following reasons with the date and time of each attempt listed:

_____
_____
_____
_____
_____
_____
_____
_____

A description of the person with whom the documents were left is as follows:

Sex:    Female
Race:   White
Age:    60yrs.

Hair Color/Style:  Brown
Height:            5'4
Weight:            120lbs.

Signed and Sworn to before me
This ___ day of _____, 2007.

Served By: _____
                F. Perdomo

_____
Notary Public

_____
Independent Process Server
Title

Service was completed by an independent contractor retained by It's Your Serve, Inc.

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Michael Hand

                      Plaintiff,

v.                                          Case No.: 1:07−cv−01422

                                            Honorable Milton I. Shadur

Liberty Mutual, et al.

                      Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, June 14, 2007:

        MINUTE entry before Judge Milton I. Shadur :Status hearing held on 6/14/2007, Status hearing set for 7/6/2007 at 01:00 PM. Responsive pleading by any intervenor claimant is to be filed on or before June 29, 2007. In court notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

1   Floyd Olson
   In Pro Se
2   9171 Grossmont Blvd.
   La Mesa, CA 91941
3   (619) 589-1075

4   Barbara E. Coffman
   In Pro Se
5   5039 Via Serena
6   Alta Loma, CA 92701

**RECEIVED**

JUN 2 8 2007

MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

**FILED**

JUN 2 8 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

7

8

9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF ILLINOIS

11  MICHAEL HAND,       )
                     )   CASE No. 1:07-cv-01422
12       Plaintiff   )
                     )   NOTICE OF MOTION AND MOTION
13  vs.              )   FOR TRANSFER OF VENUE BY
                     )   FLOYD OLSON AND BARBARA E.
14  LIBERTY MUTUAL, FLOYD OLSON, )   COFFMAN (28 U.S.C. Sec. 1404(a))
  BARBARA E, COFFMAN and JAMES )
15  POTTER,            )   Judge Milton I. Shadur
                     )
16      Defendants.   )   Magistrate Judge Nan R. Nolan
                     )
17  _____)

18

19     **TO PLAINTIFF MICHAEL HAND and his Attorney of record:**

20     PLEASE TAKE NOTICE THAT on _7/2/07 July, 2_ 9:15 AM, 2007 or as soon

21  thereafter as this matter can be heard in Courtroom Number 2388 of the above entitled

22  court, located at 219 South Dearborn Street, Chicago, Illinois, Defendants FLOYD

23  OLSON and BARBARA E. COFFMAN, IN PRO SE will move for and order transferring

24  this action to the Southern District of California under *28 U.S.C. Sec. 1404(a)* as the

25  current forum, the Northen District of Illinois, is not a convenient forum for the parties and

26  witnesses, and the interests of justice would best be served in transferring this action.

27  ///

28  ///

MOT. TO TRANSFER

1        This motion is based on this Notice of Motion, the Memorandum of Points and

2    Authorities and the Declaration of Floyd Olson, filed and served herewith, and the papers,

3    records and pleadings already on file herein.

4

5    June ___ 06 ___, 2007

6                                         FLOYD OLSON, In Pro Se

7

8

9    June_____, 2007

                                       BARBARA COFFMAN, In Pro Se

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jun 26 07 03:34p        Philip Dyson Esq                          619 462 3382          p.9

1      This motion is based on this Notice of Motion, the Memorandum of Points and

2 Authorities and the Declaration of Floyd Olson, filed and served herewith, and the papers,

3 records and pleadings already on file herein.

4

5 June ___06___, 2007                                           

6                                                FLOYD OLSON, In Pro Se

7

8 June ___26___, 2007

9                                                BARBARA COFFMAN, In Pro Se

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

           NOT TO TRANSFER                                  1

1   Floyd Olson
    In Pro Se
2   9171 Grossmont Blvd.
    La Mesa, CA 91941
3

4
    Barbara E. Coffman
5   In Pro Se
    5039 Via Serena
6   Alta Loma, CA 92701

7

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF ILLINOIS

11  MICHAEL HAND,                    )
                                     )    CASE No. 1:07-cv-01422
12            Plaintiff              )
                                     )    MEMORANDUM OF POINTS AND
13  vs.                              )    AUTHORITIES IN SUPPORT OF
                                     )    MOTION FOR TRANSFER OF VENUE
14  LIBERTY MUTUAL, FLOYD OLSON,     )    BY FLOYD OLSON AND BARBARA E.
    BARBARA E, COFFMAN and JAMES     )    COFFMAN (28 U.S.C. Sec. 1404(a))
15  POTTER,                          )
                                     )    Judge Milton I. Shadur
16            Defendants.            )
                                     )    Magistrate Judge Nan R. Nolan
17  _____ )

18

19       **COMES NOW, Defendants FLOYD OLSON and BARBARA E. COFFMAN,**

20  **IN PRO SE** and hereby filed this motion for a transfer of venue under *28 U.S.C. Sec.*

21  *1404(a)* as the current forum, the Northen District of Illinois, is not a convenient forum for

22  the parties and witnesses.  The case should be transferred to the Southern District of

23  California where jurisdiction is proper under Federal ERISA jurisdiction, *28 USC Sec.*

24  *1132(e)(2).*

25                        **I. INTRODUCTION**

26       This case is about $71,000.00 in life insurance benefits, the insurer, Liberty Mutual

27  either has or intends to interplead and deposit into this Court.

28  ///

    MOT. TO TRANSFER

**FILED**

JUN 2 8 2007

*Jun 28 2007*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

1   The Decedent, Cassie E. Barrett, is originally from California. After college, she

2 eventually married Michael Hand, and moved to Chicago.   Ms. Barrett worked in Chicago

3 in the insurance industry. As part of her employment Ms. Barrett received benefits,

4 including $71,000.00 in life insurance through Liberty Mutual.

5   In approximately 2004, Ms. Barrett, then only thirty years old, developed brain

6 cancer. Her husband, Mr. Hand was unwilling or unable to care for her, so she moved

7 back to La Habra, in the Los Angeles area of California, to live with her mother, Ms.

8 Coffman. Ms. Coffman cared for her daughter, paid for her treatment at UCLA and drove

9 Ms. Barrett through hours and hours of Los Angeles traffic to get her extraordinary

10 treatment for her very serious condition. Mr. Hand contributed nothing to his wife's care

11 during this time.

12   When Ms. Barrett was very close to death, in October 2006, she executed a power

13 of attorney, giving her grandfather, Defendant Floyd Olson power over all her financial

14 affairs, including the power to make all decisions regarding insurance ( a copy of that

15 power of attorney is attached to the Declaration of Floyd Olson as Exhibit "1").

16   Mr. Olson then wrote to Liberty Mutual in Boston, and gave them a copy of the

17 power of attorney. He asked Liberty to change the beneficiary of Ms. Barrett's life

18 insurance policy from Michael Hand to Barbara Coffman, in accordance with Ms. Barrett's

19 wishes. Ms. Barrett died on October 21, 2006 in California, before Liberty could formally

20 respond to Mr. Olson's request to change the beneficiary.

21   Thereafter, Plaintiff Michael Hand attempted to collect the life insurance proceeds.

22 These actions followed.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

MOT. TO TRANSFER       1

## II. THE MAJORITY OF THE PARTIES AND WITNESSES
## IN THIS CASE ARE IN CALIFORNIA, SO THE INTERESTS OF JUSTICE
## WOULD BEST BE SERVED BY TRANSFERRING THIS CASE TO THE
## SOUTHERN DISTRICT OF CALIFORNIA

### A. This Case Could Been Brought in the Southern District of California

Under *28 U.S.C. Sec. 1040(a)* a Court can transfer a case to another District for the convenience of the parties and witnesses, if the case could have been brought in the proposed transferee court. In this case, California has subject matter and personal jurisdiction over this case because the case is based on the Employee Retirement Income Security Act of 1974(ERISA). Under that statute, venue is proper in any district where the defendant resides or is found, *29 USC Sec. 1132(e)(2)*. In this case, two of the defendants, Mr. Potter and Mr. Hand reside in Illinois. Liberty Mutual resides in Massachusetts, but can be found in both Illinois and California. The other two defendant, Mr. Olson and Ms. Coffman reside in California, and can only be found in California. Therefore, this action could have been brought originally in California.

### B. The Primary Location of Relevant Witnesses and Documents is California.

According to the Declaration of Floyd Olson, four of the major witnesses in this case reside in California. Those witnesses include the parties, Mr. Floyd and Ms. Coffman, and the notary and witnesses to Ms. Barrett's execution of her power of attorney and advanced directive for healthcare, as well as her primary care doctor. This witnesses will testify that Ms. Barrett wanted the proceeds of her life insurance policy to go to her mother, Ms. Coffman. Mr. Olson will testify about the contacts he had with Liberty Mutual to change the beneficiary of the life insurance policy before Ms. Barrett died.

Only one of the major witnesses, Mr. Hand, resides in Illinois, and his testimony will be of negligible importance, as he spoke with Ms. Barrett rarely in the months before her death.

The Court is to consider not only the number of witnesses located in their respective districts, but the nature and quality of their testimony in relation to the issues of

1    this case, and why such testimony is relevant and necessary, *Brandon Apparel Group Inc.*

2    *V. Quitman Mfg. Co. Inc.* (ND IL 1999) 42 F.Supp.2d 821, 834; *A.J. Industries Inc. v.*

3    *United States Dist. Court* (9th Cir. 1974) 503 F.2d 384, 389.

4    The other Defendant, Liberty Mutual is an insurer doing business in all fifty

5    states. The employees of Liberty Mutual will be testifying about the contacts they had with

6    Mr. Olson, and or Ms. Barrett, about her wishes regarding the beneficiary of her life

7    insurance before her death. This testimony will be crucial. Liberty has submitted to

8    jurisdiction in both Illinois and California in hundreds of other cases and have already

9    stated that they do not care where this action is heard.

10    This Court must consider the nature of any contacts the parties have with

11    California, and then look at the correlation between those contacts and the causes of action.

12    *Burger King Corp. v. Rudzewicz*, (1985) 471 U.S. 462, 475, 477-478.

13    In this case, Ms. Barrett lived for most of her life in California. The last two years

14    of her life were spent in California, and she died in California. Ms. Barrett told her friends

15    and family about her wishes with regard to her will and her life insurance while she was

16    living and dying of brain cancer in California.

17    Finally, Mr. Hand is young and mobile, while Mr. Olson is elderly and infirm. Mr.

18    Olson will find it difficult to travel half way across the county to appear at depositions and

19    hearings in this matter. This is one of the factors the Court should consider in deciding

20    whether or not to transfer this case to California, in the interests of justice, *28 U.S.C.*

21    *1404(a).*

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

MOT. TO TRANSFER

3

| | |
|---|---|
| 1 | **III. CONCLUSION** |
| 2 | The majority of the witnesses and parties in this case reside in California. |
| 3 | California is a more convenient forum for this action.  This case should be transferred, in |
| 4 | the interests of justice, from the Northern District of Illinois, to the Southern District of |
| 5 | California. |
| 6 | Respectfully submitted, |
| 7 | |
| 8 | Respectfully submitted: |
| 9 | |
| 10 | June __26__, 2007    FLOYD OLSON, In Pro Se |
| 11 | |
| 12 | |
| 13 | June_____, 2007 |
| 14 | BARBARA COFFMAN, In Pro Se |

## III. CONCLUSION

The majority of the witnesses and parties in this case reside in California. California is a more convenient forum for this action. This case should be transferred, in the interests of justice, from the Northern District of Illinois, to the Southern District of California.

Respectfully submitted,

Respectfully submitted:

June __26__, 2007

FLOYD OLSON, In Pro Se

June __26__, 2007

BARBARA COFFMAN, In Pro Se

MOT. TO TRANSFER

4

1   Floyd Olson
In Pro Se
2   9171 Grossmont Blvd.
La Mesa, CA 91941
3

4   Barbara E. Coffman
In Pro Se
5   5039 Via Serena
Alta Loma, CA 92701
6

**FILED**

JUN 2 8 2007

Jun 28 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

7

8

9          UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF ILLINOIS

11   MICHAEL HAND,          )    CASE No. 1:07-cv-01422
                         )
12        Plaintiff       )    DECLARATION OF FLOYD OLSON IN
                         )    SUPPORT OF MOTION TO TRANSFER
13   vs.                  )    VENUE (28 U.S.C. Sec. 1404(a))
                         )
14   LIBERTY MUTUAL, FLOYD OLSON,   )
BARBARA E, COFFMAN and JAMES    )    Judge Milton I. Shadur
15   POTTER,                 )
                         )    Magistrate Judge Nan R. Nolan
16       Defendants.       )
                         )
17   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ )

18

19   I, Floyd Olson Declare as follows:

20        1. I am an individual, over the age of eighteen. I reside in La Mesa California,

21   and I am one of the listed Defendants in this action. I have personal knowledge of the facts

22   contained in this declaration, and if asked to do so, I could and would testify competently

23   thereto. As to those facts stated on information and belief, I believe them to be true.

24        2.    I am the grandfather of decedent, Cassie Barrett and the father of

25   Defendant, Barbara Coffman. I am a resident of the State of California, Southern District,

26   as is Barbara Coffman.

27        3. In approximately 2004, Ms. Barrett, then only thirty years old, developed brain

28   cancer. Her husband, Mr. Hand was unwilling or unable to care for her, so she moved

DECLARATION TRANSFER

1   back to La Habra, in the Los Angeles area of California, to live with her mother, Ms.

2   Coffman. Ms. Coffman cared for Cassie, paid for her treatment at UCLA and drove Ms.

3   Barrett through hours and hours of Los Angeles traffic to get her extraordinary treatment

4   for her very serious condition. Mr. Hand contributed nothing to his wife's care during this

5   time.

6       4. When Ms. Barrett was very close to death, in October 2006, she executed a

7   power of attorney, giving me power over all her financial affairs, including the power to

8   make all decisions regarding insurance ( a copy of that power of attorney is attached hereto

9   as Exhibit "1").

10      5. After the power of attorney was executed, and before Cassie died, I then wrote

11  to Liberty Mutual in Boston, and gave them a copy of the power of attorney. I asked

12  Liberty to change the beneficiary of Ms. Barrett's life insurance policy from Michael Hand

13  to Barbara Coffman, in accordance with Ms. Barrett's wishes. Ms. Barrett died on October

14  21, 2006 in California.

15      6. The witnesses whom I believe have information relevant to this case, and their

16  state of residence are as follows:

17      a. Floyd Olson, <u>California</u>. I will discuss Cassie Barrett's wishes regarding her life

18  insurance policy, and her execution of the power of attorney, as well as the contact I had

19  with Liberty Mutual about changing the life insurance beneficiary from Mr. Hand to Ms.

20  Coffman

21      b. Barbara Coffman, <u>California</u>. Ms. Coffman will discuss Cassie Barrett's wishes

22  regarding her life insurance policy, and her execution of the power of attorney, as well as

23  the contact she had with Liberty Mutual about changing the life insurance beneficiary from

24  Mr. Hand to Ms. Coffman, and my contacts with Liberty Mutual.

25      c. Jennifer Carson, Liberty Mutual, <u>Massachusetts</u>. Ms. Carson will discuss her

26  contacts with me regarding the power of attorney and Ms. Barrett's requests to change the

27  beneficiary of her life insurance from Michael Hand to Barbara Coffman.

28  ///

DECLARATION TRANSFER                          1

1        d. Danielle Randall, Liberty Mutual, <u>New Hampshire</u>. Ms. Randall will discuss

2    the Liberty Mutual file and the contacts I made with Liberty Mutual about changing the

3    beneficiary.

4        e. Michael Hand. <u>Illinois.</u> Mr. Hand may be able to discuss Cassie Barrett's

5    wishes. He is a claimant to the life insurance policy.

6        f. Kirsten Oats, <u>California</u>. Ms. Oats notarized the power of attorney Cassie

7    Barrett singed on October 11, 2006 giving me power of attorney over her financial affairs,

8    and can testify regarding the execution of that document.

9        g. Martin Klimaitis, <u>California.</u> He spoke to Cassie Barrett about her wishes

10   regarding her life insurance policy.

11       h. Craig R. Tissert, <u>California.</u> He witnessed Cassie Barrett's execution of her

12   advanced directive for healthcare, and knew of Ms. Barrett's wishes regarding her estate.

13       i. Marsha Talbert, <u>California.</u> She witnessed Cassie Barrett's execution of her

14   advanced directive for healthcare, and knew of Ms. Barrett's wishes regarding her estate.

15       j. Timothy Cloughesy, <u>California</u>. He was Cassie Barrett's oncologist and knew of

16   her wishes regarding her estate, and her capacity to change her life insurance beneficiary.

17       7. I am 80 years old and in poor health. I will find it difficult to travel to Illinois

18   to attend hearings and trial in this matter.

19       I declare under penalty of perjury, under the Laws of the United States of America

20   that the forgoing is true and correct.

21   June ___, 2007

22   FLOYD OLSON, Declarant

23

24

25

26

27

28

## UNIFORM STATUTORY FORM POWER OF ATTORNEY

(California Probate Code Section 4401)

NOTICE:    THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I _____CASSIE E. BARRETT, 9171 Grossmont Boulevard, La Mesa, CA  91941-4141_____
(your name and address)

appoint _____FLOYD T. OLSON, Grossmont Boulevard, La Mesa, CA  91941-4141_____
(name and address of the person appointed, or of each person
appointed if you want to designate more than one)

as my agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT.  YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

INITIAL
_____ (A)    Real property transactions.
_____ (B)    Tangible personal property transactions.
_____ (C)    Stock and bond transactions.
_____ (D)    Commodity and option transactions.
_____ (E)    Banking and other financial institution transactions.
_____ (F)    Business operating transactions.
_____ (G)    Insurance and annuity transactions.
_____ (H)    Estate, trust, and other beneficiary transactions.
_____ (I)    Claims and litigation.
_____ (J)    Personal and family maintenance.
_____ (K)    Benefits from social security, Medicare, Medicaid, or other governmental programs, or civil or military service.
_____ (L)    Retirement plan transactions.
_____ (M)    Tax matters.
_____ (N)    ALL OF THE POWERS LISTED ABOVE.

YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT

_____
_____
_____
_____
_____
_____

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED:

This power of attorney will continue to be effective even though I become incapacitated.

STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

EXERCISE OF POWER OF ATTORNEY WHERE MORE THAN ONE AGENT DESIGNATED

If I have designated more than one agent, the agents are to act separately

_____

IF YOU APPOINTED MORE THAN ONE AGENT AND YOU WANT EACH AGENT TO BE ABLE TO ACT ALONE WITHOUT THE OTHER AGENT JOINING, WRITE THE WORD "SEPARATELY" IN THE BLANK SPACE ABOVE. IF YOU DO NOT INSERT ANY WORD IN THE BLANK SPACE, OR IF YOU INSERT THE WORD "JOINTLY", THEN ALL OF YOUR AGENTS MUST ACT OR SIGN TOGETHER.

    I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this __11__ day of _OCTOBER_ 2006

_____
(your name)

_557 55 8277_____
(your social security number)

State of California                     County of San Diego

    BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

## ACKNOWLEDGMENT

STATE OF CALIFORNIA    )
                                   ) S.S.
COUNTY OF SAN DIEGO    )

On _10 | 11 | 06_____, before me, _Kirstin Oates_____ a Notary Public in and for said County and State, personally appeared _____
_Cassie F Barrett_____ ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~ authorized capacity(~~ies~~), and that by ~~his/her/their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

WITNESS my hand and official seal

Signature _Kirstin Oates_____

KIRSTIN OATES
Commission # 1508306
Notary Public - California
San Diego County
My Comm. Expires Aug 17, 2008

1

2   Floyd Olson
    In Pro Se
3   9171 Grossmont Blvd.
    La Mesa, CA 91941
4   (619) 589-1075

5   Barbara E. Coffman
    In Pro Se
6   5039 Via Serena
    Alta Loma, CA 92701

7

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF ILLINOIS

11
    MICHAEL HAND,                    )   CASE No. 1:07-cv-01422
12                                   )
              Plaintiff              )   **PROOF OF SERVICE.**
13                                   )
    vs.                              )   Judge Milton I. Shadur
14                                   )
    LIBERTY MUTUAL, FLOYD OLSON,     )   Magistrate Judge Nan R. Nolan
15  BARBARA E, COFFMAN and JAMES     )
    POTTER,                          )
16                                   )
              Defendants.            )
17  _____ )

18  ////

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

*Proof of Service*                        - 1 -

## PROOF OF SERVICE

**CASE NAME:**   *HAND vs. LIBERTY MUTUAL*
**CASE NUMBER:**  1:07-cv-01422
**COURT:**   UNITED STATES DISTRICT COURT - NORTHERN DISTRICT OF
ILLINOIS

I, Jodi Dossegger, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to the action; and that I am employed in the County of San Diego, State of California, in which county the within-mentioned service occurred. My business address is 8461 La Mesa Boulevard, La Mesa, California 91941.

I served the following documents entitled:

1.   NOTICE OF MOTION AND MOTION FOR TRANSFER OF VENUE BY FLOYD OLSON AND BARBARA E. COFFMAN (28 U.S.C. SEC. 1404(a))

2.   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TRANSFER OF VENUE BY FLOYD OLSON AND BARBARA E. COFFMAN (28 U.S.C. SEC. 1404(a))

3.   DECLARATION OF FLOYD OLSON IN SUPPORT OF MOTION TO TRANSFER VENUE (28 U.S.C. SEC. 1404(a))

to the party(ies) at the address(es) shown below.

Sara A. Weinberg                      Attorney for Defendant
Jackson Lewis, LLP                    Liberty Mutual
320 W. Ohio Street
Suite 500                             Tel: 312-787-4949
Chicago, Illinois 60610               Fax: 312-787-4995
                                      Weinbers@jacksonlewis.com

Lawrence A. Stein
Huck Bouma PC
1755 South Naperville Road
Wheaton, Illinois, 60187

[X]   **(BY MAIL)** I placed the original or a true copy of the document(s) in an envelope addressed to the party noted above, then sealed the envelope, and with the postage thereon fully prepaid, deposited in the United Sates Mail at La Mesa, California.

I am readily familiar with our law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, that this mailing will be deposited with the United States Postal Service on this date in the ordinary course of business and that I sealed and placed each envelope for collection and mailing on this date following ordinary business practices.

Executed on June 26, 2007, at La Mesa, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

JODI DOSSEGGER

POS #1 Motion Venue 062607 .wpd

-2-                                                          *Proof of Service*

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                         Case Number: 1:07-cv-01422

MICHAEL HAND,
              v.
LIBERTY MUTUAL, FLOYD OLSON,
BARBARA E. COFFMAN, and JAMES POTTER,

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

FLOYD OLSON and BARBARA E. COFFMAN

| | |
|---|---|
| NAME (Type or print) <br> Paula K. Jacobi | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) <br> s/ Paula K. Jacobi | |
| FIRM <br> Sugar, Friedberg, & Felsenthal LLP | |
| STREET ADDRESS <br> 30 N. LaSalle St., Suite 3000 | |
| CITY/STATE/ZIP <br> Chicago, IL 60602 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) <br> 1311247 | TELEPHONE NUMBER <br> 312-704-9400 |

| | | | |
|---|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☐ | |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ | |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ | NO ☐ | |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☑ | NO ☐ | |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐        APPOINTED COUNSEL ☐

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                      Case Number: 1:07-cv-01422

MICHAEL HAND,
    v.
LIBERTY MUTUAL, FLOYD OLSON,
BARBARA E. COFFMAN, and JAMES POTTER,

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

FLOYD OLSON and BARBARA E. COFFMAN

| | |
|---|---|
| NAME (Type or print)<br>Matthew R. Wildermuth | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>   s/ Matthew R. Wildermuth | |
| FIRM<br>Sugar, Friedberg, & Felsenthal LLP | |
| STREET ADDRESS<br>30 N. LaSalle St., Suite 3000 | |
| CITY/STATE/ZIP<br>Chicago, IL 60602 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER<br>312-704-9400 |
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐  NO ☐ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑  NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐  NO ☑ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐  NO ☑ |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.<br>RETAINED COUNSEL ☐    APPOINTED COUNSEL ☐ | |

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| In the Matter of | Case Number: 1:07-cv-01422 |
| --- | --- |

MICHAEL HAND,
     v.
LIBERTY MUTUAL, FLOYD OLSON,
BARBARA E. COFFMAN, and JAMES POTTER,

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

FLOYD OLSON and BARBARA E. COFFMAN

| NAME (Type or print) |
| --- |
| Matthew R. Wildermuth |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
| s/ Matthew R. Wildermuth |
| FIRM |
| Sugar, Friedberg, & Felsenthal LLP |
| STREET ADDRESS |
| 30 N. LaSalle St., Suite 3000 |
| CITY/STATE/ZIP |
| Chicago, IL 60602 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
| --- | --- |
| | 312-704-9400 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☐ |
| --- | --- | --- |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ☑ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0
### Eastern Division

Michael Hand

                     **Plaintiff,**

v.

                                            Case No.: 1:07−cv−01422
                                            Honorable Milton I. Shadur

Liberty Mutual, et al.

                     **Defendant.**

---

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, July 2, 2007:

       MINUTE entry before Judge Milton I. Shadur :Motion hearing held on 7/2/2007 regarding motion for joinder[12]. Motion entered and continued to August 9, 2007 at 9:00 a.m. Status hearing set for 8/9/2007 at 09:00 AM. Rule 26 disclosures are to be completed by July 16, 2007. Defendants Olson and Coffman are to a file an answer and claim to the proceeds on or before July 13, 2007. The July 6 status is vacated.In court notice(srn, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov.***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL HAND,<br><br>      Plaintiff<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, FLOYD OLSON, BARBARA E. COFFMAN and JAMES POTTER,<br><br>      Defendants<br>────────────────<br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,<br><br>      Counter\Cross Plaintiff<br><br>vs.<br><br>MICHAEL HAND, FLOYD OLSON, BARBARA E. COFFMAN and JAMES POTTER,<br><br>      Counter\Cross Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:07-cv-01422**<br><br><br><br>**Judge Milton I. Shadur**<br><br>**Magistrate Judge Nan R. Nolan** |

### DEFENDANTS\CROSS DEFENDANTS FLOYD OLSON AND BARBARA E. COFFMAN'S ANSWERS AND AFFIRMATIVE DEFENSES TO COMPLAINT & CROSS CLAIM

    Defendants\Cross Defendants FLOYD OLSON and BARBARA E. COFFMAN

(collectively, "OLSON") state as follows in answer to the Complaint of Michael Hand:

1.    The Plaintiffs at all times relevant to this Complaint resided in the Village of Glendale Heights, DuPage County, Illinois.

    **ANSWER:**    OLSON admits the allegations of ¶ 1 of the Complaint.

117760 (8762.000)

2.    The Defendant at all times relevant to this Complaint was a Corporation authorized to do business in the State of Illinois and in particular was in the business of providing term life insurance policies to Illinois residences.

   **ANSWER:**    OLSON lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations of ¶ 2 of the Complaint.  To the extent a further response is

required, OLSON denies said allegations.

3.    On or about January 1, 2004 Plaintiff's spouse, CASSIE E. BARRETT received a term life insurance policy from the Defendant as a part of her benefits package as an employee of the Defendant.  A copy of said Policy is attached as Exhibit "A".

   **ANSWER:**    OLSON admits the allegations of ¶ 3 of the Complaint.

4.    That on October 21, 2006 CASSIE E. BARRETT passed away.  A copy of her death certificate is attached as Exhibit "B".

   **ANSWER:**    OLSON admits the allegations of ¶ 4 of the Complaint.

5.    That shortly after her death the Plaintiff, named beneficiary of Exhibit "A" made a claim for the proceeds under the terms of the policy.

   **ANSWER:**    OLSON admits that Plaintiff asserted a claim for the proceeds of the life

insurance policy at issue.  OLSON denies that Plaintiff was the named beneficiary of the policy

at the time he asserted his claim.  OLSON denies the balance of the allegations of ¶ 5 of the

Complaint.

6.    That on or about January 24, 2007 the defendant tendered the plaintiff the proceeds check.  A copy of the check is attached as Exhibit "C".

   **ANSWER:**    OLSON lacks knowledge of the allegations of ¶ 6 of the Complaint.

7.    That on January 26, 2007 the Defendant notified the plaintiff that it had conflicting claims and stopped payment on said check.  A copy of the notification of the stop payment is Exhibit "D".

   **ANSWER:**    OLSON admits the allegations of ¶ 7 of the Complaint.

117760 (8762.000)

8.      That claim of the parents of CASSIE E. BARRETT has no merit as the plaintiff is
the only named beneficiary of said policy.

**ANSWER:**     OLSON denies the allegations of ¶8 of the Complaint. Further

answering, OLSON states that Ms. Barrett knowingly executed a power of attorney form giving

her grandfather Floyd Olson authority to carry out her instructions regarding the disposition of

her property and other financial affairs. At Ms. Barrett's express direction, Mr. Olson prepared

and transmitted a letter to Liberty Life Assurance Company of Boston (the insurer that issued a

life insurance policy on Ms. Barrett's life in her capacity as an employee of Liberty Mutual

Insurance Company) requesting Liberty Life to change the beneficiary of her life insurance

policy to her mother, Barbara E. Coffman, in recognition of Ms. Coffman's care, services,

financial contributions, love and affection for the last two years of her life. Ms. Barrett died on

October 21, 2006 before Liberty Life formally responded to Mr. Olson's request to change the

beneficiary. However, pursuant to the express terms and conditions of the policy, Mr. Olson's

transmission of a written request to Liberty Life to change the beneficiary of the policy on Ms.

Barrett's behalf and at her express direction was effective as of the date he mailed the letter to

Liberty Life.

## AFFIRMATIVE DEFENSES

Defendants FLOYD OLSON and BARBARA E. COFFMAN (collectively, "OLSON")

state as follows as their affirmative defenses to the Complaint:

### FIRST AFFIRMATIVE DEFENSE

Venue for the Plaintiff's Complaint is improper in the Northern District of Illinois and

instead should be transferred to the Southern District of California.

117760 (8762.000)

### SECOND AFFIRMATIVE DEFENSE

Ms. Barrett gave express authority and instructions to Mr. Olson to have the beneficiary of the life insurance policy issued in her favor changed to her mother, Barbara E. Coffman, and Mr. Olson complied with those instructions by sending a written request to Liberty Life to that effect, thereby terminating Plaintiff's interest in and right to recover under the policy.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims in the Complaint are barred by the doctrines of estoppel and/or waiver.

### FOURTH AFFIRMATIVE DEFENSE

In light of the vague and ambiguous allegations of Plaintiff's Complaint, the absence of any disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and the lack of discovery, OLSON reserves the right to amend these affirmative defenses or to assert additional affirmative defenses at trial.

**WHEREFORE,** OLSON respectfully requests that this Honorable Court enter judgment in OLSON's favor and against Plaintiff on Plaintiff's Complaint and further enter an order:

a) Finding that venue is this District is improper and that this action should be transferred to the Southern District of California;

b) Declaring that Defendant Barbara E. Coffman is the rightful beneficiary under the policy; and

c) Granting OLSON such other and further relief as this Court may deem just and proper.

117760 (8762.000)

## ANSWER AND AFFIRMATIVE DEFENSES TO CROSS
## CLAIM OF LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

Cross Defendants FLOYD OLSON and BARBARA E. COFFMAN

(collectively, "OLSON") state as follows in answer to the Cross Claim of Liberty Life

Assurance Company of Boston:

1.      Liberty Life seeks interpleader, pursuant to 28 U.S.C. § 1335 and Rule 22,
Fed.R.Civ.P., to determine entitlement to $71,000.00, plus accrued interest, in life
insurance proceeds ("Proceeds") payable by reason of the death of Decedent, an
employee insured under a group life insurance policy issued by Liberty Life to
Decedent's employer, which Proceeds Liberty Life stands ready to pay into the
Court's registry when directed by the Court.

**ANSWER:**    The allegations of ¶ 1 of the Cross Claim are a narrative and therefore

require no response from OLSON.  To the extent a further response is required, OLSON denies

the allegations of ¶ 1 of the Cross Claim.

2.      Liberty Life is an insurance company incorporated under the laws of the
state of Massachusetts with its principal place of business in Boston,
Massachusetts.

**ANSWER:**    OLSON lacks knowledge or information sufficient to admit or deny the

truth or falsity of the allegations of ¶ 2 of the Cross Complaint.  To the extent a further response

is required, OLSON denies the allegations of ¶ 2 of the Cross Complaint.

3.      Plaintiff Michael Hand ("Plaintiff") is a resident of DuPage County,
Illinois. Upon information and belief, Plaintiff was Decedent's husband at the
time of her death.

**ANSWER:**    OLSON admits the allegations of ¶ 3 of the Cross Complaint.

4.      Floyd Olson ("Olson"), who was joined as a defendant pursuant to this
Court's Order dated May 4, 2007, is a resident of the State of California. Upon
information and belief, Olson is Decedent's maternal grandfather.

**ANSWER:**    OLSON admits the allegations of ¶ 4 of the Cross Complaint.